## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **MICHAEL BOWMAN**, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br>v.<br><br>**ART VAN FURNITURE, INC.**, a Michigan corporation,<br><br>      Defendant. | Case No. 17-cv-11630-NGE<br><br>Hon. Nancy G. Edmunds<br><br>Mag. R. Steven Whalen |

_____

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Michael Bowman ("Plaintiff" or "Bowman"), individually and on behalf of a class of similarly-situated individuals, moves the Court, pursuant to Federal Rule of Civil Procedure 23, for an Order granting preliminary approval of the proposed class action Settlement Agreement agreed to by the parties and, in support, states as follows:

1. Plaintiff Bowman brought this alleged class action lawsuit against Defendant Art Van Furniture, Inc. ("Art Van" or "Defendant") challenging certain telephone calls that Plaintiff alleges Defendant made to him and others in violation of the Telephone Consumer Protection Act ("TCPA" or "Act"), 47 U.S.C. § 227, *et seq.* and its implementing regulation, 47 C.F.R. § 64.1200, *et seq.*

2.      The TCPA makes it unlawful for anyone to make telemarketing calls using a pre-recorded voice without first obtaining the prior express consent of the called party. 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B).

3.      Bowman alleges that Art Van violated the TCPA by calling him and others in violation of the TCPA. Specifically, Bowman alleges that Art Van used pre-recorded voice technology to call his residential telephone number for the purposes of inviting Bowman to a sales event.

4.      Art Van denies that it called Bowman or anyone else without first obtaining prior express consent, denies that its calls were telemarketing calls, and has raised other defenses.

5.      Notwithstanding their disagreements as to the underlying merits of their respective claims and defenses, the parties have entered into a Settlement Agreement, subject to Court approval, that provides relief to the proposed class, including: (i) the establishment of a settlement fund of five million eight hundred seventy-five thousand dollars ($5,875,000 USD) for the payment of all approved claims, settlement administration expenses, and any incentive awards and award of attorneys' fees and for reimbursement of costs approved by the Court, (ii) requiring that Art Van take affirmative steps to ensure that it does not call or contract with any third party to call consumers using pre-recorded voice technology without first securing the prior express consent of the called party.

WHEREFORE, Plaintiff seeks preliminary approval of this class action Settlement, certification of the proposed class for settlement purposes only, appointment of the Plaintiff as the Settlement Class Representative, and appointment their counsel, Steven Woodrow, Patrick Peluso, and Taylor Smith from Woodrow & Peluso, LLC together with attorney Stefan Coleman from the Law Office of Stefan Coleman, P.A., as Settlement Class Counsel. This Motion is based on this Notice of Motion, the Memorandum in Support of the Motion attached hereto and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated:     April 26, 2018              Respectfully Submitted,

                                       MICHAEL BOWMAN, individually and
                                       on behalf of a class of similarly situated
                                       individuals,


                                       By: s/ Steven L. Woodrow

                                       Bradley J. Friedman, Esq.
                                       Law Offices of Bradley J. Friedman, Esq.
                                       30300 Northwestern Hwy, Suite 106
                                       Farmington Hills, MI 48334
                                       248-932-3500 (phone)
                                       248-932-1734 (fax)
                                       bfriedmanesq@gmail.com

                                       Steven L. Woodrow
                                       swoodrow@woodrowpeluso.com

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E Mexico Avenue, Suite 300
Denver, CO 80210
(720) 213-0675

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**MICHAEL BOWMAN**, individually
and on behalf of all others similarly
situated,

                           Plaintiff,

v.

**ART VAN FURNITURE, INC.**, a
Michigan corporation,

                           Defendant.

Case No. 17-cv-11630-NGE

Hon. Nancy G. Edmunds

Mag. R. Steven Whalen

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUE PRESENTED...........................................v

CONTROLLING OR MOST APPROPRIATE AUTHORITIES....................vi

TABLE OF AUTHORITIES ....................................................... vii

I.    Introduction.....................................................................1

II.   The TCPA .....................................................................4

III.  Summary of the Plaintiff's Claims, Litigation, and Settlement Process..6

      A.    The Plaintiff's Claims and The Litigation History ..........6

      B.    The Mediation and Settlement History ...........................8

IV.   Key Terms of the Settlement .......................................9

      A.    Class Definition.......................................................10

      B.    Monetary Relief ......................................................10

      C.    Prospective Relief ...................................................11

      D.    Release of Liability .................................................11

      E.    Notice .......................................................................12

V.    The Proposed Settlement Class Should Be Certified .................12

      A.    The Numerosity Requirement is Satisfied .....................14

      B.    The Requirement of Commonality is Met as Well..........16

      C.    The Requirement of Typicality is Also Satisfied ............18

      D.    The Proposed Settlement Class Representative and Proposed
            Settlement Class Counsel are Adequate Representation Under

Rule 23(a)(4)..................................................................20

E.  The Proposed Settlement Meets the Requirements of Rule
    23(b)(2) and (b)(3) ...................................................23

    1.  The Settlement Class May Be Certified
        Under Rule 23(b)(2) ...........................................23

    2.  Settlement Class is Also Amenable to Certification Under
        Rule 23(b)(3) ...................................................24

        a.  Common Questions of Law and Fact Predominate ..25

        b.  This Class Action is the Superior Method of
            Adjudication..............................................26

VI.   The Court Should Appoint Plaintiff's Counsel as Class Counsel..........27

VII.  The Proposed Settlement is Fundamentally Fair, Reasonable, and
      Adequate, and Thus Warrants Preliminary Approval............................29

      A.  There is no risk of fraud or collusion—the instant Settlement was
          only reached through a formal mediation session, followed by
          continued negotiations, overseen by a nationally respected
          mediator. ...............................................................31

      B.  The complexity, expense, and likely duration of the litigation
          favors approving the Settlement. ........................................33

      C.  The Parties engaged in sufficient fact-finding so as to allow them
          to properly evaluate their respective claims and defenses. ...........35

      D.  The Settlement provides favorable relief when viewed against the
          likelihood of success on the merits.....................................36

      E.  Class counsel and the Class Representative support the
          Settlement................................................................40

      F.  The reaction of absent class members will undoubtedly be
          favorable.................................................................41

**G.**   **The instant Settlement is in the public's interest.** ..........................41

**VIII.**  **The Proposed Plan of Class Notice is the Best Practicable Under the Circumstances**................................................................42

**IX.**   **Conclusion** ....................................................................................45

**PLAINTIFF MICHAEL BOWMAN'S BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**CONCISE STATEMENT OF ISSUE PRESENTED**

I.      Does the Settlement Agreement reached by the Parties—which provides for a Settlement Fund of five million eight hundred seventy-five thousand dollars ($5,875,000 USD) and strong prospective relief to ensure Defendant's compliance with the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA")—fall within the range of a fair, reasonable, and adequate result so as to warrant an Order granting preliminary approval and requiring that Notice be disseminated to the Settlement Class in accordance with the Settlement Agreement?

