## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**MICHAEL BOWMAN**, individually
and on behalf of all others similarly
situated,

       Plaintiff,

v.

**ART VAN FURNITURE, INC.**, a
Michigan corporation,

       Defendant.

Case No. 17-cv-11630-NGE

Hon. Nancy G. Edmunds

Mag. R. Steven Whalen

---

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

Plaintiff Michael Bowman ("Plaintiff" or "Bowman"), individually and on

behalf of a class of similarly-situated individuals, moves the Court, pursuant to

Federal Rule of Civil Procedure 23, for an Order granting preliminary approval of

the proposed class action Settlement Agreement agreed to by the parties and, in

support, states as follows:

1.  Plaintiff Bowman brought this alleged class action lawsuit against

Defendant Art Van Furniture, Inc. ("Art Van" or "Defendant")[1] challenging certain

telephone calls that Plaintiff alleges Defendant made to him and others in violation

of the Telephone Consumer Protection Act ("TCPA" or "Act"), 47 U.S.C. § 227, *et*

---

[1] Art Van Furniture, Inc., a Michigan corporation, converted to Art Van Furniture, LLC, a
Delaware limited liability company.

*seq.* and its implementing regulation, 47 C.F.R. § 64.1200, *et seq*.

2.     The TCPA makes it unlawful for anyone to make telemarketing calls using a pre-recorded voice without first obtaining the prior express consent of the called party. 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B).

3.     Bowman alleges that Art Van violated the TCPA by calling him and others in violation of the TCPA. Specifically, Bowman alleges that Art Van used pre-recorded voice technology to call his residential telephone number for the purposes of inviting Bowman to a sales event.

4.     Art Van denies that it called Bowman or anyone else without first obtaining prior express consent, denies that its calls were telemarketing calls, and has raised other defenses.

5.     Notwithstanding their disagreements as to the underlying merits of their respective claims and defenses, the parties have entered into a Settlement Agreement, subject to Court approval, that provides relief to the proposed class, including: (i) the establishment of a settlement fund of five million eight hundred seventy-five thousand dollars ($5,875,000 USD) for the payment of all approved claims, settlement administration expenses, and any incentive awards and award of attorneys' fees and for reimbursement of costs approved by the Court, (ii) requiring that Art Van take affirmative steps to ensure that it does not call or contract with any third party to call consumers using pre-recorded voice technology without first

securing the prior express consent of the called party.

WHEREFORE, Plaintiff seeks preliminary approval of this class action Settlement, certification of the proposed class for settlement purposes only, appointment of the Plaintiff as the Settlement Class Representative, and appointment their counsel, Steven Woodrow, Patrick Peluso, and Taylor Smith from Woodrow & Peluso, LLC together with attorney Stefan Coleman from the Law Office of Stefan Coleman, P.A., as Settlement Class Counsel. This Motion is based on this Notice of Motion, the Memorandum in Support of the Motion attached hereto and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated:     April 26, 2018              Respectfully Submitted,

                                       MICHAEL BOWMAN, individually and
                                       on behalf of a class of similarly situated
                                       individuals,

                                       By: s/ Steven L. Woodrow

                                       Bradley J. Friedman, Esq.
                                       Law Offices of Bradley J. Friedman, Esq.
                                       30300 Northwestern Hwy, Suite 106
                                       Farmington Hills, MI 48334
                                       248-932-3500 (phone)
                                       248-932-1734 (fax)
                                       bfriedmanesq@gmail.com

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E Mexico Avenue, Suite 300
Denver, CO 80210
(720) 213-0675

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **MICHAEL BOWMAN**, individually and on behalf of all others similarly situated, | Case No. 17-cv-11630-NGE |
| | Hon. Nancy G. Edmunds |
| Plaintiff, | |
| v. | Mag. R. Steven Whalen |
| **ART VAN FURNITURE, INC.**, a Michigan corporation, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUE PRESENTED ............................................iv

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ......................v

TABLE OF AUTHORITIES ........................................................................vi

I.     Introduction................................................................................1

II.    The TCPA ....................................................................................3

III.   Summary of the Plaintiff's Claims, Litigation, and Settlement Process..3

       A.    The Plaintiff's Claims and The Litigation History ...........3

       B.    The Mediation and Settlement History ............................5

IV.    Key Terms of the Settlement ....................................................6

       A.    Class Definition..........................................................6

       B.    Monetary Relief .........................................................6

       C.    Prospective Relief ......................................................7

       D.    Release of Liability .....................................................7

       E.    Notice ..........................................................................8

V.     The Proposed Settlement Class Should Be Certified .................8

       A.    The Numerosity Requirement is Satisfied .....................9

       B.    The Requirement of Commonality is Met as Well.........10

       C.    The Requirement of Typicality is Also Satisfied ...........11

       D.    Bowman and Proposed Settlement Class Counsel are Adequate Representation Under Rule 23(a)(4)................12

E.     The Requirements of Rule 23(b)(2) and (b)(3) are Satisfied Here.................................................................................14

     1.     The Class May Be Certified Under Rule 23(b)(2) ..............14

     2.     The Settlement Class May Be Certified Under Rule 23(b)(3) ..........................................................15

          a.     Common Questions of Law and Fact Predominate ..16

          b.     This Class Action is the Superior Method of Adjudication.................................................16

VI.     The Court Should Appoint Plaintiff's Counsel as Class Counsel..........17

VII.     The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate, and Thus Warrants Preliminary Approval.............................18

     A.     There is no risk of fraud or collusion—the instant Settlement was reached through a formal mediation session...................................20

