# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **MICHAEL BOWMAN**, individually and on behalf of all others similarly situated, | Case No. 17-cv-11630-NGE |
| | Hon. Nancy G. Edmunds |
| Plaintiff, | |
| v. | Mag. R. Steven Whalen |
| **ART VAN FURNITURE, INC.**, a Michigan corporation, | |
| Defendant. | |

### DECLARATION OF STEVEN L. WOODROW

I, Steven L. Woodrow, declare as follows:

1. I am over the age of eighteen (18) and am one of the attorneys for the plaintiff in this matter who is seeking the Court's appointment as Settlement Class Counsel. I make this declaration in support of Plaintiff's Motion for Preliminary Approval of the Class Action Settlement Agreement reached in the above captioned litigation.

2. I make the following statements based upon my own personal knowledge and based on facts learned during the litigation of this case, and I am able to testify to the matters set forth herein if called upon to do so.

*Class Counsel's Pre-Suit Investigation and Early Litigation*

3. Prior to this lawsuit ever being filed, my firm conducted an extensive

investigation into Art Van Furniture, Inc. ("Art Van" or "Defendant") and its alleged making of telemarketing calls to consumers. This investigation included reviewing and analyzing publicly-available information regarding Art Van and its operations as well as its marketing activities. This included a review of available information regarding Art Van's telemarketing activities and corresponding complaints, including Art Van's use of social media platforms to advertise events and sales that were being promoted in its telemarketing campaigns.

4. Based on the information provided by Plaintiff Michael Bowman as well as our in-depth investigation, we had a good faith basis for concluding that Art Van used a pre-recorded voice to make calls as part of its calling campaigns. We further were able to discern a good faith basis for alleging that Art Van lacked oral prior express consent to place such calls, and that it never obtained written prior express consent. We were also able to determine that the calls most likely constituted telemarketing as they allegedly encouraged the purchase of Art Van furniture on or after the calls.

5. Based on such conclusions, we were able to allege that Defendant violated the Telephone Consumer Protection Act ("TCPA") not only with respect to Bowman but *en masse* with respect to hundreds or thousands of other people.

6. Thereafter, we drafted and revised the pleadings in this case and filed the lawsuit on behalf of Plaintiff Bowman and a nationwide class of similarly-

2

situated telephone users.

7. Thereafter, we worked to obtain service and prepared to litigate the case, including the preparation of early outlines of necessary discovery and conferences regarding our overall case strategy.

***The Parties Commence Early Settlement Discussions***

8. Following the filing of the initial Complaint, counsel for the parties engaged in early discussions regarding their respective views of the case as well as to exchange preliminary factual details. These discussions included myself, Steven Woodrow, and Art Van's General Counsel.

9. Shortly thereafter, lawyers from the Detroit-based law firm of Dykema Gossett PLLC appeared on behalf of Art Van. The talks that had previously taken place with Art Van's general counsel shifted to its outside lawyers. Through these discussions we were able to engage in additional informal fact-finding, which uncovered that the calls at issue were made to Mr. Bowman's landline telephone and had been forwarded to his cellphone. Based on this information Art Van was able to identify the calls it placed to Bowman.

10. Given that the calls were not made directly to his cellphone, on July 12, 2017, Bowman filed a First Amended Complaint, which clarified the fact that he had received pre-recorded voice calls on his residential landline phone.

11. On August 21, 2017, Art Van's lawyers at Dykema Gossett filed a

3

Motion to Withdraw and new counsel from the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. (a Washington D.C.-based litigation and trial powerhouse) appeared in the case along with Martin Jaszczuk of Jaszczuk PC (a very well-respected and well-known TCPA defense lawyer).

12.     Art Van filed a Motion to Dismiss and Strike Class Allegations. Shortly thereafter—and in the midst of preparations for the hearing regarding Art Van's Motion to Dismiss—counsel for both Parties began discussing the potential for engaging in early settlement negotiations. A primary driver of such discussions was the realization that, even if the litigation proved to be successful, a judgment worth billions of dollars would have forced Art Van into bankruptcy.

13.     Given these realities, both parties agreed to further engage in settlement discussions through a formal mediation process by scheduling a mediation with the Honorable Morton J. Denlow (ret.) of JAMS in Chicago. Magistrate Judge Denlow has substantial experience mediating consumer class actions in general and TCPA class actions specifically. Indeed, Magistrate Judge Denlow has aided parties in achieving some of the largest TCPA class action settlements in the Country.