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

### *General Authorities*

47 U.S.C. § 227, *et seq.*

Fed. R. Civ. P. 23, *et seq.*

## V.

Fed. R. Civ. P. 23, *et seq.*

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011)

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)

## VI.

Fed. R. Civ. P. 23(g), *et seq.*

## VII.

Fed. R. Civ. P. 23(e), *et seq.*

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001)

## VIII.

Fed. R. Civ. P. 23, *et seq.*

# TABLE OF AUTHORITIES

*Abdeljalil v. General Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) .........17

*Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294 (6th Cir. 1974) ...................14

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................*passim*

*Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565 (6th Cir. 2004) ...................14

*Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338 (6th Cir. 2016) .........................4

*Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC,
    2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ................................................37

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) .................................24, 25

*Bee, Denning, Inc. v. Capital Alliance Group*, Case No. 13-cv-2654-BAS-WVG,
    2015 WL 5675798 (S.D. Cal. Sept. 24, 2015) .............................................20

*Bellows v. NCO Financial Systems, Inc.*, No. 3:07-cv-01413-W-AJB,
    2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) ................................................37

*Bert v. AK Steel Corp.*, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)...................32

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014).........17

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877 (6th Cir. 1997) ...........................19

*Bobbitt v. Acad. of Court Reporting, Inc.*, 2009 WL 2168833 (E.D. Mich. July 21,
    2009) .............................................................................................................31

*Bovee v. Coopers & Lybrand*, 216 F.R.D. 596 (S.D. Ohio 2003) ...........................16

*Burris v. Sherwin-Williams, Co.*, No. 4:15-cv-00343-DW
    (W.D. Mo. order filed Nov. 17, 2015) ..........................................................37

*Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402 (E.D. Mich. 2012)...25, 26

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006).........................................14

*Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355 (3d Cir. 2015) ...............5

*Ferrington v. McAfee, Inc.*, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) .............37

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .............37

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016).....................37

*Granada Invs. Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992)..................31, 41

*Grant v. Capital Mgmt. Srvs., L.P.*, 2011 WL 3874877 (9th Cir. Sept. 2, 2011) ...... 5

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) ........................................ 13

*Hinman v. M & M Rental Ctr.*, 545 F.Supp.2d 802 (N.D. Ill. 2008) ....................... 17

*Hyland v. HomeServices of Am., Inc.*, 2012 WL 1575310
    (W.D. Ky. May 3, 2012) .............................................................................. 40

*In re Am. Med. Sys.*, 75 F.3d 1069 (6th Cir. 1996) ........................................... 19, 21

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill.
    2015) .......................................................................................................... 40

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ........... 31, 41

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich.
    2008) .......................................................................................................... 33

*In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161
    (E.D. Mich. Aug. 2, 2010) ........................................................................... 30

*In re Polyurethane Foam Antitrust Litig.*, 2012 WL 12868246
    (N.D. Ohio Jan. 23, 2012) ........................................................................... 30

*In re Telectronics*, 137 F. Supp. 2d 985 (S.D. Ohio 2001) ..................................... 29

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen.
    Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ............................... 21, 31, 35, 36

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007) ....................... 20

*Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2017 WL 5247538 (S.D.
    Ohio Nov. 13, 2017) ................................................................................... 19

*Kinder v. Nw. Bank*, 278 F.R.D. 176 (W.D. Mich. 2011) .......................... 14, 15, 16

*Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144
    (S.D. Ohio May 30, 2012) ...................................................................... 35, 36

*Mims v. Arrow Financial Svcs's, LLC*, 132 S.Ct. 740 (2012) .................................. 4

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ............................................. 16

*Powers v. Hamilton County Pub. Defender Comm'n*,
    501 F.3d 592 (6th Cir.2007) ........................................................................ 25

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ............ 40

*Satchell v. Fed. Express Corp.*, 2007 WL 1114010 (N.D. Cal. Apr.13, 2007) ....... 32

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)..........................4

*Smith v. ComputerTraining.com, Inc.*,
    2011 WL 308992 (E.D. Mich. Jan. 27, 2011) ................................................14

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)...........................16, 19

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*,
    262 F.3d 559 (6th Cir. 2001) .......................................................................29

*Thacker v. Chesapeake Appalachia, L.L.C.*, (E.D. Ky. 2009)...........................30, 32

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ....................................*passim*

*Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287 (N.D. Ill. 2014) .............17

*Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168 (9th Cir. 2010) .............19

## STATUTES, RULES, SECONDARY SOURCES

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*........................*passim*

47 C.F.R. § 64.1200, *et seq.*.........................................................................1, 5, 17

Fed. R. Civ. P. 23 .........................................................................................*passim*

Manual for Complex Litigation (4th ed. 2004) ................................................13, 30

A. Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS
    (4th ed. 2002)....................................................................................29, 30, 43

## I.    Introduction

This case concerns certain pre-recorded voice calls—calls that play a pre-recorded message—that Defendant Art Van Furniture, Inc.[1] ("Defendant" or "Art Van") (or its agent) allegedly caused to be made to Named Plaintiff Michael Bowman ("Plaintiff" or "Bowman") and others. That is, Art Van is a prominent seller of retail furniture with hundreds of locations throughout the Midwestern United States. Named Plaintiff Bowman alleges that Art Van placed the calls to promote Art Van's VIP sales events and products and that Art Van failed to obtain prior express consent to make the calls as required by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. and its implementing regulations, 47 C.F.R. § 64.1200, *et seq*.

Bowman received Art Van's pre-recorded voice calls despite the fact that he never provided Art Van consent to call him. He filed the instant lawsuit on behalf of himself and all others, and, after filing, counsel for the Parties began engaging in informal discovery regarding key issues related to Bowman's claims, the size and scope of the alleged Class, and Art Van's potential defenses. These talks lead counsel for both Parties to participate in a full-day mediation session overseen by a nationally-respected mediator, the Honorable Magistrate Judge Morton Denlow

---

[1] Art Van Furniture, Inc., a Michigan corporation, converted to Art Van Furniture, LLC, a Delaware limited liability company.

(ret.) of JAMS, Chicago.

While the mediation session was successful in bringing the Parties together for a discussion regarding the respective claims and defenses in the case, the Parties did not reach a settlement on the day of the mediation. Rather, the Parties remained too far apart and decided that they would proceed to prepare for the hearing on Defendant's Motion to Dismiss and to Strike Class Allegations ("Motion to Dismiss"). During the lead up to the hearing on the Motion to Dismiss, and notwithstanding each side's expressed willingness to have the Court adjudicate the issues raised by Art Van, the Parties continued their negotiations through a series of telephone conferences with Judge Denlow. Following this significant back and forth the Parties remained deadlocked until Judge Denlow helped break the impasse. The result is a strong Settlement ("Settlement Agreement" or "Settlement," attached hereto as Exhibit A) that fairly, reasonably, and adequately compensates the Settlement Class. (Settlement Agrmt. at § IV.2.)

Indeed, the instant Settlement Agreement is undeniably impressive. In addition to requiring Art Van to take proactive measures to ensure that it only calls consumers using a pre-recorded voice who have provided prior express consent (and that the parties with whom it contracts comply with the TCPA), the Settlement Agreement creates a Settlement Fund totaling five million eight-hundred seventy-five thousand dollars ($5,875,000 USD) from which Settlement

Class Members can file claims and receive cash compensation. The process is straightforward. Settlement Class Members who file Valid Claims that are approved by the Court will be entitled to received one (1) Award Unit. The value of the Award Units will be calculated by subtracting from the Settlement Fund all amounts for Notice and Settlement Administration Expenses, any incentive award to the Class Representative, and any award of reasonable attorneys' fees (the "Net Settlement Fund") and then dividing by the total number of units (calculated as the number of Settlement Class Members who file Valid Claims that are approved by the Court). Award Units will all be of equal value.

Finally, the Agreement provides Class Members with Notice of their rights to be excluded from, comment upon, and object to the Settlement Agreement and procedures for redeeming their award through the use of a Claim Form (attached to the Settlement Agreement as Exhibit 1), which can be mailed to the Settlement Administrator or submitted electronically via the Settlement Website. (*See* Settlement Agrmt. at § II.3.)

The results achieved by the Settlement—which compare favorably on a per-claim basis to settlements that have received final approval by courts in this and other districts—demonstrate beyond question the propriety of granting preliminary approval. As such, Named Plaintiff Bowman respectfully moves the Court for an Order: (1) granting preliminarily approval to the instant Settlement Agreement, (2)

certifying the proposed Settlement Class, (3) appointing Plaintiff Michael Bowman as Settlement Class Representative (the "Class Representative"), (4) appointing Steven Woodrow, Patrick Peluso, and Taylor Smith of Woodrow & Peluso, LLC and Stefan Coleman of the Law Offices of Stefan Coleman P.A. as Settlement Class Counsel ("Class Counsel"), and (5) ordering that Notice be disseminated to the Settlement Class in accordance with the Settlement Agreement.