     B.     The complexity, expense, and likely duration of the litigation favors approving the Settlement. ......................................................21

     C.     The Parties engaged in sufficient fact-finding so as to allow them to properly evaluate their respective claims and defenses. ...........23

     D.     The Settlement provides favorable relief when viewed against the likelihood of success on the merits..................................................24

     E.     Class counsel and Bowman support the Settlement. .....................26

     F.     The reaction of absent class members will be favorable. ..............27

     G.     The instant Settlement is in the public's interest. .........................27

VIII.     The Proposed Notice Plan is the Best Practicable in this Case ...............27

IX.     Conclusion .................................................................................30

**PLAINTIFF MICHAEL BOWMAN'S BRIEF IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**CONCISE STATEMENT OF ISSUE PRESENTED**

I.   Does the Settlement Agreement reached by the Parties—which provides for a
     Settlement Fund of five million eight hundred seventy-five thousand dollars
     ($5,875,000 USD) and strong prospective relief to ensure Defendant's
     compliance with the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et
     seq*. ("TCPA")—fall within the range of a fair, reasonable, and adequate result
     so as to warrant an Order granting preliminary approval and requiring that
     Notice be disseminated to the Settlement Class in accordance with the
     Settlement Agreement?

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

### *General Authorities*

47 U.S.C. § 227, *et seq.*

Fed. R. Civ. P. 23, *et seq.*

## V.

Fed. R. Civ. P. 23, *et seq.*

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011)

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)

## VI.

Fed. R. Civ. P. 23(g), *et seq.*

## VII.

Fed. R. Civ. P. 23(e), *et seq.*

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001)

## VIII.

Fed. R. Civ. P. 23, *et seq.*

# TABLE OF AUTHORITIES

*Abdeljalil v. General Elec. Capital Corp.*, 306 F.R.D. 303 (S.D. Cal. 2015) .........10

*Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294 (6th Cir. 1974) .....................9
....................................................................................................................................

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................*passim*

*Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC,
  2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ..................................................24

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) .......................................15

*Bee, Denning, Inc. v. Capital Alliance Group*, Case No. 13-cv-2654-BAS-WVG,
  2015 WL 5675798 (S.D. Cal. Sept. 24, 2015) ...............................................12

*Bellows v. NCO Financial Systems, Inc.*, No. 3:07-cv-01413-W-AJB,
  2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) .................................................25

*Bert v. AK Steel Corp.*, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ..................21

*Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877 (6th Cir. 1997) ...........................12

*Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402 (E.D. Mich. 2012) .........16

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ..............25

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016) .....................24

*Granada Invs. Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) .........................20

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) ........................................9

*Hyland v. HomeServices of Am., Inc.*, 2012 WL 1575310
  (W.D. Ky. May 3, 2012) ................................................................................26

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill.
  2015) ......................................................................................................25, 26

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)................27

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich.
  2008) ..............................................................................................................21

*In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161
  (E.D. Mich. Aug. 2, 2010) ............................................................................19

*In re Polyurethane Foam Antitrust Litig.*, 2012 WL 12868246

(N.D. Ohio Jan. 23, 2012) ..............................................................20

*In re Telectronics*, 137 F. Supp. 2d 985 (S.D. Ohio 2001)......................................19

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ....................................13, 20, 23

*Kinder v. Nw. Bank*, 278 F.R.D. 176 (W.D. Mich. 2011) ........................................9

*Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144 (S.D. Ohio May 30, 2012) ....................................................................23, 24

*Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592 (6th Cir.2007) ........................................................................16

*Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)............25

*Satchell v. Fed. Express Corp.*, 2007 WL 1114010 (N.D. Cal. Apr.13, 2007).......21

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)................................11

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001) ......................................................................19

*Thacker v. Chesapeake Appalachia, L.L.C.*, (E.D. Ky. 2009)..........................19, 21

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ..........................8, 10, 14, 28

## STATUTES, RULES, SECONDARY SOURCES

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*........................*passim*

47 C.F.R. § 64.1200, *et seq.*.......................................................................1, 2

Fed. R. Civ. P. 23 ...........................................................................*passim*

Manual for Complex Litigation (4th ed. 2004) ...................................................8, 20

A. Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002)......................................................................19, 28

## I.   Introduction

This case concerns certain pre-recorded voice calls that Defendant Art Van Furniture, Inc. ("Defendant" or "Art Van") allegedly caused to be made to Named Plaintiff Michael Bowman ("Plaintiff" or "Bowman") and others. Bowman alleges that Art Van placed the calls to promote Art Van's VIP sales events and that Art Van failed to obtain prior express consent as required by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. and 47 C.F.R. § 64.1200, *et seq*.

Bowman filed the instant lawsuit on behalf of himself and all others similarly situated. After filing, counsel for the Parties began engaging in informal discovery regarding key issues related to the claims, the size and scope of the alleged Class, and Art Van's defenses. These talks led to a full-day mediation overseen by the renowned mediator, the Hon. Magistrate Judge Morton Denlow (ret.) of JAMS, Chicago.

While the mediation session was successful in bringing the Parties together to discuss their respective claims and defenses, the Parties did not reach a settlement at the mediation. However, the Parties continued their negotiations through a series of telephone conferences with Judge Denlow. Following this significant back and forth, the Parties remained deadlocked until, with Judge Denlow's help, the impasse was broken. The result is a strong Settlement ("Settlement Agreement" or "Settlement," attached hereto as Exhibit A) that fairly,

reasonably, and adequately compensates the Class. (Settlement Agrmt. at § IV.2.)