14.     Prior to the mediation, and in accordance with Magistrate Judge Denlow's procedures, the parties exchanged critical information regarding the number of persons called, the total number of calls at issue, and the general

framework of Art Van's calling campaigns. The information revealed that the class size was in the range of 1 million (mostly former) customers. Ultimately Art Van, through its vendor, located 1,150,000 individual phone numbers called during the 4-year period preceding the filing of the original Complaint, representing the approximate class size. Art Van's data also includes the names and addresses for all but roughly 20,000 to 40,000 individual phone numbers.

15. Hence, in the lead up to the mediation, and as part of the mediation process, the parties exchanged updated information regarding the size and scope of the proposed class as well as Art Van's planned defenses. In accordance with the mediator's procedures, which includes a detailed checklist of proposed terms, the Parties also exchanged mediation briefs and proposed class action settlement terms, including the class definition, the type of relief (common fund or prospective relief or both), and a proposed notice plan. These briefs and the mediator's checklist helped set up the mediation session for a productive conversation regarding the settlement framework.

16. Despite a constructive full-day mediation session in Chicago facilitated by Magistrate Judge Denlow, the parties were unable to reach an agreement in principle at the mediation session itself. The parties agreed to proceed with the previously scheduled hearing on Art Van's Motion to Dismiss and to Strike Class Allegations.

17. However, the parties also agreed to continue discussions regarding a possible settlement to see if the matter could be resolved prior to the hearing on Art Van's Motion to Dismiss and to Strike Class Allegations. Hence, between the close of the mediation and the scheduled hearing, Judge Denlow worked with the Parties on a parallel settlement track by engaging counsel on both sides in a series of telephone negotiations.

18. Several days prior to the hearing on Art Van's Motion to Dismiss, the parties reached an agreement in principle with respect to the relief to be provided to the proposed Settlement Class Members. Only after an agreement with respect to the Class Members was reached in principle did counsel for the parties discuss, through their exchange of drafts of documents, the issues of reasonable attorneys' fees for proposed class counsel as well as an incentive award for the class representatives.

19. Thereafter, counsel for the parties worked to draft the settlement agreement, claim form, and all of the notices. During this time any additional issues that arose were resolved following further discussions between counsel for the Parties.

***Proposed Class Counsel's Opinion of the Settlement Agreement***

20. The terms of the Settlement Agreement are unquestionably strong, particularly when weighed against other TCPA settlements reached to date.

21. The strength of the Settlement is probably most evident when viewed in light of the potential defenses and the possibility of a prolonged and extensive litigation process. Art Van was set to argue that this case could never be certified as a class action, that its calls were not telemarketing calls, and that the law should not be construed so as to put the company on the hook for billions of dollars in damages for phone calls that it made. Art Van's counsel also made the point that, even if Plaintiff and the class members could overcome the company's defenses, Art Van would likely be rendered insolvent by any meaningful judgment, thereby making any possible substantial recovery difficult and protracted.

22. My firm, along with co-counsel Stefan Coleman of the Law Offices of Stefan Coleman, P.A., have extensive experience litigating TCPA class actions and have devoted substantial resources to the present litigation. We will continue to do so. (*See* Firm Resumes, attached hereto as Exhibits 1 and 2.). We support this Settlement as being fair, reasonable, and adequate and in the best interest of the Settlement Class. The amount afforded to the proposed Settlement Class falls squarely in the range of dollar amounts approved by courts overseeing TCPA class action settlements all across the Country, and the instant settlement affords strong prospective relief designed to reduce (if not wholly eliminate) the making of these unwanted calls.

Further affiant sayeth not.

Signed under penalty of perjury this 26th day of April 2018 in Denver, Colorado.

/s/ Steven L. Woodrow
Steven L. Woodrow

# EXHIBIT 1

## WOODROW & PELUSO, LLC FIRM RESUME

WOODROW & PELUSO, LLC ("Woodrow & Peluso" or the "firm") is a plaintiff's class action and commercial litigation firm based in Denver, Colorado. The firm files cases across the Country.

Our attorneys have over a decade of experience successfully representing consumers and small businesses in matters nationwide. From litigation under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, to cases enforcing the rights of job applicants and employees under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, to appeals of first impression, our lawyers have litigated and favorably resolved numerous legal disputes to the satisfaction of our clients. At Woodrow & Peluso, LLC, we take special pride in the quality of our work product and strive tirelessly to achieve the best results for every client. Descriptions of our three primary practice areas—(1) Consumer Class Actions, (2) Commercial Litigation, and (3) Appeals—and key personnel follow.