## II.     The TCPA

A brief summary of the law that forms the basis of Plaintiff's claims helps put the Settlement Agreement in context. Congress enacted the TCPA in 1991 as a response to "[v]oluminous consumer complaints about abuses of telephone technology…." *Mims v. Arrow Financial Svcs's, LLC*, 132 S.Ct. 740, 744 (2012). The Act "makes it unlawful for any person to place a call 'using any automatic telephone dialing system or ***an artificial or prerecorded voice***' to a cell phone number without obtaining the 'prior express consent of the called party.'" *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 342 (6th Cir. 2016). In enacting the TCPA, Congress sought to "protect the privacy interests of telephone subscribers." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see also Mims*, 132 S.Ct. at 745.

To prevail on a claim for pre-recorded voice calls, a plaintiff must show that a person: (1) made telephone calls, (2) using a pre-recorded voice, (3) to a

telephone number assigned to a cellular telephone service or a residential landline. *See* 47 U.S.C. §§ 227(b)(1)(B). Whether Plaintiff and other Class members provided their prior express consent to receive such text messages is an affirmative defense. *See, e.g.*, *Grant v. Capital Mgmt. Srvs., L.P.*, No. 11-56200, 2011 WL 3874877, at *1 n.1 (9th Cir. Sept. 2, 2011) ("'[E]xpress consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."); *see also Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 366 (3d Cir. 2015) (recognizing defendant's burden of showing prior express consent as an affirmative defense). Where calls are for telemarketing purposes, such prior express consent must be in writing and "include a clear and conspicuous disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8)(i). The TCPA sets statutory damages in the amount of $500 per violation, which may be trebled where willfulness is shown, and allows for, where necessary, appropriate injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A-B).

Having put Plaintiff's claims in legal perspective, a review of the process leading up to the Settlement Agreement is demonstrative of the procedural and substantive fairness of the agreement.

## III. Summary of the Plaintiff's Claims, Litigation, and Settlement Process.

This case involves TCPA violations that concern pre-recorded voice calls to residential landline telephones.

Following initial discussions of counsel and an exchange of information regarding the nature of Art Van's pre-recorded voice messages and the number of persons Art Van called (and the total number calls at issue), the Parties engaged in a mediation process with a respected third-party neutral, Hon. Morton Denlow (ret.) of JAMS in Chicago. The result of these efforts by Plaintiff's counsel, Defendant's counsel, and the mediator is an undeniably favorable deal that reflects fair, reasonable, and adequate relief for the Settlement Class.

### A. The Plaintiff's Claims and The Litigation History.

On May 23 2017, Plaintiff Bowman filed a class action complaint in the United States District Court of the Eastern District of Michigan against Art Van alleging that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (*See* Dkt. 1.) Specifically, the Complaint alleged that Art Van violated the TCPA by placing calls using a pre-recorded voice without Plaintiff's prior express written consent. (*Id*.)

Following the filing of the initial Complaint, counsel for the parties engaged in discussions regarding their respective views of the case. (*See* Declaration of Steven L. Woodrow ("Woodrow Decl."), attached hereto as Exhibit B.) When the case was first filed, Art Van's in-house legal counsel reached out to Plaintiff's counsel for initial discussions regarding the circumstances of the calls received by Plaintiff Bowman. (Woodrow Decl. ¶ 8.) Plaintiff's information initially did not appear in Art Van's (or its vendor's) records, and the Parties agreed to allow Plaintiff to subpoena his phone records. (*Id.*) Art Van thereafter retained attorneys from the law firm of Dykema Gossett PLLC. Proposed Settlement Class Counsel and Art Van's new lawyers engaged in further fact-finding with respect to Bowman's claims. (*Id.* ¶ 9.) Through this process it was uncovered that Art Van had placed calls to Bowman's landline telephone number. (*Id.* ¶ 10.) On July 12, 2017, Bowman filed a First Amended Complaint setting forth clarified facts with respect to the type of phone Bowman was using when he received the calls. (*Id.*)

On August 21, 2017, Art Van's attorneys at Dykema Gossett filed a Motion to Withdraw and new counsel from the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. appeared in the case. (Dkts. 13, 14, 17.) Additionally, attorney Martin Jaszczuk of Jaszczuk PC, a specialist in TCPA class action defense, appeared on Art Van's behalf as well. (Dkt. 21.) On September 20, 2017, Art Van, through its new lawyers, filed a Motion to Dismiss in part and Strike

Class Allegations. (Dkt. 18.) On October 25, 2017, Plaintiff Bowman filed his response in opposition to Art Van's Motion to Dismiss and to Strike. (Dkt. 22.)

**B.     The Mediation and Settlement History.**

During preparations for the hearing on Art Van's Motion to Dismiss, counsel for the Parties began discussing the potential for settlement. (Woodrow Decl. ¶ 12.) Counsel for the Parties agreed to engage in settlement discussions through a formal mediation process and worked to schedule a mediation session with the Honorable Morton J. Denlow of JAMS in Chicago, a well-respected mediator with substantial TCPA class action experience. (*Id.* ¶ 13.) Prior to the mediation session, the Parties exchanged briefs and critical information regarding the number of persons called, the total number of calls in the case, and, in general terms, Art Van's calling campaigns. Furthermore, during the mediation process, the Parties exchanged additional, updated information regarding the size and scope of the proposed class and Art Van's planned defenses. (*Id.* ¶¶ 14-15.)

Despite extensive discussions facilitated by Judge Denlow, counsel for the Parties were unable to reach an agreement in principle regarding the relief to be made available to the Settlement Class prior to the close of the mediation. (*Id.* ¶ 16.) Instead, the Parties agreed to proceed with a previously scheduled hearing on Art Van's Motion to Dismiss.

At the same time, the Parties also agreed to continue their discussions to determine whether a resolution could be reached**.** (*Id.* ¶ 17.) Hence, notwithstanding their continued preparations for the hearing, Judge Denlow worked on a parallel settlement track by engaging the Parties through series of telephone negotiations. (*Id.*) The result of this back-and-forth effort was that the Parties reached a Settlement Agreement in principal with Judge Denlow's substantial oversight shortly prior to the hearing on the Motion to Dismiss. (*Id.* ¶ 18.) Only after an agreement in principal was reached with respect to the Settlement Class did the Parties discuss reasonable attorneys' fees for proposed Class Counsel or incentive awards. (*Id.*) Counsel for the Parties thereafter worked to draft the Settlement Agreement, the Claim Form, and the notices, and to resolve outstanding data issues. (*Id.* ¶ 19.) The outcome of all of this work and effort is a model settlement that Plaintiff Bowman and proposed Class Counsel are pleased to bring to the Court for preliminary approval.

As set forth below, the Parties' extensive efforts and arm's length negotiations have produced settlement terms that clearly fall within the range of what this Court, or any court, would ultimately adjudicate as fair, reasonable, and adequate on final approval.

## IV.     Key Terms of the Settlement

The precise terms of the Settlement are set froth in the Settlement

Agreement attached hereto. (Ex. A.) For convenience, a brief summary of the

essential terms follows:

### A.     Class Definition

The "Settlement Class" or "Class" is defined as "all individuals and entities

who were called by or on behalf of Art Van Furniture through the use of pre-

recorded voice technology between May 23, 2013 and the date of entry of the

Preliminary Approval Order." (Settlement Agrmt. at § II.36.) This definition is

intended to cover all primary users of the telephone numbers called (and any

family members who used the telephone device to which the telephone number

was assigned during the class period for the calls made to that device). As

explained below, there are approximately 1,150,000 Settlement Class Members

(and Art Van has addresses for all but approximately 20,000-40,000 of them).