Indeed, the instant Agreement is undeniably impressive. In addition to requiring Art Van to take proactive measures to ensure that it only calls consumers using a pre-recorded voice who have provided prior express consent, the Agreement creates a Settlement Fund totaling $5,875,000 USD from which Class Members can file claims and receive cash compensation. The process is straightforward. Class Members who file Valid Claims will be entitled to receive one (1) Award Unit. The value of the Award Units will be calculated by subtracting from the Settlement Fund all amounts for Notice and Settlement Administration Expenses, any incentive award to the Class Representative, and any award of reasonable attorneys' fees (the "Net Settlement Fund") and then dividing by the total number of units (calculated as the number of Class Members who file Valid Claims that are approved by the Court). Award Units will be of equal value.

Finally, the Agreement provides Class Members with Notice of their rights to be excluded from or object to the Agreement and procedures for filing a Claim Form, which can be mailed to the Settlement Administrator or submitted electronically on the Settlement Website. (*See* Settlement Agrmt. at § II.3.)

The results achieved by the Settlement—which compare favorably to settlements that have received final approval by courts in this and other districts—demonstrate the propriety of granting preliminary approval. As such, Bowman

respectfully moves the Court for an Order: (1) granting preliminarily approval to the Settlement Agreement, (2) certifying the Settlement Class, (3) appointing Plaintiff Bowman as Settlement Class Representative (the "Class Representative"), (4) appointing Steven Woodrow, Patrick Peluso, and Taylor Smith of Woodrow & Peluso, LLC and Stefan Coleman of the Law Offices of Stefan Coleman P.A. as Settlement Class Counsel ("Class Counsel"), and (5) ordering that Notice be disseminated to the Settlement Class in accordance with the Settlement Agreement.

## II.     The TCPA

To prevail on a claim under the TCPA for pre-recorded calls, a plaintiff must show that a person: (1) made telephone calls, (2) using a pre-recorded voice, (3) to a telephone number assigned to a cellular telephone service or a residential landline. *See* 47 U.S.C. §§ 227(b)(1)(B). The TCPA provides statutory damages of $500 per violation, which may be trebled where willfulness is shown, and allows for appropriate injunctive relief. *See* 47 U.S.C. § 227(b)(3)(A-B).

## III.    Summary of the Plaintiff's Claims, Litigation, and Settlement Process.

Following an exchange of information regarding the scope of the case, the Parties engaged in a mediation with respected mediator, Judge Denlow of JAMS. The result of these efforts by the Parties' counsel and the mediator is an favorable deal that reflects fair, reasonable, and adequate relief for the Settlement Class.

### A.     The Plaintiff's Claims and The Litigation History.

On May 23, 2017, Plaintiff filed the instant action. (*See* Dkt. 1.) Following the filing of the Complaint, counsel for the parties engaged in discussions regarding their views of the case. (*See* Declaration of Steven Woodrow ("Woodrow Decl."), attached as Exhibit B.) When the case was first filed, Art Van's in-house legal counsel reached out to Plaintiff's counsel for talks regarding the circumstances of the calls received by Plaintiff Bowman. (Woodrow Decl. ¶ 8.) The Parties also agreed to allow Plaintiff to subpoena his phone records. (*Id.*)

Art Van thereafter retained attorneys from Dykema Gossett PLLC. Counsel for the Parties engaged in further fact-finding with respect to Bowman's claims. (*Id.* ¶ 9.) Through this process it was uncovered that Art Van had placed calls to Bowman's landline. (*Id.* ¶ 10.) On July 12, 2017, Bowman filed an Amended Complaint clarifying the facts with respect to Bowman's phone type. (*Id.*)

On August 21, 2017, Art Van's attorneys at Dykema Gossett filed a Motion to Withdraw and new counsel from the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. appeared in the case. (Dkts. 13, 14, 17.) Attorney Martin Jaszczuk of Jaszczuk PC, a specialist in TCPA class actions, appeared on Art Van's behalf as well. (Dkt. 21.) On September 20, 2017, Art Van, through its new lawyers, filed a Motion to Dismiss in part and Strike Class Allegations. (Dkt. 18.) On October 25, 2017, Plaintiff Bowman filed his response in opposition to Art Van's Motion to Dismiss and to Strike. (Dkt. 22.)

**B.     The Mediation and Settlement History.**

During preparations for the hearing on Art Van's Motion to Dismiss, counsel for the Parties began discussing the potential for settlement. (Woodrow Decl. ¶ 12.) Counsel for the Parties agreed to engage in settlement discussions through a formal mediation and worked to schedule a mediation session with Judge Denlow, who has substantial TCPA class action experience. (*Id.* ¶ 13.)

Despite extensive discussions facilitated by Judge Denlow, counsel were unable to reach an agreement prior to the close of the mediation. (*Id.* ¶ 16.) Instead, the Parties agreed to proceed with a hearing on Art Van's Motion to Dismiss.

At the same time, the Parties also agreed to continue their discussions to discern whether a resolution could be reached**.** (*Id.* ¶ 17.) Hence, notwithstanding their continued preparations for the hearing, Judge Denlow worked on a parallel track by engaging the Parties through series of telephone negotiations. (*Id.*) The result of this effort was reaching an agreement in principal with Judge Denlow's oversight shortly prior to the hearing on the Motion to Dismiss. (*Id.* ¶ 18.) Only after an agreement in principal was reached with respect to the Class was attorneys' fees or an incentive award discussed. (*Id.*) Counsel for the Parties thereafter worked to draft the Settlement Agreement, the Claim Form, and the notices, and work to resolve outstanding data issues. (*Id.* ¶ 19.)

As set forth below, the Parties' efforts and negotiations have produced settlement terms that clearly fall within the range of what this Court, or any court, would ultimately adjudicate as fair, reasonable, and adequate on final approval.