### OUR PRACTICE AREAS

**1.     CONSUMER CLASS ACTIONS**

The majority of the firm's caseload focuses on consumer class actions. These cases include class actions alleging violations of statutes, such as the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and the Truth-in-Lending Act, as well as class actions challenging systematic breaches of contract and advancing other common law theories.

**TCPA Class Actions**

Woodrow & Peluso attorneys have successfully litigated and settled numerous class actions challenging violations of the Telephone Consumer Protection Act. To date we have filed, prosecuted, and resolved using various settlement models TCPA cases against major corporations and entities including Rita's Italian Ice, Global Marketing Research Services, LKQ Corporation, J.B. Hunt, Altisource, Acurian, Price Self Storage, Local Lighthouse, Geekatoo, and the University of South Carolina, among others. Our firm's attorneys have substantial experience prosecuting such claims, including class actions challenging the unlawful transmission of text messages, the sending of unlawful facsimiles, the placement of "robocalls" featuring a pre-recorded voice to residential landline phones, and the use of automatic telephone dialing systems, including predictive dialers, to call consumer cell phones.

Notable TCPA cases and settlements include:

• *Wendell H. Stone & Co. v. LKQ Corporation*, 16-cv-07648 (N.D. Ill) (Kennelly, J.) (granting final approval to all-in, non-reversionary, settlement fund of $3,266,500) (final approval granted May 16, 2017).

• *Martin et al. v. Global Marketing Research Services, Inc.*, 6:14-cv-1290-ORL-31-KRS (M.D. FL) (Woodrow & Peluso appointed co-lead Settlement Class Counsel in settlement creating $10 million fund for class of 688,500 cellphone users) (final approval

granted November 4, 2016);

• *Mendez v. Price Self Storage Management, Inc*., 3:15-cv-02077-AJB-JLB (S.D. CA) (Woodrow & Peluso appointed co-lead Settlement Class Counsel in TCPA settlement providing option of $750 cash or $1,100 in storage certificates) (final approval granted August 23, 2016);

• *Sherry Brown and Ericka Newby v. Rita's Water Ice Franchise Company, LLC*, 2:15-cv-03509-TJS (E.D. PA) ("all in" non-reversionary $3,000,000 settlement fund for text messages) (final approval granted March 20, 2017);

• *Morris et al v. SolarCity, Inc*. 3:15-cv-05107 (N.D. CA) (JPA with counsel on $15 million common fund TCPA settlement).

Further, while a Partner with his prior law firm, Woodrow & Peluso attorney Steven Woodrow was appointed interim co-lead class counsel in a TCPA class action against Nationstar Mortgage, LLC (*see Jordan et al v. Nationstar Mortgage LLC*, 3:14-cv-00787-WHO) and led TCPA litigation that resolved favorably against Bankrate Inc., and Carfax.com. Mr. Woodrow was also involved in the TCPA settlement reached in *Weinstein v. The Timberland Co. et al*. (N.D. Ill.), a text messaging class action featuring 40,000 unauthorized messages, and was part of the appellate strategy team that secured the landmark decision in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the first federal appellate decision to affirm that text messages are covered as "calls" under the TCPA.

**FCRA Class Actions**

The second sub-focus within the firm's class action practice consists of cases under the Fair Credit Reporting Act ("FCRA"), which regulates the procurement and use of consumer reports by employers when they make hiring/firing/pay decisions. To date, the firm has successfully represented clients in putative class actions against Terminix, ServiceMaster, TrueBlue Inc./Labor-Ready Mid-Atlantic, FedEx, Tyler Staffing Services, Inc., Great Lakes Wine & Spirits, Freeman Webb, Inc., and others. This includes *Woodford v. World Emblem* 1:15-cv-02983-ELR, an FCRA settlement providing between $315 and $400 to claimants (final approval granted January 23, 2017).