### B.     Monetary Relief

The Settlement provides Class Members who file with substantial monetary

relief. Specifically, Art Van has agreed to the establishment of a Settlement Fund

of five million eight hundred seventy-five thousand dollars ($5,875,000) total

("Settlement Fund"). (*Id.* at § II.39.) The Settlement Fund will be used to pay all

approved claims, Settlement Administration Expenses, any Incentive Award to the

proposed Settlement Class Representative, and any Fee Award. That is, Settlement

Administration Expenses, any Incentive Award, and any Fee Award will be

subtracted from the Settlement Fund. The amount that remains, referred to as the

Net Settlement Fund, will then be divided by the total number of Award Units

(which will be equal to the number of Valid Claims that are approved by the

Court). Settlement Checks will be issued to each Settlement Class Member who

submitted an approved Valid Claim in the amount of one (1) Award Unit.[2] Any

monies remaining in the Settlement Fund from checks that remain uncashed are to

be donated to the *Cy Pres* recipient approved by the Court.

## C.    Prospective Relief

In addition to the $5,875,000 in cash relief, the Settlement Agreement also

requires that Art Van adopt certain prospective measures:

> For a period of twenty-four (24) months following the Effective Date,
> and subject to changes in applicable law, Art Van agrees not to cause
> telemarketing calls to be placed to residential landline telephone
> numbers using pre-recorded voice technology without first obtaining
> the prior express written consent of the called party. Art Van also agrees
> to only contract with third-parties who affirmatively agree to abide by
> the TCPA and all related regulations in the placement of outbound
> telephone calls using pre-recorded voice technology.

---

[2] Under this formula, and solely for illustrative purposes, if the Parties were to
assume notice and administrative expenses of approximately $800,000 with a Fee
Award of 30% of the Settlement Fund and a $5,000 incentive award, then using
traditional class action take rates of 3%-5% (*see* note 5, *infra*) each Award Unit
would equal $96.01 (3%) - $57.61 (5%)—recoveries well in line with TCPA class
action settlements.

(Settlement Agrmt. § III.5.) Hence, the Settlement not only compensates Settlement Class Members for Art Van's alleged violations of the Act, it works to ensure that they won't be bothered by additional future calls.

### D.    Release of Liability

In exchange for the relief described above, Art Van and its related and affiliated entities will receive a full release of any claims relating to any phone calls made under the TCPA or any similar state statute or law. (Settlement Agrmt. § 5.) The Release includes unknown claims, though these are limited to claims that could have been brought in the litigation (which dealt with phone calls, not other issues). As such, this is not a general release of all claims, but rather a complete release of claims that were or could have been brought in the litigation.

### E.    Notice

The Settlement also calls for the dissemination of notice to the Settlement Class Members. This includes a comprehensive plan that features direct mail and email notice, the establishment of a Settlement Website where Settlement Class Members can access key documents, including the Settlement Agreement and a copy of the traditional long form notice, and file claims (and download them for mailing). (Settlement Agrmt. § IV.3.) The Notices explain the key terms of the Settlement, the process for filing claims, and the rights of Settlement Class Members to opt out/object.

As explained below, such terms are decidedly favorable to the Settlement Class, and the Court should grant preliminary approval to the instant Settlement. The first step is certifying the Settlement Class for settlement purposes.

## V.   The Proposed Settlement Class Should Be Certified.

The first step for a court faced with a Motion for Preliminary Approval of a class action settlement is to determine whether the proposed settlement class may be certified for settlement purposes. Manual for Complex Litigation §21.632 (4th ed. 2004); *see Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617-620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). This is only for the purposes of settlement (if the settlement doesn't receive final approval, the Parties revert to their pre-settlement positions) and the standards are relaxed somewhat. The plaintiff must first demonstrate that the proposed class and proposed class representatives meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4).

In addition, a plaintiff seeking class certification must also meet at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23(b); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2548 (2011). Rule 23(b)(2) requires that the plaintiff demonstrate that the defendant acted or refused to act on grounds that apply generally to the class. Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires that the plaintiff demonstrate that "questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011). Courts generally do not place much emphasis on manageability or superiority when faced with a settlement. *Amchem*, 521 U.S. at 623.

In this case, and as set forth more fully below, Plaintiff meets each of the elements for class certification under Rule 23(a) and satisfies the requirements of both Rule 23(b)(2) and (b)(3).

### A. The Numerosity Requirement is Satisfied.

The first prerequisite to class certification under Rule 23 is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no specific minimum number of proposed class members needed to satisfy the numerosity requirement, but the Sixth Circuit has held that as few as thirty-five class members meets this requirement. *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974); *see also Kinder v. Nw. Bank*, 278 F.R.D. 176, 183 (W.D. Mich. 2011) (explaining that "when the class size reaches a substantial size, impracticability of joinder may be satisfied by numbers alone.") (*citing In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (finding the numerosity element satisfied

14

because, in part, the "proposed class includes thousands of individuals"); *see also Bacon v. Honda of America Mfg., Inc.,* 370 F.3d 565, 570 (6th Cir. 2004) (class of 800 employees presented "a number well beyond the point that joinder would be feasible"); *see also Smith v. ComputerTraining.com, Inc.*, No. 2:10-CV-11490, 2011 WL 308992, at *3 (E.D. Mich. Jan. 27, 2011) (approximately 2,000 class members satisfies numerosity).

Applied here, there is no question that the Settlement Class is sufficiently numerous. That is, the settlement involves calls to approximately 1,150,000 individual phone numbers, which likely represent the same or a similar number of individual subscribers. (*See* Woodrow Decl. ¶ 14.) This well exceeds the minimum needed to satisfy Rule 23's requirement of numerosity.

And the Class is ascertainable as well. *See Kinder*, 278 F.R.D. at 182 (*citing* 7A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1760 (3d ed. 2005) ("[T]he requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.")). Identifying Settlement Class Members is straightforward and objective: Art Van has lists of phone numbers that will be provided to the Settlement Administrator from which Settlement Class Members can be identified, and there is nothing subjective about whether someone received a telephone call. (Settlement Agrmt. at § III.1.) Given

15

that Art Van collected certain phone numbers from its customer lists (compiled

with the help of its vendor), Art Van's data also includes, for a significant majority

of the total population called, additional information such as names and addresses

(indeed, address data is apparently unavailable for only approximately 20,000 -

40,000 or so Settlement Class Members). (Woodrow Decl. ¶ 14.) As such, the

proposed Settlement Class here is ascertainable and numerous as it consists of

hundreds of thousands of objectively identifiable persons—readily satisfying

numerosity. *See Kinder*, 278 F.R.D. at 182 (class of 46,000 numerous).

Accordingly, the proposed Settlement Class is sufficiently numerous here.

**B.      The Requirement of Commonality is Met as Well.**

Second, Rule 23 also requires that "there are questions of law or fact

common to the class." Fed. R. Civ. P. 23(a)(2). Commonality may be demonstrated

when the claims of all class members "depend upon a common contention," with

"even a single common question" sufficing. *Dukes*, 131 S.Ct. at 2545, 2557

(citation omitted); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th

Cir. 1998). The common contention must be of such a nature that it is capable of

class-wide resolution and the "determination of its truth or falsity will resolve an

issue that is central to the validity of each one of the claims in one stroke." *Dukes*,

131 S.Ct. at 2545. The permissive standard of commonality allows for minor

differences among class members. Indeed, "[t]he mere fact that questions peculiar

to individual class members could remain does not necessarily defeat a finding of commonality." *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003); *see also Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008) ("[W]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.").

Courts have found (somewhat routinely) that the issue of prior express consent by class members maintaining claims for violations of the TCPA satisfies the commonality requirement. *See, e.g.*, *Abdeljalil v. General Elec. Capital Corp.*, 306 F.R.D. 303, 308-09 (S.D. Cal. 2015); *see also Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 294 (N.D. Ill. 2014) ("Courts have held, for example, that the issue of individual consent could be addressed on a class-wide basis where the source of the contact information for all of the recipients of unwanted faxes was a single 'leads' list compiled by a third party"); *see also Hinman v. M & M Rental Ctr.*, 545 F.Supp.2d 802, 806–07 (N.D. Ill. 2008); *see also Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014) ("Again, the key question here is whether 'the same evidence will suffice for each member to make a prima facie showing' as to consent.").