## IV.    Key Terms of the Settlement

The complete terms of the Settlement are set forth in the Settlement Agreement. (Ex. A.) A brief summary follows:

### A.    Class Definition

The "Settlement Class" or "Class" is defined as "all individuals and entities who were called by or on behalf of Art Van Furniture through the use of pre-recorded voice technology between May 23, 2013 and the date of entry of the Preliminary Approval Order." (Settlement Agrmt. at § II.36.) This covers all users of the telephone numbers called. There are approximately 1,150,000 Class Members (and Art Van has addresses for most of them).

### B.    Monetary Relief

The Settlement provides Class Members who file with substantial monetary relief. Specifically, Art Van must establish a Settlement Fund of $5,875,000, (*Id.* at § II.39), which will be used to pay all approved claims, Settlement Administration Expenses, any Incentive Award to the Class Representative, and any Fee Award. The amount that remains after deducting such amounts, referred to as the Net Settlement Fund, will then be divided by the total number of Award Units (equal to

the number of Valid Claims that are approved by the Court). Settlement Checks

will be issued to each Class Member who submitted an approved Valid Claim

worth one (1) Award Unit.[2] Any monies remaining in the Settlement Fund from

checks that go uncashed are to be donated to the approved *Cy Pres* recipient(s).

### C.    Prospective Relief

In addition to the $5,875,000 in cash relief, the Settlement Agreement also

requires that Art Van adopt the following prospective measures:

> For a period of twenty-four (24) months following the Effective Date,
> and subject to changes in applicable law, Art Van agrees not to cause
> telemarketing calls to be placed to residential landline telephone
> numbers using pre-recorded voice technology without first obtaining
> the prior express written consent of the called party. Art Van also agrees
> to only contract with third-parties who affirmatively agree to abide by
> the TCPA and all related regulations in the placement of outbound
> telephone calls using pre-recorded voice technology.

(Settlement Agrmt. § III.5.) Hence, the Settlement not only compensates

Settlement Class Members for Art Van's alleged violations of the Act, it works to

ensure that they won't be bothered by additional future calls.

### D.    Release of Liability

In exchange for the benefits to the Class, Art Van will receive a full release

of any claims relating to any phone calls made under the TCPA or any similar state

---

[2] Under this formula, and solely for illustrative purposes, if notice and administrative expenses of approximately $800,000 are assumed together with a Fee Award of 30% of the Settlement Fund and a $5,000 incentive award, then using typical take rates of 3%-5% each Award Unit would equal $96.01 (3%) - $57.61 (5%)—recoveries well in line with TCPA class action settlements.

statute or law. (Settlement Agrmt. § 5.) The Release includes unknown claims, which are limited to claims that could have been brought in the litigation.

### E.     Notice

The Settlement also calls for the dissemination of notice to Class Members. This includes a comprehensive plan that features direct mail and email notice, the establishment of a Settlement Website where Class Members can access key documents. The Notices explain the key terms of the Settlement, the process for filing claims, and the rights of Settlement Class Members to opt out/object.

Such terms are decidedly favorable to the Settlement Class, and the Court should grant preliminary approval to the instant Settlement.

## V.     The Proposed Settlement Class Should Be Certified.

The first step for a court faced with a Motion for Preliminary Approval is to certify the proposed settlement class for settlement purposes. Manual for Complex Litigation §21.632 (4th ed. 2004). The plaintiff must first demonstrate that the proposed class and proposed class representatives meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). In addition, a plaintiff seeking class certification must also meet at least one of the requirements of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2548 (2011). Rule 23(b)(2) requires that the plaintiff demonstrate that the defendant acted or refused to act on grounds that apply

generally to the class. Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires that the plaintiff demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011). Courts do not emphasize manageability or superiority when faced with a settlement. *Amchem*, 521 U.S. at 623.

The Settlement meets each of the elements for class certification.

### A.    The Numerosity Requirement is Satisfied.

The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As few as thirty-five class members is sufficient. *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974); *see also Daffin v. Ford Motor Co.,* 458 F.3d 549, 552 (6th Cir. 2006) (numerosity met where "proposed class includes thousands of individuals").

Applied here, the Settlement Class includes 1,150,000 individual phone numbers, which likely represent the same or a similar number of individual subscribers. (*See* Woodrow Decl. ¶ 14.) Numerosity is plainly met.

The Class is ascertainable as well. *See Kinder*, 278 F.R.D. at 182 ("[T]he requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court

to determine whether a particular individual is a member."). Identifying Settlement

Class Members is objective: Art Van has lists of phone numbers that will be

provided to the Administrator from which Class Members can be identified, and

there is nothing subjective about whether Art Van (or its vendor) placed a call.

(Settlement Agrmt. at § III.1.) Indeed, address data is apparently unavailable for

only approximately 20,000 - 40,000 or so Class Members. (Woodrow Decl. ¶ 14.)

As such, the proposed Settlement Class here is ascertainable and numerous.

### B.    The Requirement of Commonality is Met as Well.

Rule 23 next requires that "there are questions of law or fact common to the

class." Fed. R. Civ. P. 23(a)(2). Commonality may be shown when the claims of

all class members "depend upon a common contention," with "even a single

common question" sufficing. *Dukes*, 131 S.Ct. at 2545, 2557. The common

contention must be of such a nature that it is capable of class-wide resolution and

the "determination of its truth or falsity will resolve an issue that is central to the

validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2545.[3]

The claims of every Class Member are nearly identical. That is, the Class

Members share common statutory TCPA claims premised on the allegation that

Art Van unlawfully called them using its pre-recorded voice technology without

---

[3] Courts have found (somewhat routinely) that the issue of prior express consent satisfies the commonality requirement. *See, e.g., Abdeljalil v. General Elec. Capital Corp.*, 306 F.R.D. 303, 308-09 (S.D. Cal. 2015).

first obtaining written prior express consent as required from anyone. Specific disclosures are required to obtain prior express written consent. Art Van either made such disclosures or it failed to do so with respect to everyone. Likewise, Art Van's calls were either for telemarketing purposes or they were not.