**Banking and Financial Institutions Class Actions**

Our attorneys have substantial experience representing consumers in class action litigation involving national banking associations and other financial institutions. Meaningful representations include:

- *Schulken v. Washington Mut. Bank*, No. 09-CV-02708-LHK, 2012 WL 28099, at *15 (N.D. Cal. Jan. 5, 2012). Attorney Steven Woodrow secured prior firm's appointment as Class Counsel from Judge Lucy Koh in class action challenging JPMorgan Chase Bank, N.A.'s suspension of former WaMu home equity line of credit accounts. Case settled with Mr. Woodrow's appointment as co-lead settlement class counsel.

- *In re JPMorgan Chase Bank, N.A. Home Equity Line of Credit Litigation*, MDL No. 2167. Attorney Steven Woodrow helped secure transfer by the Judicial Panel on Multidistrict Litigation to the Northern District of Illinois and appointment of prior firm as interim class counsel. Attorney Woodrow also negotiated and was also appointed co-lead settlement class counsel in settlement projected to restore between $3 billion - $5 billion in credit to affected borrowers in addition to cash payments.

- *Hamilton v. Wells Fargo Bank*, *N.A.*, 4:09-cv-04152-CW (N.D. Cal.). Attorney Steven Woodrow served as co-lead settlement counsel in class action challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restored access to over $1 billion in credit and provided industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, 09-CV-0350-MMC (N.D. Cal.). Attorney Steven Woodrow was appointed interim co-lead counsel and settlement class counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement was estimated to have restored over $650,000,000 worth of credit to affected borrowers.

- *Vess v. Bank of America, N.A*. 10cv920–AJB(WVG) (S.D. Cal.). Attorney Steven Woodrow negotiated class action settlement with Bank of America challenging suspension and reduction of home equity lines of credit.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.). Steven Woodrow secured the first appellate decision in the country recognizing the right of homeowners to sue under state law to enforce HAMP trial plan agreements. Attorney Steven Woodrow was appointed co-lead settlement counsel providing loan modifications and cash payments to affected borrowers.

**General Consumer Protection Class Actions**

Woodrow & Peluso attorneys have additionally successfully prosecuted and resolved countless class action suits against other companies for a range of consumer protection issues. For example, Woodrow & Peluso filed the first class action in the Country to challenge the marijuana industry's use of certain allegedly dangerous fungicides and pesticides and were the first lawyers to bring class actions (against the Colorado Rockies Baseball Club and Kroenke Sports & Entertainment, LLC) seeking to enforce the Colorado Consumer Protection Act, § 6-1- 718 *et seq*., which prohibits owners of entertainment venues from imposing restrictions on the resale of tickets. The firm has also brought and litigated class actions against hospitals for their use of "chargemaster" billing rates and are presently engaged in litigation against Southwest Airlines related to its "Companion Pass" program.

Woodrow & Peluso LLC has also brought claims against major food manufacturers and distributors for falsely advertising certain products as "All Natural" and "Made in U.S.A." Our attorneys also have experience litigating class claims regarding missing or misappropriated "bitcoins." Woodrow & Peluso also brought the first class action in Colorado against cannabis

growers for their use of unapproved and harmful pesticides.

2. **COMMERCIAL LITIGATION**

As small business owners, we understand and appreciate the challenges that new companies face as they strive to make headway in the market. Our attorneys regularly counsel small to medium-sized businesses and have represented such companies in a wide range of general commercial litigation matters including partnership and business disputes, breaches of contracts and term sheets, and claims charging company managers and members of breach of fiduciary duty, breach of contract, fraud, and fraudulent/preferential transfers. We regularly advise clients on matters and contracts involving millions of dollars, and our attorneys have successfully represented businesses and other entities in mediations, arbitrations, and trial.

3. **APPEALS**

Our attorneys have substantial experience handling appeals at both the state and federal level. Representative appeals worked on predominately by our attorneys include:

- *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). Attorney Steven Woodrow briefed and argued this appeal resulting in the first federal appellate decision holding that banks may be sued under state law for violations of the federal government's Home Affordable Modification Program. The opinion has been cited over 1,300 times by courts, litigants, and commentators throughout the Country and is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers.

- *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014). Attorney Steven Woodrow argued a federal appeal reversing dismissal and upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators regarding whether a plaintiff who does not suffer tangible pecuniary loss may still show legal harm to satisfy Article III standing. The case was reversed on writ of certiorari to the United States Supreme Court (argued by different attorneys).