The claims of every Settlement Class Member in this case are nearly identical. That is, the Settlement Class Members share common statutory TCPA

claims premised on the allegation that Art Van unlawfully called them using its pre-recorded voice technology without first obtaining prior express consent as required under 47 C.F.R. § 64.1200, *et seq*. The TCPA mandates that specific disclosures be made to obtain prior express written consent for telemarketing purposes. Art Van either made such disclosures or it failed to secure prior express consent. Likewise, Art Van's calls were either for telemarketing purposes or they were not, and the system used to make the calls either used a pre-recorded voice or it did not—this is not a case where certain calls were placed using a live person.

Hence, the calls made in this case lead to the following common factual and legal questions for the class:

- Whether Art Van obtained prior express written consent to call the Settlement Class Representative and the other Settlement Class Members;

- Whether the dialing system qualifies as a pre-recorded voice under the TCPA;

- Whether Art Van made the calls at issue or can be held liable for the conduct of any third parties it hired to make the calls at issue; and

- Whether the calls were for telemarketing purposes such that written consent was required.

As such, the claims of the Settlement Class Members are susceptible to a "class wide resolution" through the Settlement and are based on common evidence in satisfaction of Rule 23(a)(2). Thus, Plaintiff Bowman meets the requirement of commonality for settlement purposes.

## C.   The Requirement of Typicality is Also Satisfied.

Rule 23 next requires that the class representative's claims be typical of those of the putative class he or she seeks to represent. Fed. R. Civ. P. 23(a)(3). The typicality element is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998); *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2017 WL 5247538, at *3 (S.D. Ohio Nov. 13, 2017). The typicality requirement is satisfied if the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Typicality is measured under a permissive standard—the representative's claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (*citing In re Am. Med. Sys.*, 75 F.3d at 1083); *see also Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (Typicality requirement ensures that "the interests of the named representative align with the interests of the class.").

There can be no doubt in this case that the claims of the proposed Settlement

Class Representative are typical of those of the rest of the Settlement Class Members. As with the absent Settlement Class Members, Bowman received Art Van's pre-recorded voice calls despite never having provided Art Van with prior express consent to call them. The Settlement Class Representative alleges that the calls were all generally made for commercial, telemarketing purposes and that Art Van failed to obtain consent as set forth in the TCPA prior to making the calls. As such, the statutory injuries suffered by Plaintiff Bowman essentially mirror the legal injuries of the Settlement Class Members—everyone experienced the same type of annoyance and injury necessarily attendant to the receipt of unwanted robocalls (pre-recorded voice calls). (*See* Dkt. 1, ¶¶ 37-38.)

As a consequence, and because the claims of the Plaintiff and proposed Class Members "arise from the same conduct of the Defendant[s] – alleged violations of the TCPA – and are based on the same legal theories" the typicality requirement is satisfied. *See Bee, Denning, Inc. v. Capital Alliance Group*, Case No. 13-cv-2654-BAS-WVG, 2015 WL 5675798 at *9, *10 (S.D. Cal. Sept. 24, 2015); *see also Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 648 (W.D. Wash. 2007) (holding the typicality requirement satisfied where the named plaintiff and putative class members all received unsolicited fax advertisements from defendant).

**D.    The Proposed Settlement Class Representative and Proposed Settlement Class Counsel are Adequate Representation Under**

### Rule 23(a)(4).

Rule 23(a)(4), in turn, requires that the proposed class representative has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In this Circuit: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Medical Systems*, 75 F.3d at 1083 (citation omitted); *see also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) ("Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel ... which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members."). Where a plaintiff's claims are found to be typical of those of the class, appointing that plaintiff as the class representative will also ensure that the interests of the class remain adequately protected. *See Dukes*, 131 S.Ct. at 2551 n.5 (discussing how the fulfillment of the typicality requirement usually also supports a finding of adequacy because an adequate representative will have typical claims).

Applied to the instant record, Bowman's interests are entirely representative of and consistent with the interests of all Settlement Class Members. They are committed to the effective and diligent prosecution of this case and have no actual

conflicts of interest that would negate such representation. In fact, there are no conflicts of record at all. Further, Mr. Bowman has served admirably as a Named Plaintiff by staying abreast of the litigation and doing everything else required of him in order to investigate the claims, file the Complaint, and pursue the case on a class-wide basis.

As for the second requirement, proposed Class Counsel have already undertaken significant steps to further the interests of proposed Class Members by ascertaining the Class, preparing the pleadings and filing the lawsuit, litigating the case, and by reaching this proposed Settlement Agreement through an arm's length negotiation overseen by a respected mediator. (Woodrow Decl. ¶¶ 3-19.) Proposed Class Counsel will also continue to zealously fight for and protect the interests of the Settlement Class Members, as they have regularly engaged in major complex litigation and have extensive experience in consumer class action lawsuits. This includes specific experience prosecuting and litigating TCPA class action lawsuits that are similar in size, scope, and complexity to the present case. (*See* Ex. B, Woodrow Decl. ¶ 22; *see also* Firm Resume of Woodrow & Peluso, LLC, a copy of which is attached to the Woodrow Decl. as Exhibit 1, and Firm Resume for the Law Office of Stefan Coleman P.A., a copy of which is attached to the Woodrow Decl. as Exhibit 2.) As such, the Plaintiff and proposed Class Counsel will adequately represent the interests of the members of the Settlement Class.

**E.     The Proposed Settlement Meets the Requirements of Rule 23(b)(2) and (b)(3).**

After meeting the requirements of Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) to certify the proposed class. *Dukes*, 131 S.Ct. at 2548. As the relief secured for the Settlement Class requires both a change in Art Van's business practices as well as monetary relief to the Class, certification is appropriate under both Rule 23(b)(2) and Rule 23(b)(3).

**1.     The Settlement Class May Be Certified Under Rule 23(b)(2).**

Rule 23(b)(2) provides that a class action can be maintained where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." As the Supreme Court explained in *Dukes*, "the key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoyed or declared unlawful only as to all of the class members or as to none of them.'" 131 S.Ct. at 2557 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. Rev. 97, 131–32 (2009)).

Under the terms of the Settlement Agreement, Art Van has agreed to adopt certain prospective business changes designed to reduce the likelihood that its calling programs run afoul of the TCPA. This includes that "[f]or a period of

twenty-four (24) months:

> Art Van agrees not to cause telemarketing calls to be placed to residential landline telephone numbers to be called using its pre-recorded voice technology without first obtaining the prior express written consent of the called party. Art Van also and agrees to only contract with third-parties who affirmatively agree to abide by the TCPA and all related regulations in the placement of outbound telephone calls using pre-recorded voice technology.

(Settlement Agrmt. at § III.5.) Such policy enhancements apply to the entire Settlement Class evenly—there are no special rules for subsets of Settlement Class Members. As such, the Settlement Class may be, for settlement purposes only, certified in accordance with Rule 23(b)(2).

## 2. The Settlement Class is Also Amenable to Certification Under Rule 23(b)(3).

The record also supports certification under Rule 23(b)(3). Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "A plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (internal citations and quotations omitted). On the other hand, the superiority requirement of Rule

23(b)(3) considers "the difficulties likely to be encountered in the management of a class action" and whether individual litigation would yield small recoveries. *Id.*; *see also Amchem*, 521 U.S. at 617 ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

### a.    Common Questions of Law and Fact Predominate.

The predominance requirement focuses on whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. Predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton County Pub. Defender Comm'n,* 501 F.3d 592, 619 (6th Cir. 2007); *see also Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407 (E.D. Mich. 2012); *see also Beattie,* 511 F.3d at 564 (plaintiff satisfies predominance requirement when it "establish[es] that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof.").

In this case, the common factual and legal questions—whether any Settlement Class Members gave consent as required by the TCPA, whether Art Van called for telemarketing purposes, and whether Art Van used a pre-recorded voice to make the calls—all cut to the issues "at the heart of the litigation." (Dkt. 1,

¶ 17.) Indeed, the answers to these questions are not tangential or theoretical such that the litigation won't be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Settlement Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied.