Hence, the calls made lead to the following common questions for the class:

- Whether Art Van obtained prior express written consent to call the Bowman and the other Settlement Class Members;

- Whether the dialing system qualifies as a pre-recorded voice under the TCPA;

- Whether Art Van made the calls at issue or can be held liable for the conduct of any third parties it hired to make the calls at issue; and

- Whether the calls were for telemarketing purposes such that written consent was required.

As such, the claims of the Settlement Class Members are susceptible to a "class wide resolution" through the Settlement and are based on common evidence. Thus, Bowman meets the requirement of commonality for settlement purposes.

**C.    The Requirement of Typicality is Also Satisfied.**

Rule 23 next requires that the class representative's claims be typical of those of the putative class he or she seeks to represent. Fed. R. Civ. P. 23(a)(3). Typicality is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."

*Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Typicality is measured under a permissive standard—the representative's claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (citations omitted).

Bowman's claims are typical of those of the rest of the Settlement Class Members. As with the absent Settlement Class Members, Bowman received Art Van's pre-recorded voice calls despite never having provided Art Van with prior express written consent to call them. Bowman alleges that the calls were all made for telemarketing purposes and that Art Van failed to obtain consent. As such, the statutory injuries suffered by Plaintiff Bowman mirror the legal injuries of the Class Members—everyone experienced the same type of annoyance necessarily attendant to the receipt of unwanted robocalls. (*See* Dkt. 1, ¶¶ 37-38.)

Therefore, and because the claims of the Plaintiff and proposed Class Members "arise from the same conduct of the Defendant[s] – alleged violations of the TCPA – and are based on the same legal theories" the typicality requirement is satisfied. *See Bee, Denning, Inc. v. Capital Alliance Group*, Case No. 13-cv-2654-BAS-WVG, 2015 WL 5675798 at *9, *10 (S.D. Cal. Sept. 24, 2015).

### D. Bowman and Proposed Settlement Class Counsel are Adequate Representation Under Rule 23(a)(4).

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." "Class representatives are adequate when it

appears that they will vigorously prosecute the interest of the class through qualified counsel ... which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007).

Applied here, Bowman's interests are representative of and consistent with the interests of all Class Members. He is committed to the effective prosecution of this case and has no conflicts of interest that would negate such representation. Further, Mr. Bowman has served admirably as a Named Plaintiff by staying abreast of the litigation and doing everything required of him to investigate the claims, file the Complaint, and pursue the case on a class-wide basis.

As for the second requirement, proposed Class Counsel have already undertaken significant steps to further the interests of proposed Class Members by ascertaining the Class, preparing the pleadings and filing the lawsuit, litigating the case, and by reaching this proposed Settlement Agreement through an arm's length negotiation overseen by a respected mediator. (Woodrow Decl. ¶¶ 3-19.) Proposed Class Counsel will also continue to zealously fight for and protect the interests of the Settlement Class Members, as they have regularly engaged in major complex litigation and have extensive experience in consumer class action lawsuits. This includes specific experience prosecuting and litigating TCPA class action lawsuits

13

that are similar in size, scope, and complexity to the present case. (*See* Ex. B, Woodrow Decl. ¶ 22.) As such, the Plaintiff and proposed Class Counsel will adequately represent the interests of the members of the Settlement Class.

### E.     The Requirements of Rule 23(b)(2) and (b)(3) are Satisfied Here.

After meeting the requirements of Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) to certify the proposed class. *Dukes*, 131 S.Ct. at 2548. As the relief secured for the Settlement Class requires both a change in Art Van's business practices as well as monetary relief to the Class, certification is appropriate under both Rule 23(b)(2) and Rule 23(b)(3).

### 1.     The Class May Be Certified Under Rule 23(b)(2).

Rule 23(b)(2) provides that a class action can be maintained where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "[T]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 131 S.Ct. at 2557.

Pursuant to the Settlement Agreement, Art Van agrees to adopt prospective business changes designed to reduce the likelihood that its calling programs violate the TCPA. This includes that "[f]or a period of twenty-four (24) months:

> Art Van agrees not to cause telemarketing calls to be placed to residential landline telephone numbers to be called using its pre-recorded voice technology without first obtaining the prior express written consent of the called party. Art Van also and agrees to only contract with third-parties who affirmatively agree to abide by the TCPA and all related regulations in the placement of outbound telephone calls using pre-recorded voice technology.

(Settlement Agrmt. at § III.5.) Such assurances apply to the entire Settlement Class evenly—there are no special rules for subsets of Class Members.

### 2.    The Settlement Class May Be Certified Under Rule 23(b)(3)

Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "A plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007). The superiority requirement of Rule 23(b)(3) considers "the difficulties likely to be encountered in the management of a class action" and whether individual litigation would yield small recoveries. *Id.*; *see also Amchem*, 521 U.S. at 617 ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to

bring a solo action prosecuting his or her rights.").

### a.    Common Questions of Law and Fact Predominate.

Predominance focuses on whether the class is sufficiently cohesive to warrant classwide adjudication. *Amchem*, 521 U.S. at 623. Predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton County Pub. Defender Comm'n,* 501 F.3d 592, 619 (6th Cir. 2007).