- *Equity Residential Properties Mgmt. Corp. v. Nasolo*, 364 Ill. App. 3d 26, 28, 847 N.E.2d 126, 128 (2006). Attorney Steven Woodrow helped author the winning brief in this landmark landlord/tenant appeal defining the requirements for constructive service and due process for Illinois evictions under the Illinois Forcible Entry and Detainer Act. 735 ILCS 5/9–107 *et seq*.

- *Fuentes v. Kroenke Sports & Entertainment, LLC*, Case No. 2014CV32619. Woodrow & Peluso appealed grant of summary judgment in favor of defendant finding that the Colorado Consumer Protection Act, 6-1-701 *et*

*seq.* does not allow for class actions. Case settled prior to the resolution of the appeal.

## OUR ATTORNEYS

At present, our firm consists of 3 attorneys whose relevant experience is set forth below.

**STEVEN LEZELL WOODROW** has over a decade of experience advising consumers and small businesses in high stakes litigation.

Steven briefed and delivered the winning argument in the landmark federal appellate court decision *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) holding banks accountable for violations of the federal Home Affordable Modification Program. The opinion is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers. Steven also delivered the winning oral argument in *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014), a federal appeal upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators. The case and the Supreme Court decision that ultimately reversed it (and now the Ninth Circuit's decision to re-affirm its prior finding of Article III standing) present some of the most widely-litigated issues in class action practice today.

Mr. Woodrow was appointed lead class counsel in litigation against JPMorgan Chase Bank, N.A. challenging the bank's 4506-T HELOC suspension program and was appointed lead settlement class counsel in other HELOC suspension litigation against Wells Fargo Bank, N.A., Citibank, N.A., Chase, Bank of America, N.A. and PNC Bank.

Mr. Woodrow also led the legal team that secured a preliminary injunction freezing the U.S. assets of Mark Karpeles, the former head of the failed Bitcoin exchange known as Mt. Gox, as well as an order compelling Mr. Karpeles to personally appear in the United States for a deposition in connection with Mt. Gox's Chapter 15 bankruptcy case in Dallas Texas.

Steven has also litigated putative class actions under the Telephone Consumer Protection Act, and courts have appointed him to serve as class counsel in nationwide settlements against cellphone companies, aggregators, and mobile content providers related to unfair billing practices, including *Paluzzi v. Cellco Partnership*, *Williams v. Motricity, Inc.*, and *Walker v. OpenMarket Inc.*

Steven has also served as an Adjunct Professor of Law at the Illinois Institute of Technology Chicago-Kent College of Law, where he co-taught a seminar on class actions. Prior to founding Woodrow & Peluso, Steven was a partner at prominent class action technology firm in Chicago.

Before that, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection, landlord tenant, and real estate matters.

**EDUCATION**
Chicago-Kent College of Law, J.D., High Honors, 2005
The University of Michigan-Ann Arbor, B.A, Political Science, with Distinction, 2002

**ADMISSIONS**
State of Illinois (2005)
State of Colorado (2011)
United States Court of Appeals for the Seventh Circuit
United States Court of Appeals for the Ninth Circuit
United States District Court, Northern District of Illinois
United States District Court, District of Colorado
United States District Court, Eastern District of Michigan
United States District Court, Western District of Michigan
United States District Court, District of New Mexico

**PATRICK H. PELUSO** specializes in plaintiff-side consumer class actions.

With a true passion for protecting consumers and their rights, Patrick aggressively pursues class action lawsuits against companies who violate those rights.

Through these lawsuits, he is able to force law-breaking companies to compensate the people they have harmed and correct their future practices. Patrick possesses the skills, strategic vision, and moxie to achieve excellent results for the people he represents. He has experience working with a broad range of consumer protection laws including the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and various state consumer protection and consumer fraud statutes.

Patrick received his law degree from the University of Denver, Sturm College of Law where he was Editor-in-Chief of an academic journal. During law school, Patrick worked with a leading consumer class action law firm and held legal internships with a federal administrative judge and the legal department of a publicly traded corporation. Before law school, Patrick attended New York University, where he graduated with a B.S. and played on the school's club baseball team.

Patrick grew up in Baltimore, Maryland and now resides in Denver, Colorado.

**EDUCATION**
University of Denver, J.D. 2014
New York University, B.S.

**ADMISSIONS**
State of Colorado (2014)
United States District Court, District of Colorado
United States District Court, District of New Mexico
United States District Court, Eastern District of Michigan
United States District Court, Northern District of Illinois
United States District Court, Western District of Wisconsin

**TAYLOR TRUE SMITH** focuses his practice on consumer class actions.

Throughout his life and career, Taylor has developed a passion for consumer advocacy. By pursuing class actions on behalf of consumers, Taylor can give consumers not just a voice but also a seat at the bargaining table.