> **b.     This Class Action is the Superior Method of Adjudication.**

As a final matter, certification of this suit as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the class. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd*., 287 F.R.D. 402, 407–08 (E.D. Mich. 2012) (citing *Daffin v. Ford Motor Co.,* 458 F.3d 549, 554 (6th Cir. 2006)). A class action is superior particularly in those situations in which it "vindicat[es] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem,* 521 U.S. at, 617. This final factor has far less application when the court is presented with a settlement class for review, as no trial of the case will be necessary. *Amchem*, 521 U.S. at 623.

The Settlement Class at issue here is comprised of approximately 1,150,000 telephone owners who have claims that range from $500 to a few thousand dollars,

depending on the number of phone calls they received. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aide of competent counsel. Instead, the individual prosecution of their TCPA claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Indeed, because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial") (citation omitted).

Accordingly, the Court may certify the Settlement Class pursuant to Rule 23(b)(3) as well.

## VI.     The Court Should Appoint Plaintiff's Counsel as Class Counsel.

The next step when deciding whether to preliminarily approve a settlement is to appoint Settlement Class Counsel. Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following factors: (1) proposed class counsel's work in identifying or investigating potential claims, (2) proposed class counsel's

experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) proposed class counsel's knowledge of the applicable law, and (4) proposed class counsel's resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, proposed Settlement Class Counsel have extensive experience in prosecuting similar TCPA class actions and other complex litigation. (*See* Exs. 1 and 2 to the Woodrow Decl.) This includes TCPA claims involving calls and text messages that have been allegedly sent without sufficient prior express consent.

Further, proposed Class Counsel have diligently investigated and prosecuted *this* matter by dedicating substantial resources to the investigation and litigation of the claims at issue in the case, and they successfully negotiated the instant Settlement with Art Van. (*See* Dkt. 1, at ¶¶ 4-5; *see also* Settlement Agrmt. at 2-3.) Indeed, rather than proceed to the mediation and settlement negotiations with insufficient experience against Art Van's team of polished TCPA experts and trial attorneys, the proposed Settlement Class Members were represented by experienced TCPA counsel that had conducted sufficient due diligence into the facts so as to intelligently negotiate a fair resolution.

Accordingly, the Court should appoint Steven L. Woodrow, Patrick H. Peluso, and Taylor T. Smith of Woodrow & Peluso, LLC, and Stefan L. Coleman

of the Law Offices of Stefan Coleman, P.A. as Class Counsel.

**VII.   The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate, and Thus Warrants Preliminary Approval.**

Following certification of the Settlement Class, the Court may approve the settlement only "on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *see also* A. Conte & H.B. Newberg ("Newberg"), NEWBERG ON CLASS ACTIONS, §11.25, 3839 (4th ed. 2002). In the Sixth Circuit, this process includes three steps: "(1) the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)); *see also* Newberg , §11.25, 3839 (4th ed. 2002). A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation. *In re Telectronics,* 137 F. Supp. 2d 985, 1008–09 (S.D. Ohio 2001).

The instant Settlement is presently at the first step: preliminary approval to determine if the settlement is illegal or the product of collusion. The purpose of the preliminary, pre-notification hearing is often described as needing to determine whether the proposed settlement is "within the range of possible approval." Newberg, §11.25, at 3839 (quoting Manual for Complex Litigation §30.41 (3d ed.

1995)); *see also In re Packaged Ice Antitrust Litig.*, 08-MD-01952, 2010 WL

3070161, at *4 (E.D. Mich. Aug. 2, 2010) (citation omitted). The preliminary

hearing is thus not a fairness hearing. Its purpose, rather, is so the Court can

"ensur[e] that the proposed settlement is not illegal or collusive" based upon the

"issues and evidence, as well as the arms-length nature of the negotiations prior to

the proposed settlement." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D.

262, 270 (E.D. Ky. 2009) (citation omitted).[3] Indeed, preliminary approval requires

only an "initial evaluation" of the fairness of the proposed settlement made by a

court on the basis of written submissions and informal presentations from the

settling parties. Manual for Complex Litigation § 21.632 (4th ed. 2004).

Ultimately, the Court's role is to ensure that the settlement is fundamentally

fair, reasonable, and adequate, Fed. R. Civ. P. 23(e)(2), and that "the interests of

the class as a whole are better served if the litigation is resolved by settlement

rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522

(E.D. Mich. 2003) (citation omitted). In analyzing whether a settlement agreement

---

[3] As some courts have stated, when "determining whether preliminary approval is
appropriate, the Court should evaluate on an initial basis whether the
proposed settlement 'appears to be the product of serious, informed, non-collusive
negotiation, has no obvious deficiencies, does not improperly grant preferential
treatment to class representatives or segments of the class, and falls within the
range of possible approval.'" *In re Polyurethane Foam Antitrust Litig.*, No. 10-
MD-2196 (JZ), 2012 WL 12868246, at *4 (N.D. Ohio Jan. 23, 2012) (quoting *In re
Nasdaq Market–Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

30

is fair, reasonable, and adequate, courts typically look ahead to the Sixth Circuit's

non-exhaustive factors for final approval: "(1) the risk of fraud or collusion; (2) the

complexity, expense and likely duration of the litigation; (3) the amount of

discovery engaged in by the parties; (4) the likelihood of success on the merits; (5)

the opinions of class counsel and class representatives; (6) the reaction of absent

class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace,*

*& Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th

Cir. 2007); *Bobbitt v. Acad. of Court Reporting, Inc.*, 07-10742, 2009 WL 2168833

(E.D. Mich. July 21, 2009) amended in part, 07-10742, 2009 WL 2413629 (E.D.

Mich. Aug. 6, 2009).[4]

As explained below, the Settlement Agreement falls within the acceptable

range of final approval with respect to each of these considerations.

> **A.** **There is no risk of fraud or collusion—the instant Settlement was only reached through a formal mediation session, followed by continued negotiations, overseen by a nationally respected mediator.**

The first factor weighs in favor of granting preliminary approval. As an

initial matter, "'[c]ourts presume the absence of fraud or collusion in class

action settlements unless there is evidence to the contrary.'" *Thacker v.*

---

[4] The Sixth Circuit gives this Court "wide discretion in assessing the weight an applicability of these factors." *Granada Invs. Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992) (citation omitted).

*Chesapeake Appalachia, L.L.C.,* 695 F.Supp.2d 521, 531 (E.D. Ky. 2010)
(quoting *Leonhardt v. ArvinMeritor, Inc.,* 581 F.Supp.2d 818, 838 (E.D. Mich.
2008)). Moreover, settlement negotiations overseen by an experienced mediator
are considered to be non-collusive. *See Bert v. AK Steel Corp.,* No. 1:02–cv–467,
2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an
independent mediator in settlement negotiations virtually insures that the
negotiations were conducted at arm's length and without collusion between the
parties."); *see also Satchell v. Fed. Express Corp.,* 2007 WL 1114010, at *4 (N.D.
Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement
process confirms that the settlement is non-collusive.").

  This case was only settled with the persistent help and oversight by a
nationally respected mediator, the Hon. Morton Denlow. A retired Magistrate
Judge, Judge Denlow has substantial experience mediating and resolving complex
class actions, including dozens of the nation's largest TCPA class action
settlements. Counsel for the Parties agreed to use Judge Denlow specifically due to
his skill and experience. The result was a process free of collusion—Magistrate
Judge Denlow ensured that the negotiations at all times stayed at arm's length.
Indeed, the mediation itself concluded without a resolution, and the Parties did not
discuss attorneys' fees or incentive awards until after the relief to the Class had
been negotiated through Judge Denlow's series of follow up communications.

Put simply, as the process was free of collusion or fraud, this factor supports

granting preliminary approval.

**B.    The complexity, expense, and likely duration of the litigation favors approving the Settlement.**

The second factor, which inquires into the complexity and likely duration of

the litigation, also supports approving the Settlement. *See In re Delphi Corp. Sec.,*

*Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("Courts

have consistently held that the expense and possible duration of litigation are major

factors to be considered in evaluating the reasonableness of a settlement."). "For

class actions in particular, courts view settlement favorably because it avoids the

costs, delays and multitudes of other problems associated with them." *Id.* at 497

(citation omitted).