In this case, the common factual and legal questions all cut to the issues "at the heart of the litigation." Indeed, the answers to these questions are not tangential or theoretical such that the litigation won't be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Settlement Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied.

### b.    This Class Action is the Superior Method of Adjudication.

As a final matter, certification of this suit as a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the class. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd*., 287 F.R.D. 402, 407–08 (E.D. Mich. 2012) (citation omitted.) A class action is superior particularly in those situations in which it "vindicat[es]

the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem,* 521 U.S. at 617. This final factor has far less application when the court is presented with a settlement class for review, as no trial of the case will be necessary. *Amchem*, 521 U.S. at 623.

The Class at issue here is comprised of approximately 1,150,000 persons who have claims that range from $500 to a few thousand dollars, depending on the number of calls received. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of their TCPA claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial".).

Thus, the Court may certify the Class pursuant to Rule 23(b)(3) as well.

## VI.  The Court Should Appoint Plaintiff's Counsel as Class Counsel.

The next step when deciding whether to preliminarily approve a settlement is to appoint Settlement Class Counsel. Under Rule 23, "a court that certifies a

class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following factors: (1) proposed class counsel's work in identifying or investigating potential claims, (2) proposed class counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) proposed class counsel's knowledge of the applicable law, and (4) proposed class counsel's resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, proposed Settlement Class Counsel have extensive experience in prosecuting TCPA class actions and other complex litigation. (*See* Exs. 1 and 2 to the Woodrow Decl.) This includes TCPA claims involving calls that have been allegedly sent without sufficient prior express consent.

Further, proposed Class Counsel have diligently investigated and prosecuted *this* matter by dedicating substantial resources to the litigation, and they successfully negotiated this Settlement. (*See* Dkt. 1, at ¶¶ 4-5; *see also* Settlement Agrmt. at 2-3.) Accordingly, the Court should appoint Steven L. Woodrow, Patrick H. Peluso, and Taylor T. Smith of Woodrow & Peluso, LLC, and Stefan L. Coleman of the Law Offices of Stefan Coleman, P.A. as Class Counsel.

## VII. The Proposed Settlement is Fundamentally Fair, Reasonable, and Adequate, and Thus Warrants Preliminary Approval.

Following certification of the Settlement Class, the Court may approve the

settlement only "on finding that it is fair, reasonable, and adequate." Fed. R. Civ.

P. 23(e); *see also* A. Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS,

§11.25, 3839 (4th ed. 2002). This process includes three steps: "(1) the court

should determine whether the compromise embodied in the decree is illegal or

tainted with collusion; (2) members of the class must be given notice of the

proposed settlement; and (3) a hearing must be held to determine whether the

decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health*

*Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001). A strong judicial

policy exists that favors the voluntary conciliation and settlement of complex class

actions. *In re Telectronics,* 137 F. Supp. 2d 985, 1008–09 (S.D. Ohio 2001).

With respect to the first step, the purpose of the preliminary hearing is often

described as needing to determine whether the proposed settlement is "within the

range of possible approval." Newberg, §11.25, at 3839 (quoting Manual for

Complex Litigation §30.41 (3d ed. 1995)); *see also In re Packaged Ice Antitrust*

*Litig.*, 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010) (citation

omitted). The Court must "ensur[e] that the proposed settlement is not illegal or

collusive" based upon the "issues and evidence, as well as the arms-length nature

of the negotiations prior to the proposed settlement." *Thacker v. Chesapeake*

*Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (citation omitted).[4]

Preliminary approval requires only an "initial evaluation" of the fairness of the

settlement made on the basis of written submissions and informal presentations

from the settling parties. Manual for Complex Litigation § 21.632 (4th ed. 2004).

In analyzing whether a settlement agreement is fair, reasonable, and

adequate, courts typically look ahead to the Sixth Circuit's non-exhaustive factors

for final approval: "(1) the risk of fraud or collusion; (2) the complexity, expense

and likely duration of the litigation; (3) the amount of discovery engaged in by the

parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel

and class representatives; (6) the reaction of absent class members; and (7) the

public interest." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers

of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).[5]

As explained below, the Settlement Agreement meets each consideration.

**A.      There is no risk of fraud or collusion—the instant Settlement was
         reached through a formal mediation session.**

---

[4] When "determining whether preliminary approval is appropriate, the Court should evaluate . . . whether the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *In re Polyurethane Foam Antitrust Litig.*, 2012 WL 12868246, at *4 (N.D. Ohio Jan. 23, 2012).

[5] The Sixth Circuit gives this Court "wide discretion in assessing the weight an applicability of these factors." *Granada Invs. Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992).

The first factor weighs in favor of granting preliminary approval. In general, "'[c]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.'" *Thacker v. Chesapeake Appalachia, L.L.C.,* 695 F.Supp.2d 521, 531 (E.D. Ky. 2010) (citation omitted). Negotiations overseen by an mediator are considered to be non-collusive. *See Bert v. AK Steel Corp.,* 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *see also Satchell v. Fed. Express Corp.,* 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator . . . confirms that the settlement is non-collusive.").

This case was only settled with the persistent help and oversight by a respected mediator, Judge Denlow. Judge Denlow has substantial experience mediating and resolving complex class actions, including several of the nation's largest TCPA class action settlements. The result was a process free of collusion— Judge Denlow ensured that the negotiations stayed at arm's length. Indeed, the mediation itself ended without a deal, and the Parties only reached an agreement with Judge Denlow's help. Hence, the lack of collusion or fraud here supports granting preliminary approval.