Taylor received his law degree from the Creighton University School of Law. During law school, he interned with the South Dakota Supreme Court. Prior to beginning law school, Taylor attended South Dakota State University where he earned a B.S. in Economics.

Taylor was raised in Fort Pierre, South Dakota and currently resides in Denver, Colorado.

Education
Creighton University School of Law, J.D. *Cum Laude* 2017
South Dakota State University, B.S. *Magna Cum Laude* 2013

Admissions
State of Colorado (2017)
United States District Court, District of Colorado
United States District Court, Eastern District of Michigan
United States District Court, Northern District of Illinois

# EXHIBIT 2

LAW OFFICES OF
# STEFAN COLEMAN, LLC

201 S Biscayne Blvd, 28th Floor, Miami, Fl 33131
1072 Madison Ave, Ste 1, Lakewood, NJ 08701
1309 Jerich Tpke, New Hyde Park, NY 11040

PHONE (877) 333-9427 | FAX (888) 498-8946  NEW YORK | NEW JERSEY | FLORIDA
EMAIL: Law@StefanColeman.com  WEB: ClassAction.ws

## The Law Firm Resume

**The Law Offices of Stefan Coleman** is a dynamic law firm that concentrates its practice on consumer law and technology. The core of the law firm is based on an in-depth knowledge of an ever-evolving technology and its impact on the law. Specifically, the firm has devoted much of its practice to protecting consumer's privacy rights as well as protecting consumer's from product defects and false advertisements. The firm also works on behalf of companies to alert them to the most recent changes and evolutions in the law as it applies to their industry as well as litigating class action cases. The firm has participated in a number of significant class actions on behalf of consumers.

Stefan Coleman, Esq. is a graduate of the University of Virginia and the University of Miami School of Law. He has practiced law for over ten years in which time he has participated in a number of significant class actions on behalf of consumers. The following is a brief list of some of the class actions that he has participated in.

*Love v. IdeaVillage Products Corp et al*, a consumer class action in which certain purchasers could recover a full refund for their purchase of an alleged defective product sold by the defendant. This case resulted in the defendant changing its business practice.

*Xexo v. iRenew Bio Energy Solutions et al*, a consumer class action in which purchasers of the iRenew bracelet recovered for the alleged false advertising by the defendant.

*In re Jiffy Lube,* a Telephone Consumer Protection Act case that resulted in a $35 million recovery for consumers for the unsolicited text message advertising. Several major issues of law were settled in this case resulting in a massive victory for consumers.

*Pimental v. Google Inc.*, a Telephone Consumer Protection Act case that resulted in a $6 million settlement for consumers who received a text message from Google's Slide app.

*Woodman v. ADP Dealer Services, Inc., et al.,* a Telephone Consumer Protection Act case that resulted in a $7.5 million settlement for consumers who received unsolicited text messages promoting car sales.

*Lanza v. Palm Beach Holdings., et al.,* a Telephone Consumer Protection Act case that resulted in a $6.5 million settlement for consumers who received unsolicited text messages.

*Kolinek v Walgreen, Co.* a Telephone Consumer Protection Act case that resulted in an $11 million settlement for consumers who received unsolicited calls to their cell phone.

LAW OFFICES OF
# STEFAN COLEMAN, LLC

201 S Biscayne Blvd, 28th Floor, Miami, Fl 33131
1072 Madison Ave, Ste 1, Lakewood, NJ 08701
1309 Jerich Tpke, New Hyde Park, NY 11040

*Hopwood v. Nuance Communications., et al.,* a Telephone Consumer Protection Act case that resulted in a $9.24 million settlement for consumers who received unsolicited calls.

*Flanigan v. The Warranty Group, Inc. and American Protection Plans LLC d/b/a American Residential Warranty.*, a Telephone Consumer Protection Act case that resulted in a $16 million settlement for consumers who received unsolicited calls.

*Martin v. Global Marketing Research Services*, a Telephone Consumer Protection Act case that resulted in a $10 million fund for consumers who received unsolicited calls.

*Stone & Co.,. v. LKQ Corporation*, a Telephone Consumer Protection Act case that resulted in a $3.26 million fund for consumers who received a fax from the defendant.