Put simply, this case could drag on for years. First, pre-trial litigation would

be extensive, with voluminous written and oral discovery needed from both Art

Van and its vendor that it hired to make the calls at issue. Experts may also be

required to potentially testify regarding Art Van's equipment and other issues in

the case, such as the definition and contours of telemarketing and the purpose of

Art Van's calls. Indeed, substantial fact-finding would be required into the precise

language used in Art Van's recorded messages and the substance (and results) of

the company's "VIP events" and marketing. While Art Van has disputed that the

events were for sales, significant discovery would need to be conducted regarding

Art Van's promotion of such events, instructions to staff, and sales figures during the times of the events or from event attendees.

The litigation would require that Plaintiff and the proposed Settlement Class Members survive Art Van's Motion to Dismiss and then proceed with adversarial class certification. Assuming a class of some scope was eventually certified, the Court would then almost certainly face dispositive motion practice from Art Van that would consume several additional months (or longer). Assuming the Court denied summary judgment in Art Van's favor, the case would proceed to trial on a class basis. Art Van made clear that the company would rely not only on its legal arguments but also on the company's philanthropic reputation and other defenses.

Assuming Plaintiff Bowman prevailed at trial, given the total number of calls, any finding of class-wide liability could prove catastrophic for Art Van. That is, while Art Van is a wealthy company, a judgment would put it into bankruptcy —a process that presents its own delays and issues. Before this occurred, however, Plaintiff and the class members would need to beat back any appeals.

As such, there can be little doubt that the litigation would be extraordinarily complex and that it would take several years (possibly a decade) for the Settlement Class to see any real recovery. Meanwhile, the damage to Art Van of an adverse decision would threaten to leave the company insolvent. Accordingly, there can be little question that the anticipated length of the litigation favors approving the

Settlement Agreement.

**C.    The Parties engaged in sufficient fact-finding so as to allow them to properly evaluate their respective claims and defenses.**

The Court next asks whether the plaintiff has enough information to "adequately assess their case and the desirability of the proposed settlement" at this stage of the proceedings. *See Kritzer v. Safelite Solutions, LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) (citing *Kogan v. Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000)). Courts often "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding." *Id.*

Here, although the Parties reached the proposed settlement at an early stage of the case, proposed Class Counsel were able to make an informed decision regarding the appropriateness of settlement. Through the mediation process, the Parties engaged in the informal exchange of information that allowed Class Counsel to understand the size of the Settlement Class and the scope of the alleged improper conduct. (Woodrow Decl. ¶¶ 14-16.); *see also Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, No. 07-CV-14074-DT, 2008 WL 2968408, at *26 (E.D. Mich. July 31, 2008) (noting that the use of informal discovery is an adequate tool for class counsel to make an informed decision). This discovery, coupled with Class Counsel's and Art Van's attorneys' particularized knowledge of TCPA-related litigation, provided Class

Counsel with information regarding the size and scope of the proposed class, the nature of the calls, the ability of Art Van to satisfy any judgment, and other information needed to "adequately assess the[] case and the desirability of the proposed settlement." *See Kritzer*, 2012 WL 1945144, at *7. Thus, the Court should find that Class Counsel conducted sufficient discovery.

### D.     The Settlement provides favorable relief when viewed against the likelihood of success on the merits.

To "judge the fairness of a proposed compromise," a court must "weigh[] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Int'l Union*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981)). Applied here, and notwithstanding the extensive litigation that would remain absent a settlement, the proposed Class Representative was (and remains) confident in the strength of his claims. One major issue is that damages awarded to any sizeable degree, in the estimation of Class Counsel, would threaten to force Art Van into bankruptcy. The question is whether the amount of the relief provides sufficient compensation to the Settlement Class.

The Court need not rule on the fairness, reasonableness, and adequacy of the proposed Settlement Agreement in a vacuum. That is, similar class action settlements have received final approval by federal courts nationwide. *See, e.g.*, *Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC, 2014 WL 1389329

(S.D. Cal. Apr. 9, 2014) (finding a per-claim amount range of between $7 and $156 fair, reasonable, and adequate); *see also Bellows v. NCO Financial Systems, Inc.*, No. 3:07-cv-01413-W-AJB, 2008 WL 4155361 at *9 (S.D. Cal. Sept. 5, 2008) (finding a per-claim amount of $70 satisfactory for preliminary approval); *see also Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (explaining that "[a] $52.50 recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts."); *see also Burris v. Sherwin-Williams, Co*., No. 4:15-cv-00343-DW (W.D. Mo. Nov. 17, 2015) (granting preliminary approval of TCPA per-claim amount of approximately $307).

Indeed, assuming a 3%-5% take-rate (also called a claims rate), which would signal a standard response from the Class[5], Settlement Class Counsel estimates that each Award Unit will be worth approximately $57 - $96 (which is equal to the Net Settlement Fund of $3,312,500 divided by 1,150,000 times 3% and 5%).[6] The

---

[5] "[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent." *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014); *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012) (same); see also *Vasco v. Power Home Remodeling Grp. LLC*, No. CV 15-4623, 2016 WL 5930876, at *12 (E.D. Pa. Oct. 12, 2016) (describing claims rate of 9% as " higher than rates found permissible in other class settlements under the [TCPA]" in case involving 1.1 million settlement class members and settling for $5.2 million).

[6] 1,150,000 represents the total number of telephone numbers called that are implicated by the Settlement. This calculation assumes, solely for illustrative

actual figure will depend on the total number of valid claims received, the final

Settlement Administration Expenses, and any approved Incentive Award and Fee

Award.

These projections place this settlement comfortably in the range of

settlements deemed fair and reasonable by multiple courts tasked with overseeing

TCPA class actions. For example, courts have approved the following TCPA

settlements:[7]

| CASE NAME | AMOUNT PER CLAIMANT |
| --- | --- |
| *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) | $20.00 to $40.00 |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) | $12.97; or $17.29 voucher |
| *Kazemi v. Payless Shoesource, Inc.*, 09- cv-5142 (N.D. Cal.) | $25.00 voucher |
| *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C 10064 MDL No. 2416 (N.D. Ill. 2015) | $34.60 |
| *Steinfeld v. Discover Financial Services*, 12-cv-1118 JSW (N.D. Cal.) | $48.69 |

purposes, that Settlement Administration Expenses equal $750,000 and that the
Court approves Incentive Awards totaling $10,000 and a 30% Fee Award (the
Settlement calls for up to 33%).

[7] This is a sample of TCPA settlements and is generally representative. There are
several settlements where claimants received more than $200.00 per claim or less
than $20.00.

| | |
|---|---|
| *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 13525 (S.D. Cal. 2008) | $70.00 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, 10-cv-1290 BEN (S.D. Cal.) | $84.82 |
| *Wilkins, et al. v. HSBC Bank Nevada, N.A.*, 14 C 190 (N.D. Ill.) | $102.62 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (S.D. Cal.) | $100.00 |
| *Robles v. Lucky Brand Dungarees, Inc.*, 10-cv-4846-MMC (N.D. Cal.) | $100.00 |
| *Kramer v. B2Mobile*, 10-cv-2722 CW (N.D. Cal.) | $100.00 |

The settlement here is demonstrably reasonable in light of these other settlements under the TCPA that have been approved as fair, reasonable, and adequate. *See Vasco v. Power Home Remodeling Grp. LLC*, No. CV 15-4623, 2016 WL 5930876, at *10 (E.D. Pa. Oct. 12, 2016) (approving $5.2 million fund for 1.1 million settlement class members in TCPA case where each claimant was set to receive $26.63); *see also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (discussing range of acceptable TCPA class settlements based on per claimant recovery, approving $34.60 per claiming member); *see also Rose*, 2014 WL 4273358, at *10 (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant). This is especially so given that Art Van is nowhere near as large as many of the companies listed.