**B.    The complexity, expense, and likely duration of the litigation favors approving the Settlement.**

The second factor, which inquires into the complexity and likely duration of the litigation, also supports approval. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement."). "For class actions in particular, courts view settlement favorably because it avoids the costs, delays and multitudes of other problems associated with them." *Id.* at 497 (citation omitted).

This case could drag on for years. First, pre-trial litigation would be extensive, with voluminous discovery needed from both Art Van and its vendor that it hired to make the calls at issue. Experts may also be required to testify regarding Art Van's equipment and other issues in the case, such as the definition and contours of telemarketing and the purpose of Art Van's calls. Substantial fact-finding would be required into the language used in Art Van's recorded messages and the substance of the company's "VIP events" and marketing. While Art Van has disputed that the events were for sales, significant discovery would need to be conducted regarding Art Van's promotion of such events, instructions to staff, and sales figures during the times of the events or from event attendees.

The litigation would require that Plaintiff survive the Motion to Dismiss (and a potential motion to stay) and then proceed with class certification. Assuming a class was certified, dispositive motion practice would follow that

would consume several additional months. All the while the law could change and threaten the claims. Assuming the Court denied summary judgment in Art Van's favor, the case would proceed to trial on a class basis. Then, given the total number of calls, any finding of class-wide liability could prove catastrophic for Art Van. That is, a judgment worth hundreds of millions could put Art Van into bankruptcy. Plaintiff would also need to survive any appeals.

In sum, litigation would be extraordinarily complex, and it could take several years for the Class to see any real recovery. Accordingly, the anticipated length of the litigation favors approving the Settlement Agreement.

### C. The Parties engaged in sufficient fact-finding so as to allow them to properly evaluate their respective claims and defenses.

The Court next asks whether the plaintiff has enough information to "adequately assess their case and the desirability of the proposed settlement" at this stage of the proceedings. *Kritzer v. Safelite Solutions, LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). Courts often "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding." *Id.*

Here, although the Parties reached the proposed settlement at an early stage of the case, proposed Class Counsel were able to make an informed decision regarding the appropriateness of settlement. Through the mediation, the Parties engaged in the exchange of information that allowed Class Counsel to understand

the size of the Settlement Class and the issues at hand. (Woodrow Decl. ¶¶ 14-16.); *see also Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, No. 07-CV-14074-DT, 2008 WL 2968408, at \*26 (E.D. Mich. July 31, 2008) (noting that the use of informal discovery is an adequate tool for class counsel to make an informed decision). Combined with their experience, Class Counsel had all the information needed to "adequately assess the[] case and the desirability of the proposed settlement." *See Kritzer*, 2012 WL 1945144, at \*7. Thus, the Court should find that Class Counsel conducted sufficient discovery.

### D. The Settlement provides favorable relief when viewed against the likelihood of success on the merits.

To "judge the fairness of a proposed compromise," a court must "weigh[] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Int'l Union*, 497 F.3d at 631 quotation omitted). Applied here, and while Bowman is confident in the strength of his claims, the case has issues--as all complex class actions do. The question is whether the amount of the relief provides sufficient compensation to the Class.

To be sure, similar settlements have received final approval by federal courts nationwide. *See, e.g.*, *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) (finding a per-claim amount range of between $7 and $156 fair, reasonable, and adequate); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228

(N.D. Ill. 2016) (explaining that "[a] $52.50 recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.").

Indeed, assuming a 3%-5% take-rate, which would signal a favorable response[6], Class Counsel estimates that each Award Unit will be worth approximately $57 - $96 (which equals the Net Settlement Fund of $3,312,500 divided by 1,150,000 times 3% and 5%).[7] The actual figure will depend on the number of valid claims and other amounts due from the Settlement Fund.

These projections fall comfortably in the range of other TCPA settlements deemed fair and reasonable:[8]

| CASE NAME | AMOUNT PER CLAIMANT |
|---|---|
| *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) | $20.00 to $40.00 |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) | $12.97; or $17.29 voucher |
| *Kazemi v. Payless Shoesource, Inc.*, 09- cv-5142 (N.D. Cal.) | $25.00 voucher |
| *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C 10064 MDL No. 2416 (N.D. Ill. 2015) | $34.60 |

---

[6] "[T]he . . . rule of thumb with respect to consumer class actions is 3-5 percent." *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014); *Vasco v. Power Home Remodeling Grp. LLC*, 2016 WL 5930876, at *12 (E.D. Pa. Oct. 12, 2016) (describing claims rate of 9% as "higher than rates found permissible in other class settlements under the [TCPA]".
[7] 1,150,000 represents the number of phone numbers implicated by the Settlement. This calculation assumes, solely for illustrative purposes, that Administration Expenses equal $800,000 and that the Court approves Incentive Awards totaling $10,000 and a 30% Fee Award (the Settlement calls for up to 33%).
[8] This is a sample of TCPA settlements and is representative. There are settlements where claimants received more than $200.00 per claim or less than $20.00.

| *Steinfeld v. Discover Financial Services*, 12-cv-1118 JSW (N.D. Cal.) | $48.69 |
| *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 13525 (S.D. Cal. 2008) | $70.00 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, 10-cv-1290 BEN (S.D. Cal.) | $84.82 |
| *Wilkins, et al. v. HSBC Bank Nevada, N.A.*, 14 C 190 (N.D. Ill.) | $102.62 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (S.D. Cal.) | $100.00 |
| *Robles v. Lucky Brand Dungarees, Inc.*, 10-cv-4846-MMC (N.D. Cal.) | $100.00 |
| *Kramer v. B2Mobile*, 10-cv-2722 CW (N.D. Cal.) | $100.00 |

The settlement is demonstrably reasonable in light of these other settlements. *See Vasco*, 2016 WL 5930876, at *10 (approving $5.2 million fund for 1.1 million settlement class members in TCPA case where each claimant was set to receive $26.63); *see also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (approving $34.60 per claiming member); *Rose*, 2014 WL 4273358, at *10 (approving $20.00 to $40.00 per claimant). This is especially so given that Art Van is not as large as many of the companies listed.