As with these similar cases, this Settlement easily falls well "within the range of possible approval," is fair, reasonable, and adequate, and should thus be preliminarily approved so that notice may be sent to Settlement Class Members and the reaction of the Settlement Class (whether filing claims, opting out, objecting, or doing nothing) may be ascertained.

### E.     Class counsel and the Class Representative support the Settlement.

The opinion of proposed Class Counsel also supports approval. When considering this factor, proposed Class Counsel's "weighing of the relative risks and benefits of protracted litigation" should be given "great deference." *Hyland v. HomeServices of Am., Inc.*, No. 3:05-CV-612-R, 2012 WL 1575310, at *7 (W.D. Ky. May 3, 2012) (citation omitted). Weighing the benefits of continued, lengthy litigation against the substantial sums provided to the Settlement Class by the Settlement Agreement, there is little doubt that this is a tremendous deal for the Settlement Class Members. This case challenges unwanted telephone calls. People who found the calls annoying can file claims and receive cash, and everyone receives the benefit of Art Van's prospective business assurances. When viewed against the fact that a large judgment would put the company out of business, the Settlement presents a far more favorable outcome for members of the class.

### F.     The reaction of absent class members will undoubtedly be favorable.

This element cannot be discerned at this time, but the Settlement provides substantial relief—millions of dollars—to people who received annoying telephone calls. Assuming the Settlement is implemented as expected, Class Counsel will demonstrate on Final Approval that the reaction of the Settlement Class supports approval.

### G.   The instant Settlement is in the public's interest.

As a final consideration on preliminary approval, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously different and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530 (quoting *Granada*, 962 F.2d at 1205). Here, the settlement of a complex class action affecting approximately 1.15 million individuals spanning several states is consistent with the public interest, as it is more efficient than the filing and disposition of individual suits and conserves judicial resources. Further, settlement will help to ensure uniformity and consistency of results. Thus, the final factor weighs in favor of preliminary approval as well.

The Settlement therefore falls within the range of final approval under each of the Sixth Circuit's factors that can be evaluated at this time. As such, the Settlement readily falls "within the range of possible approval," is fair, reasonable, and adequate, and should receive preliminarily approval from this Court.

As explained next, the proposed Notice Plan is designed to comport with due process and facilitate the submission of claims.

## VIII. The Proposed Plan of Class Notice is the Best Practicable Under the Circumstances.

As a final consideration, a court reviewing any Class Action Settlement where certification is sought in accordance with Rule 23(b)(3) (as is partly the case here) must also provide the settlement class with notice that comports with due process and the ability to opt out. Indeed, to satisfy the requirements of both Rule 23 and due process, Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Dukes*, 131 S.Ct. at 2558. Rule 23(e)(1) similarly states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1).

Notice is "adequate if it may be understood by the average class member." Newberg, § 11:53 at 167. The substance of the notice to the settlement class must describe the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, as well as explain that settlement class members may enter an appearance through counsel if so desired, request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class

members. *See* Fed. R. Civ. 23(c)(2)(B).

As evidenced by the proposed notices appended as exhibits to the Settlement Agreement itself, the Notice plan developed by both Parties is the best practice under the circumstances. The Parties have selected Epiq Systems, a nationally respected third-party settlement administrator with extensive experience administering TCPA class action settlements, to serve as Settlement Administrator. Within 14 days of Preliminary Approval, the Settlement Administrator will be provided with the Class List, which the Settlement Agreement defines as the lists of phone numbers that Art Van has that contain the cellular telephone numbers of most Settlement Class Members. (Settlement Agrmt. at § IV.3.)

Using these Lists, Epiq will perform reverse address look-ups to obtain physical mailing addresses and, where available, email addresses, where such information is not available. The Settlement Administrator will also reasonably attempt to update such addresses through utilization of the national change of address registry and other appropriate methods. (*Id.*) The Settlement administrator will then send each Class Member, via first class mail, a copy of the Short Form (postcard) Notice (attached as Group Exhibit 4 to the Settlement Agreement). Wherever an email address is located a copy of the Short Form (email) Notice will be sent to the Settlement Class Member as well (the result being that many members of the Settlement Class will receive both mailed and emailed notice of

the Settlement Agreement). (Group Ex. 4 to the Settlement Agrmt.)

Epiq is also responsible for establishing and maintaining a Settlement Website (Settlement Agrmt. at § IV.3.) that will host a traditional "Long Form" notice. At the Settlement Website, Settlement Class Members can learn information about the Settlement Agreement, be advised of key dates and deadlines, and review important settlement documents such as the Settlement Agreement, notices, motions for preliminary and final approval, and Class Counsel's application for a Fee Award. Settlement Class Members will also be able to use the Settlement Website to download claim forms for mailing and to submit such claim forms electronically.

The Notice will provide information to Class Members of their inclusion in the Class because they were called by Art Van allegedly in violation of the TCPA. (*Id.* at Group Exhibit 4.) The Notices will provide the terms and provisions of the proposed settlement, including the settlement amounts. (*Id.*) The Notice will advise Settlement Class Members of their rights, including the right to be excluded from, comment upon, and object to the Agreement and the procedures for taking such actions. (*Id.*) The Notice will also refer Settlement Class Members to the Settlement Website and explain the procedures for submitting a claim. (*Id.*) The Notice will also clearly state the date, time, and place of the Final Approval Hearing and advise the Class Members of their right to attend, to opt out, and to

object. (*Id.*)

In anticipation of the preliminary approval hearing the Parties sent to Epiq copies of their draft notices and claim form. The draft notices attached to the Settlement Agreement include Epiq's initial edits and suggestions. As such, the draft notices are in near final form, pending any additions or edits required by the Court.

## IX.    Conclusion

Proposed Settlement Class Representative Bowman and proposed Class Counsel are particularly proud of the strength of the Settlement they present to the Court for preliminary approval. The instant Agreement provides Class Members with relief on a per claim basis that compares favorably to amounts typically witnessed in class action settlements under the TCPA. As a consequence, the Court should find that the Agreement confers substantial benefits on the Class, compares favorably with other TCPA class action settlements, and falls well within the range to warrant Final Approval such that notice should be sent to the Settlement Class Members.

For the foregoing reasons, Plaintiff respectfully asks that the Court certify the class, appoint Michael Bowman as the Class Representative, appoint Steven L. Woodrow, Patrick H. Peluso, Taylor T. Smith, and Stefan L. Coleman as Class Counsel, grant preliminary approval of the proposed Settlement Agreement,

approve the form and manner of notice described above, schedule a Final Fairness

hearing, and grant such further relief the Court deems reasonable and just.

Dated: April 26, 2018                    Respectfully Submitted,

                                         **MICHAEL BOWMAN**, individually
                                         and on behalf of a class of similarly
                                         situated persons,


                                         /s/ Steven L. Woodrow
                                         One of Plaintiff's Attorneys


                                         Steven L. Woodrow
                                         (swoodrow@woodrowpeluso.com)
                                         Patrick H. Peluso
                                         (ppeluso@woodrowpeluso.com)
                                         Taylor T. Smith
                                         (tsmith@woodrowpeluso.com)
                                         Woodrow & Peluso, LLC
                                         3900 East Mexico Ave., Suite 300
                                         Denver, Colorado 80210
                                         Telephone: (720) 213-0675
                                         Facsimile: (303) 927-0809

                                         Stefan Coleman, Esq.
                                         LAW OFFICES OF STEFAN COLEMAN,
                                         P.A.
                                         201 S Biscayne Blvd, 28th Floor
                                         Miami, Florida 33131
                                         Telephone: (877) 333-9427
                                         law@stefancoleman.com

                                         Bradley J. Friedman, Esq. P70877
                                         Law Offices of Bradley J. Friedman,
                                         Esq.
                                         30300 Northwestern Hwy

46

Suite 106
Farmington Hills, MI 48334
248-932-3500 (phone)
248-932-1734 (fax)
bfriedmanesq@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on April 26, 2018, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: April 26, 2018        By:   <u>/s/ Steven L. Woodrow</u>
                                      Steven L. Woodrow