Hence, the relief provides strong benefits in light of the risks in the case.

### E.    Class counsel and Bowman support the Settlement.

The opinion of proposed Class Counsel also supports approval. When considering this factor, proposed Class Counsel's "weighing of the relative risks and benefits of protracted litigation" should be given "great deference." *Hyland v.*

*HomeServices of Am., Inc.*, 2012 WL 1575310, at *7 (W.D. Ky. May 3, 2012). This case challenges unwanted telephone calls. People who found the calls annoying can file claims and receive cash, and everyone receives the benefit of Art Van's prospective business assurances. When viewed against the risks, the Settlement presents a far more favorable outcome for members of the class.

## F.    The reaction of absent class members will be favorable.

This element cannot be discerned now, but the Settlement provides substantial relief to people who received annoying telephone calls.

## G.    The instant Settlement is in the public's interest.

As a final consideration, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously different and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530. Here, the settlement of a class action affecting approximately 1.15 million people is consistent with the public interest, as it is more efficient than the filing of individual suits and conserves judicial resources. Further, settlement will ensure uniformity of results.

The Settlement therefore falls within the range of final approval under each of the Sixth Circuit's factors, and notice should be issued to the Class.

## VIII.  The Proposed Notice Plan is the Best Practicable in this Case.

Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3),

the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Dukes*, 131 S.Ct. at 2558. Rule 23(e)(1) similarly states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1).

Notice is "adequate if it may be understood by the average class member." Newberg, § 11:53 at 167. The substance of the notice to the class must describe the nature of the case, the class definition, the claims and defenses at issue, as well as explain that settlement class members may enter an appearance through counsel if so desired, request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. 23(c)(2)(B).

As evidenced by the proposed notices appended as exhibits to the Settlement Agreement, the Notice plan developed by both Parties is the best practice under the circumstances. The Parties have selected Epiq Systems to serve as Settlement Administrator. Within 14 days of Preliminary Approval, the Administrator will be provided with the Class List, which the Agreement defines as the lists of phone numbers that contains the cellphone numbers of most Class Members.

Using these Lists, Epiq will perform reverse address look-ups to obtain physical mailing addresses and, where available, email addresses, where such

information is not available. Epiq will also reasonably attempt to update such addresses through utilization of the national change of address registry and other appropriate methods. (*Id.*) The Settlement administrator will then send each Class Member, via first class mail, a copy of the Short Form (postcard) Notice. Wherever an email address is located a copy of the Short Form (email) Notice will be sent to the Class Member as well (the result being that many members of the Settlement Class will receive both mailed and emailed notice of the Settlement Agreement).

Epiq is also responsible for establishing and maintaining a Settlement Website (Settlement Agrmt. at § IV.3.) that will host a traditional "Long Form" notice. At the Website, Class Members can learn about the Settlement Agreement, be advised of key dates and deadlines, and review important settlement documents. Settlement Class Members will also be able to use the Settlement Website to download claim forms for mailing and to submit such claim forms electronically.

The Notice will provide information to Class Members of their inclusion in the Class because they were called by Art Van allegedly in violation of the TCPA. (*Id.* at Group Exhibit 4.) The Notices will provide the terms and provisions of the proposed settlement, including the settlement amounts. (*Id.*) The Notice will advise Class Members of their rights, including the right to be excluded from, comment upon, and object to the Agreement and the procedures for taking such actions. (*Id.*) The Notice will also refer Class Members to the Website and explain the

29

procedures for submitting a claim as well as stating the date, time, and place of the Final Approval Hearing and advise of the right to attend, opt out, and object. (*Id.*)

In anticipation of the preliminary approval hearing the Parties sent to Epiq copies of their draft notices and claim form. The draft notices attached to the Settlement Agreement include Epiq's initial edits and suggestions. As such, the draft notices are in near final form, pending any edits required by the Court.

## IX.    Conclusion

For the foregoing reasons, Plaintiff respectfully asks that the Court certify the class, appoint Bowman as the Class Representative, appoint Steven Woodrow, Patrick Peluso, Taylor Smith, and Stefan Coleman as Class Counsel, grant preliminary approval of the Settlement Agreement, approve the form and manner of notice described above, and schedule a Final Fairness hearing

Dated: April 26, 2018                                        Respectfully Submitted,

**MICHAEL BOWMAN**, individually and on behalf of a class of similarly situated persons,

/s/ Steven L. Woodrow
One of Plaintiff's Attorneys

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)
Taylor T. Smith
(tsmith@woodrowpeluso.com)

Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman, Esq.
LAW OFFICES OF STEFAN COLEMAN,
P.A.
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
law@stefancoleman.com

Bradley J. Friedman, Esq. P70877
Law Offices of Bradley J. Friedman,
Esq.
30300 Northwestern Hwy
Suite 106
Farmington Hills, MI 48334
248-932-3500 (phone)
248-932-1734 (fax)
bfriedmanesq@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on April 26, 2018, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


Dated: April 26, 2018                    By:    <u>/s/ Steven L. Woodrow</u>
                                                 Steven L. Woodrow