## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**MICHAEL BOWMAN**, individually
and on behalf of all others similarly
situated,

                        Plaintiff,

v.

**ART VAN FURNITURE, INC.**, a
Michigan corporation,

                        Defendant.

Case No. 17-cv-11630-NGE

Hon. Nancy G. Edmunds

Mag. R. Steven Whalen

---

## PLAINTIFF'S MOTION FOR AN AWARD OF REASONABLE ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARD

Plaintiff Michael Bowman ("Plaintiff" or "Bowman"), individually and on behalf of a class of similarly-situated individuals, moves the Court for an Order granting Settlement Class Counsel's Motion for an Award of Reasonable Attorneys' Fees and Reimbursement of Expenses and Class Representative Incentive Award and, in support, states as follows:

1. Plaintiff Bowman brought this alleged class action lawsuit against Defendant Art Van Furniture, Inc.[1] ("Defendant" or "Art Van") challenging certain telephone calls that Plaintiff alleges Defendant made to him and others in violation

---

[1] Art Van Furniture, Inc., a Michigan corporation, converted to Art Van Furniture, LLC, a Delaware limited liability company.

of the Telephone Consumer Protection Act ("TCPA" or "Act"), 47 U.S.C. § 227, *et seq.* and its implementing regulation, 47 C.F.R. § 64.1200, *et seq.*

2.     Bowman alleges that Art Van violated the TCPA by calling him and others without prior express consent. Specifically, Bowman alleges that Art Van used pre-recorded voice technology to call his residential telephone number for the purposes of inviting Bowman to a sales event. Art Van denies that it called Bowman or anyone else without first obtaining prior express consent, denies that its calls were for telemarketing purposes, and has raised other defenses.

3.     Notwithstanding their disagreements as to the underlying merits of their respective claims and defenses, the parties entered into a Settlement Agreement that, subject to Court approval, provides relief to the proposed class, including: (i) the establishment of a Settlement Fund of five million eight hundred seventy-five thousand dollars ($5,875,000 USD) for the payment of all approved claims, settlement administration expenses, and any incentive award and award of attorneys' fees and for reimbursement of costs approved by the Court, and (ii) requiring that Art Van take affirmative steps to ensure that it does not call or contract with any third party to call consumers using pre-recorded voice technology without first securing the prior express consent of the called party.

4.     Following a hearing, the Court granted preliminary approval to the Settlement on July 23, 2018. (Dkt. 39.) Promptly following the Order, the Parties

implemented the Notice Plan, and notice was disseminated by the Settlement Administrator.

5.      The response of the Settlement Class has been overwhelming. To date, over 25,000 claims have been filed. Also, Class Counsel's office has fielded over 800 phone calls from Settlement Class Members and has answered questions and assisted such callers with the filing of their claims.

6.      The Settlement Agreement also provides for an award of reasonable attorneys' fees and expenses of up to 33% of the Settlement Fund to Settlement Class Counsel and an incentive award of $5,000 to the Class Representative.

7.      As set forth in the foregoing memorandum, such amounts are demonstrably reasonable, consistent with Circuit precedent, and should be granted.

WHEREFORE, Plaintiff seeks an Order approving an award of reasonable attorneys' fees and expenses equal to 33% of the Settlement Fund ($1,938,750.00 = .33 x $5,875,000) and an Incentive Award to the Class Representative of $5,000. This Motion is based on this Notice of Motion, the attached Memorandum in Support of the Motion, oral argument of counsel, and any other matter that may be submitted at the hearing.


Dated:      September 12, 2018          Respectfully Submitted,

                                        MICHAEL BOWMAN, individually and
                                        on behalf of a class of similarly situated

individuals,

By: s/ Steven L. Woodrow

Bradley J. Friedman, Esq.
Law Offices of Bradley J. Friedman, Esq.
30300 Northwestern Hwy, Suite 106
Farmington Hills, MI 48334
248-932-3500 (phone)
248-932-1734 (fax)
bfriedmanesq@gmail.com

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E Mexico Avenue, Suite 300
Denver, CO 80210
(720) 213-0675

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**MICHAEL BOWMAN**, individually
and on behalf of all others similarly
situated,

Case No. 17-cv-11630-NGE

Hon. Nancy G. Edmunds

Plaintiff,

v.

Mag. R. Steven Whalen

**ART VAN FURNITURE, INC.**, a
Michigan corporation,

Defendant.

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF REASONABLE ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARD

i

## TABLE OF CONTENTS

CONCISE STATEMENT OF ISSUE PRESENTED ......................................... iv

CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................... v

TABLE OF AUTHORITIES .................................................................... vi

I.      INTRODUCTION ..................................................................... 1

II.     FACTUAL BACKGROUND AND TERMS OF THE
        SETTLEMENT........................................................................ 3

        A.      Summary of the Litigation and Settlement Negotiations  .............. 3

        B.      The Settlement Achieves Exceptional Relief for the Class ............. 8

III.    THE AGREED-UPON ATTORNEYS' FEES ARE REASONABLE
        UNDER BOTH THE PERCENTAGE OF RECOVERY METHOD AS
        WELL AS THE LODESTAR METHOD. .................................................. 9

        A.      The Agreed-Upon Fee Award Is Reasonable Under the
                Percentage of the Recovery Method. ............................................... 11

        B.      The Award Is Reasonable When Cross-Checked Against Class
                Counsel's Lodestar.......................................................................... 14

        C.      The Requested Fee Award is Reasonable in Light of the
                Applicable Sixth Circuit Factors for Reasonableness.................... 19

                1.      The value of the benefit to the Class is significant. ............. 19

                2.      The value of the services on an hourly basis supports the
                        requested award. ................................................................... 21

                3.      The services were undertaken on a contingent fee basis.... 22

                4.      The Settlement confers significant benefits on society. ...... 23

                5.      The issues presented by this case are novel and

complex. .................................................................... 23

      6.    Counsel's skill and standing support the requested
award.................................................................... 24

IV.  THE COURT SHOULD APPROVE THE INCENTIVE AWARD TO
CLASS REPRESENTATIVE MICHAEL BOWMAN.......................... 24

V.  CONCLUSION ........................................................ 25

**PLAINTIFF MICHAEL BOWMAN'S BRIEF IN SUPPORT OF MOTION FOR AN AWARD OF REASONABLE ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARD**

**CONCISE STATEMENT OF ISSUES PRESENTED**

I.      Should the Court enter an Order granting Reasonable Attorneys' Fees and Expenses to Settlement Class Counsel equal to 33% of the Settlement Fund?

II.     Should the Court enter an Order granting an Incentive Award of $5,000 to the Class Representative, Michael Bowman?

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

### *General Authorities*

Fed. R. Civ. P. 23, *et seq.*

## III.

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996)

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993)

Fed. R. Civ. P. 23, *et seq.*

## IV.

*Dallas v. Alactel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624 (E.D. Mich.
May 20, 2013)

# TABLE OF AUTHORITIES

*Adcock–Ladd v. Sec'y of Treasury,* 227 F.3d 343 (6th Cir. 2000) .......................... 14

*Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850 (N.D. Ill. 2016) ...... 23

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) ............................... 17

*Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview
    Raceway,* 46 F.3d 1392 (6th Cir. 1995) ............................................. 14

*Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996) ..................................... 10, 19

*Buccellato v. AT & T Operations, Inc.,* No. C10-00463-LHK, 2011 WL 3348055
    (N.D .Cal. June 30, 2011) ................................................................. 17

*Cohorst v. BRE Props., Inc.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923
    (S.D. Cal. Nov. 14, 2011) ................................................................. 21

*Dallas v. Alactel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624 (E.D. Mich.
    May 20, 2013) .................................................................................. 25

*Davis v. J.P. Morgan Chase & Co.,* 827 F.Supp.2d 172 (W.D.N.Y. 2011) ........... 17

*Doe 1-2 v. Deja Vu Servs., Inc.*, Case No. 2:16-cv-10877, 2017 WL 2629101 (E.D.
    Mich. June 19, 2017) .................................................................. 10, 11

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002) ........ 18

*Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560 (7th Cir. 1994) ......................... 11

*Fournier v. PFS Invs., Inc.,* 997 F.Supp. 828 (E.D. Mich. 1998) .................... 12, 13

*Freeland v. RBS Citizens, N.A.*, No. 2-CV-10935-NGE-MKM, 2013 WL 12181696
    (E.D. Mich. Sept. 11, 2013) ............................................................. 16

*Gascho v. Global Fitness Holdings, LLC,* 822 F.3d 269, 279 (6th Cir. 2016) ....... 12

*Hageman v. AT & T Mobility LLC*, Cause No. CV 13-50-BLG-RWA, 2015 WL
    9855925 (D. Mont. Feb. 11, 2015) .................................................... 13

vi

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................................... 20

*In re Cardinal Health Inc. Sec. Litig.,* 528 F.Supp.2d 752 (S.D. Ohio 2007) ........ 17

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) .................................. 10, 12, 13, 15

*In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F.Supp.2d 732 (S.D. Tex. 2008) ............................................................................... 17

*In re Heritage Bond Litig.*, 2005 WL 1594389 (C.D. Cal. June 10, 2005) ............ 21

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......... 14

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........... 21, 24

*In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .......................................................... 10

*In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ............................................... 12

*In re Wash. Pub. Power Supply System Securities Litig.*, 19 F.3d 1291 (9th Cir. 1994) ............................................................................... 22

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*, 639 F.App'x 880 (3d Cir. 2016) ............................................................................... 13

*Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208 (E.D. Mo. June 10, 2015) ................................................. 14

*Mey v. Got Warranty, Inc.*, 193 F.Supp.3d 641 (N.D.W.V. 2016) ........................ 23

*Moulton v. U.S. Steel Corp.,* 581 F.3d 344 (6th Cir. 2009) ................................... 12

*New England Carpenters Health Benefits Fund v. First Databank, Inc.,* Civil Action No. 05-11148-PBS, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ............................................................................... 17

*Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010) ......................................... 12

*Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513 (6th Cir. 1993) ...... 9, 10

*Rose v. Bank of Am. Corp.*, Case No. 5:11-CV-02390-EJD; 5:12-CV-04009-EJD,
   2014 WL 4273358 (N.D. Cal. Aug. 29, 2014).................................. 20

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 CIV. 6548 RLE, 2012 WL 1320124
   (S.D.N.Y. Apr. 16, 2012) ................................................................. 17

*Steiner v. Am. B'casting Co., Inc.,* 248 Fed.Appx. 780 (9th Cir. 2007) ................ 17

*Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200 (C.D. Cal. 2014) .......... 13

## STATUTES, RULES, SECONDARY SOURCES

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ................................ 1

47 C.F.R. § 64.1200, *et seq.* ...................................................................................... 1

Fed. R. Civ. P. 23 ....................................................................................................... 11

A. Conte & H.B. Newberg, NEWBERG ON CLASS ACTIONS
   (4th ed. 2002) ...................................................................................... 17

## I.    INTRODUCTION

This case concerns pre-recorded telephone calls that Defendant Art Van Furniture, Inc.[2] ("Defendant" or "Art Van") allegedly caused to be made to Plaintiff Michael Bowman ("Plaintiff" or "Bowman") and others. Bowman claims that Art Van called him and others to promote sales events without first getting prior express consent as required by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. and its implementing regulations, 47 C.F.R. § 64.1200, *et seq*.

Bowman initiated the instant lawsuit, and, after filing, counsel began engaging in informal discovery regarding key issues related to Bowman's claims, the size and scope of the Class, and Art Van's defenses. These talks led counsel to participate in a full-day mediation session overseen by a nationally-respected mediator, the Honorable Magistrate Judge Morton Denlow (ret.) of JAMS. Through the mediation process, and with Judge Denlow's steady oversight, the Parties were eventually able to reach an agreement. The result is a strong Settlement ("Settlement Agreement" or "Settlement") that provides impressive relief to the Settlement Class.

As the Court is aware, the instant Settlement creates a Settlement Fund

---

[2] Art Van Furniture, Inc. converted to Art Van Furniture, LLC, a Delaware limited liability company.

totaling five million eight hundred seventy-five thousand dollars ($5,875,000 USD) from which Class Members can file claims to receive a cash award.[3] (*See* Settlement Agrmt. at § III.1, a true and accurate copy of which can be found at Dkt. 35-1.) To date over 25,000 claims have been filed. Art Van has also agreed to ensure that it only calls consumers who have provided prior express consent. (Settlement Agrmt. at § III.5.)

Additionally, the Settlement provides for an award of reasonable attorneys' fees and expenses of up to 33% of the Settlement Fund to Class Counsel as well as an Incentive Award to Bowman of $5,000. (Settlement Agrmt. at § VI.) As explained below, these amounts are demonstrably reasonable and should be approved by the Court. The Settlement was made possible only through Class Counsel's effort and skill. An award of 33% of the Fund (equal to $1,938,750) is consistent with fee awards in similar cases, fairly compensates Class Counsel for the work performed and the results achieved, and is supported when cross-checked against Class Counsel's lodestar. Likewise, a $5,000 incentive award is reasonable here.

---

[3] Settlement Class Members who file Valid Claims that are approved by the Court will be entitled to receive one (1) Award Unit. The value of the Award Units will be calculated by subtracting from the Settlement Fund all amounts for Notice and Settlement Administration Expenses, the incentive award, and any award of reasonable attorneys' fees (the "Net Settlement Fund") and then dividing by the total number of units (calculated as the number of Settlement Class Members who file Valid Claims). Award Units will all be of equal value.

As such, and as set forth below, the Court should approve the requested attorneys' fees, expenses, and Class Representative incentive award.

## II.     FACTUAL BACKGROUND AND TERMS OF THE SETTLEMENT

### A.     Summary of the Litigation and Settlement Negotiations

***Class Counsel's Pre-Suit Investigation***

As explained in Plaintiff's Motion for Preliminary Approval (Dkt. 35), this litigation started when Bowman reached out to Class Counsel about annoying and harassing pre-recorded calls that he was receiving from Art Van. Class Counsel interviewed Bowman thoroughly, including researching the nature of the calls and Bowman's experience with Art Van. This included an extensive investigation into Art Van's calling program and its VIP sales events—the events mentioned in its pre-recorded messages, as well as a review of Art Van's business model, locations, and reputation, and prior lawsuits against the company. (*See* Declaration of Attorney Steven L. Woodrow in Support of Motion for an Award of Reasonable Attorneys' Fees and Reimbursement of Expenses and Class Representative Incentive Award ("Woodrow Decl.") ¶ 3, attached hereto as Ex. A.) Class Counsel also reviewed Art Van's public marketing of its Sales events and the purpose of such events. Through this investigation it appeared that Art Van had potentially called numerous consumers in violation of the TCPA.

***Initiation of the Litigation***

On May 23, 2017, Class Counsel, on behalf of Bowman and all others similarly situated, filed the initial class action Complaint in this case alleging that Defendant violated the TCPA, 47 U.S.C. § 227, *et seq*. (*See* Dkt. 1.) Specifically, the Complaint alleged that Art Van violated the TCPA by placing calls using a pre-recorded voice without Plaintiff's prior express written consent. (*Id*.)

Following the filing of the initial Complaint, counsel for the parties engaged in discussions regarding their respective views of the case. (Woodrow Decl. ¶ 8.) At first, Art Van's in-house counsel reached out to Class Counsel for discussions regarding the circumstances of the calls received by Bowman. (*Id.*) Plaintiff's information initially did not appear in Art Van's records, and the Parties agreed to allow Plaintiff to subpoena his phone records. (*Id.*) Art Van, thereafter, retained attorneys from the law firm of Dykema Gossett PLLC.

Class Counsel and Art Van's new lawyers engaged in further fact-finding. (Woodrow Decl. ¶ 9.) Through this process it was uncovered that Art Van had placed calls to Bowman's landline telephone. (*Id.*) On July 12, 2017, Bowman filed a First Amended Complaint setting forth the clarified facts. (*Id.*)

Counsel for the Parties continued their discussions when, on August 21, 2017, Art Van's attorneys at Dykema Gossett filed a Motion to Withdraw and new counsel from the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. appeared in the case. (Dkts. 13, 14, 17.) Attorney Martin Jaszczuk of Jaszczuk PC,

a specialist in TCPA class action defense, appeared on Art Van's behalf as well. (Dkt. 21.) On September 20, 2017, Art Van filed a Motion to Dismiss in part and Strike Class Allegations. (Dkt. 18.) On October 25, 2017, Plaintiff Bowman filed his response in opposition to Art Van's Motion to Dismiss and to Strike. (Dkt. 22.)

### *Informal Discovery, Early Settlement Talks and Mediation*

During preparations for the hearing on Art Van's Motion to Dismiss, counsel for the Parties began discussing the potential for resolving the case in a manner that would be fair to the Class. (Woodrow Decl. ¶ 11.) Following back and forth, Counsel for the Parties agreed to engage in settlement discussions through a formal mediation. Thereafter, counsel worked to schedule a mediation session with Magistrate Judge Denlow. (*Id.* ¶ 12.) Prior to the mediation, the Parties exchanged briefs and critical information regarding the number of persons called, the total number of calls in the case, and, in general terms, Art Van's calling campaigns. As part of Judge Denlow's process, the Parties performed substantial work prior to the mediation, including completing a "mediation checklist" that Judge Denlow requires. (*Id.* ¶ 13.) This work included exchanging additional information and proposals regarding settlement terms and framework. Furthermore, during the mediation process, the Parties exchanged supplemental and updated information regarding the size and scope of the class and Art Van's planned defenses. (*Id.* ¶¶ 13-15.)

Despite extensive discussions facilitated by Judge Denlow, counsel for the Parties were unable to reach an agreement in principle regarding the relief to be made available to the Settlement Class prior to the close of the mediation session in Chicago. (Woodrow Decl. ¶ 16.) Instead, the Parties agreed to proceed with a previously scheduled hearing on Art Van's Motion to Dismiss. This did not conclude the discussion, however. At Magistrate Judge Denlow's urging and with his continued help and oversight the Parties also agreed to continue their discussions to determine whether a resolution could be reached. (*Id.*) As such, while the Parties prepared for the hearing on Art Van's motions, Magistrate Judge Denlow worked to keep the case on a parallel settlement track by engaging the Parties through a series of telephone negotiations. (*Id.* ¶ 17.) The result of this shuttle diplomacy was that the Parties reached a Settlement Agreement in principal with Judge Denlow's help prior to the hearing on the fully-briefed Motion to Dismiss and Motion to Strike Class Allegations. (*Id.*) Only after an agreement in principal was reached with respect to the Class did the Parties discuss reasonable attorneys' fees for proposed Class Counsel or an incentive awards. (*Id.* 18.)

### *Finalization of Settlement and Preliminary Approval*

After reaching an agreement in principle, Counsel worked to draft the (voluminous) Settlement documents, including Settlement Agreement, the Claim Form, and the notices, and to resolve lingering data issues. (Woodrow Decl. ¶ 19.)

This included working with the Settlement Administrator to refine the notices and to ensure the Settlement documents were complete.

Once the Settlement Agreement was finalized, on April 26, 2018, Bowman, through Settlement Class Counsel, filed his Motion for Preliminary Approval. (Dkt. 35.) The Court held a hearing on the Motion for Preliminary Approval on July 11, 2018 and, on July 23, 2018, entered an Order granting preliminary approval to the following Settlement Class:

> The "Settlement Class" or "Class" is defined as "[a]ll individuals and entities who were called by or on behalf of Art Van Furniture through the use of pre-recorded voice technology between May 23, 2013 and the date of entry of the Preliminary Approval Order."

(Dkt. 39, ¶ 6.)

***Post-Preliminary Approval Work***

Following preliminary approval Class Counsel, together with counsel for Art Van, worked with the Settlement Administrator to finalize the notices and other Settlement materials. This included working on and finalizing the content of the Settlement Website and related information.

On or about August 10, 2018, the Settlement Administrator disseminated mail and email notice to approximately 1,259,000 Settlement Class Members. Ever since, Class Counsel's office has been bombarded with phone calls from Settlement Class Members seeking information about the Settlement and help with filing claims. The influx of calls has been so great that Class Counsel was required

to hire an additional staff member to assist with the volume of calls. To date, Class Counsel have spoken with over 800 Settlement Class Members, explaining the terms and the nature of the litigation, and assisting with the filing of claims.

In sum, a tremendous amount of work has gone into litigating and settling this case. The product is a strong settlement that is fair, reasonable, and adequate.

## B.    The Settlement Achieves Exceptional Relief for the Class.

The Settlement provides substantial monetary relief to the Class. Specifically, Art Van has agreed to the establishment of a Settlement Fund of five million eight hundred seventy-five thousand dollars ($5,875,000.00) total. (Settlement Agrmt. at § II.39.) The Settlement Fund will be used to pay all approved claims, Administration Expenses, the Incentive Award, and the Fee Award. After such amounts are subtracted from the Settlement Fund, the amount that remains, referred to as the Net Settlement Fund, will then be divided by the total number of Award Units (which will be equal to the number of Valid Claims that are approved by the Court). To date over 25,000 claims have been filed.[4]

In addition to the $5,875,000 in cash relief, the Settlement Agreement also requires that Art Van adopt certain prospective measures:

---

[4] Under this formula, and for illustrative purposes only, if notice and administrative expenses equaled $800,000 with a Fee Award of 33% of the Settlement Fund and a $5,000 incentive award, at 25,000 claims each claimant would receive a check for $125, a recovery well in line with TCPA class action settlements.

> For a period of twenty-four (24) months following the Effective Date, and subject to changes in applicable law, Art Van agrees not to cause telemarketing calls to be placed to residential landline telephone numbers using pre-recorded voice technology without first obtaining the prior express written consent of the called party. Art Van also agrees to only contract with third-parties who affirmatively agree to abide by the TCPA and all related regulations in the placement of outbound telephone calls using pre-recorded voice technology.

(Settlement Agrmt. at § III.5.) Hence, the Settlement not only compensates Settlement Class Members for Art Van's alleged violations of the Act, it works to ensure that they won't be bothered by additional calls in the future.

In light of these impressive results, the Court should approve Class Counsel's request for reasonable attorneys' fees.

## III.   THE AGREED-UPON ATTORNEYS' FEES ARE REASONABLE UNDER BOTH THE PERCENTAGE OF RECOVERY METHOD AS WELL AS THE LODESTAR METHOD.

When awarding attorney's fees in a class action, a court must ensure that counsel is fairly compensated for the amount of work done as well as for the results achieved. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). It is within the district court's discretion to determine the "appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual case before them." *Id.*

Trial courts within the Sixth Circuit have discretion to calculate an award of attorneys' fees by using either a percentage of the fund calculation, or a

lodestar/multiplier approach. *Rawlings,* 9 F.3d at 516–17. "The overriding requirement is that the award 'be reasonable under the circumstances.'" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003).

The lodestar approach calculates an amount by multiplying the number of hours reasonably expended by counsel by the reasonable and customary hourly rate of the attorney—the resulting base figure can then be increased or decreased by a multiplier to reflect a number of considerations including risk and complexity of the issues. *Id.* "When conducting a percentage of the fund analysis, courts must calculate the ratio between attorney's fees and benefit to the class." *Id.* at 282. Attorney fee awards "of close to 30% appear[ ] to be a fairly well-accepted ratio in cases of this type and generally in complex class actions." *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011); *Doe 1-2 v. Deja Vu Servs., Inc.*, Case No. 2:16-cv-10877, 2017 WL 2629101, at *9 (E.D. Mich. June 19, 2017).

Regardless of the approach taken, the following six factors should be analyzed to ensure the reasonableness of an award of attorney's fees: (1) the value of the benefit rendered to the class, (2) the value of the services on an hourly basis, (3) whether the services were undertaken on a contingent fee basis, (4) the benefit to society, (5) the complexity of the litigation, and (6) the professional skill and standing of counsel. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

Here, as explained below, a fee of 33% of the Fund is reasonable when analyzed under both the lodestar and percentage of the fund approaches.

### A.   The Agreed-Upon Fee Award Is Reasonable Under the Percentage of the Recovery Method.

Rule 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees...that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).[5] The instant settlement is a "common fund" settlement, meaning that because the Defendant is paying a specific sum in exchange for release of liability as to all plaintiffs, the Court may equitably "determine[ ] the amount of attorney's fees that plaintiffs' counsel may recover" from the fund "based on the notion that not one plaintiff, but all those who have benefitted from litigation should share its costs." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). "[T]he value of the common fund depends on the entire 'benefit to the class' created by the settlement, including 'all components that the parties found necessary for settlement.'" *Doe 1-2 v. Deja Vu Servs., Inc.*, 2017 WL 2629101, at *9. "[T]he value of the settlement depends on the size of the entire fund created and the class members' 'right to share the harvest of the suit upon proof of their identity, whether or not they exercise it[.]'" *Id.*

---

[5] The attorneys' fees here are authorized by the Parties' agreement. While Art Van agreed not to object to a fee request seeking up to one-third of the common fund, both Parties agreed that the Court is to review the reasonableness of the fees.

In the Sixth Circuit, "[d]istrict courts have the discretion to select the particular method of calculation but must articulate the "reasons for 'adopting a particular methodology and the factors considered in arriving at the fee.'" *Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 352 (6th Cir. 2009). "The advantages of the percentage of the fund method are that: 'it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation.'" *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016); *see also Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010) (a "reasonable" fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case").

Indeed, "the Sixth Circuit [has] observed that the recent trend has been towards application of a percentage-of-the-fund method in common fund cases." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 532; *see also In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996) ("more commonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund"); *see also Fournier v. PFS Invs., Inc.,* 997 F.Supp. 828, 832–33 (E.D. Mich. 1998) (choosing percentage-of-the-fund method). As one Court has aptly observed:

> The lodestar method should arguably be avoided in situations where such a common fund exists because it does not adequately acknowledge (1) the result achieved or (2) the special skill of the attorney(s) in obtaining that result. Courts and commentators have been skeptical of applying the formula in common fund cases.... [M]any courts have strayed from using lodestar in common fund cases and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees.

*Fournier,* 997 F.Supp. at 831–32; *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 532 ("(1) the lodestar method is too cumbersome and time-consuming of the resources of the Court; and (2) more importantly, the 'percentage of the fund' approach more accurately reflects the result achieved.") (citations omitted).

Applied here, an award of one-third of the common fund is reasonable and falls squarely within the market range for TCPA class action settlements. Indeed, attorneys who secure settlement funds in TCPA class actions are routinely awarded at least one-third. *See, e.g., Landsman & Funk, P.C. v. Skinder-Strauss Associates*, 639 F.App'x 880, 884 (3d Cir. 2016) (affirming award of one-third of reversionary settlement fund in TCPA class action settlement where requested fees were twice the amount of class counsel's lodestar); *see also Hageman v. AT & T Mobility LLC*, Cause No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving fee award of "$15 million, or one-third of the common fund recovery" in TCPA class action settlement against AT&T); *see also Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) ("Accordingly, the Court awards attorney's fees and costs in the amount of $1.1 million, or 33% of

13

the $3.3 million settlement fund ceiling amount."); *see also Lees v. Anthem Ins.*

*Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June

10, 2015) (Approving fees in TCPA settlement representing "34% of the actual

fund available to Class Members.").

Put simply, one-third of the settlement fund falls within the market rate and

should be found reasonable here.

**B.      The Award Is Reasonable When Cross-Checked Against Class
          Counsel's Lodestar.**

Even though the trend in the Sixth Circuit, as explained above, is moving

towards the percentage-of-the-fund method in common fund cases, the requested

fee award of one-third is also reasonable when applying the lodestar method

should the Court choose to do so—either as a cross-check to the percentage-of-the-

fund approach or as the primary method of calculation.

The "lodestar method" calculates attorneys' fees by multiplying the number

of hours "reasonably expended" on the litigation by a "reasonable hourly

rate." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview

Raceway,* 46 F.3d 1392, 1401 (6th Cir. 1995). The Court "may then, within limits,

adjust the 'lodestar' to reflect relevant considerations peculiar to the subject

litigation." *Adcock–Ladd v. Sec'y of Treasury,* 227 F.3d 343, 349 (6th Cir. 2000).

When performing a lodestar cross-check, mathematical exactitude is not required.

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007)

(citation omitted). Courts typically apply a multiplier to the lodestar to account for class counsel taking on the litigation at a substantial risk of non-payment. Multipliers have "ranged from 1-4 and have reached as high as 10." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 533 (citation omitted).

In this case, and as reflected in the chart below, Class Counsel expended a total of 1,342.76 firm hours investigating, litigating, and settling this lawsuit for a total current lodestar of $498,571.

| Attorney Name/Firm | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Steven Woodrow (WP) | Partner | $440 | 493.7 | $217,228 |
| Patrick Peluso (WP) | Partner | $340 | 461.9 | $157,046 |
| Taylor Smith (WP) | Assoc. | $225 | 68.20 | $15,345 |
| Law Clerk (WP) | Clerk | $100 | 15 | $1,500 |
| Vann Ellerbruch (WP) | Sr. Clerk | $200 | 112.46 | $22,492 |
| Stefan Coleman | Partner | $450 | 81.1 | $36,495 |
| Blake Duggar | Assoc. | $225 | 5.4 | $1,215 |
| Brad Friedman | Partner | $450 | 105.0 | $47,250 |
| **LODESTAR** | | | **1,342.76** | **$498,571** |

Class Counsel's lodestar of $498,571 represents the work Class Counsel have undertaken since the inception of this case, including the investigation into Plaintiff's claims, filing the Complaint, engaging in discovery, filing an Amended

Complaint, briefing a motion to dismiss and a motion to strike class allegations, attending a mediation session, negotiating the Settlement and Settlement documents, drafting and filing a motion for preliminary approval, attending the preliminary approval hearing, prosecuting the Settlement through to final approval, and communicating with Mr. Bowman and other Class Members and assisting them with the filing of their claims. Additional time will be needed to respond to any objectors and move for final approval, as well as to continue assisting Class Members (again, Class Counsel have received over 800 inquiries). As such, Class Counsel project expending an additional $15,000 in time seeing the Settlement through to final approval, which includes continuing to field calls from Class Members, assisting them with the filing of their claims, and otherwise shepherding claimants through the process. (Woodrow Decl. ¶ 30.)

Plaintiff's counsel's hourly rates are below the market rate for comparable attorneys in this District, and, in fact, are below the hourly rates this Court approved for Settlement Class Counsel Steven Woodrow back in in July 2013. *See Freeland v. RBS Citizens, N.A.*, No. 2-CV-10935-NGE-MKM, 2013 WL 12181696, at *3 (E.D. Mich. Sept. 11, 2013) (approving $500/hour rate for Woodrow and noting "[t]he Court finds the rates charged to be appropriate and reasonable and that the hourly rates are in line with comparable market rates."). Additionally, Class Counsel's rates are comparable to those charged to private

clients and have been approved by various courts. (*See* Woodrow Decl. ¶¶ 32-

33.).[6] To be sure, each attorney's hourly rate is the same as those charged to

hourly-paying clients. (*Id.* ¶ 33.), and Class Counsel have diligently attempted to

avoid duplication and to delegate work efficiently. (*Id.* ¶ 34.)

While a lodestar amount is presumptively reasonable, it may be adjusted

upward by a multiplier typically ranging between 1 and 4 to account for the risk

faced in taking on the case. *See* Alba Conte & Herbert B. Newberg, *Newberg on

Class Actions*, 14:03 (3d Ed. 1992) (recognizing that multipliers of one to four are

frequently awarded).[7] Indeed, the Ninth Circuit has even considered it an abuse of

---

[6] Mr. Woodrow joined with Mr. Peluso to start their own firm in 2015 and, in the process, Mr. Woodrow lowered his hourly rate in recognition of the fact that smaller firms generally command lower billable rates.

[7] "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (*citing Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1052–54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times)); *see also Sewell v. Bovis Lend Lease, Inc*., No. 09 CIV. 6548 RLE, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts routinely award lodestar multipliers between two to six."); *see also Steiner v. Am. B'casting Co., Inc.,* 248 Fed.Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *see also Davis v. J.P. Morgan Chase & Co.,* 827 F.Supp.2d 172, 184–86 (W.D.N.Y. 2011) (awarding multiplier of 5.3); *see also Buccellato v. AT & T Operations, Inc.,* No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D .Cal. June 30, 2011) (awarding multiplier of 4.3); *see also New England Carpenters Health Benefits Fund v. First Databank, Inc.,* Civil Action No. 05-11148-PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (multiplier of 8.3); *see also In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F.Supp.2d 732, 803 (S.D. Tex. 2008) (multiplier of 5.2); *see*

discretion for a lower court to withhold a multiplier where circumstances require one. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) ("It is an abuse of discretion to fail to apply a risk multiplier, however, when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky.").

Here, Class Counsel's requested fee award of one-third requires a multiplier of only 3.75 of Counsel's lodestar to justify. This is calculated by taking the fee request and subtracting the out of pocket expenses. Here that is $1,938,750 - $13,098.68 = $1,925,651.32. The current lodestar ($498,571) plus the additional $15,000 in anticipated time are then divided by the fee request (again, $1,925,651.32 after subtracting expenses), which equals 3.75. The result is that a multiplier of 3.75 to Class Counsel's lodestar is required to justify the requested attorneys' fees, which falls within the 1 to 4 range for typical lodestar multipliers.

A multiplier is warranted here. Class Counsel expended time and effort researching the law, drafting and editing briefs, motions, mediation documents, and attending a full-day mediation session—all without guarantee of payment. (Woodrow Decl. ¶ 31.) Indeed, the risks present in a nationwide class action are manifest—issues abound that can doom a case, including discovery pitfalls and

*also In re Cardinal Health Inc. Sec. Litig.,* 528 F.Supp.2d 752, 768 (S.D. Ohio 2007) (multiplier of six).

appeals. Yet the effort and skill employed by Class Counsel paid off: the Settlement makes substantial relief available to Class Members. Considering the rates Counsel typically bills in their normal practice fall below those charged in the relevant market and do not account for the risks posed by the case, Counsel would have been hard pressed to have agreed to prosecute this matter absent the prospect of a multiplier. (*Id.*) As such, a multiplier is warranted.

Application of the lodestar analysis thus confirms that the requested fee is reasonable and should be approved. Class Counsel's firms expended 1,342.76 hours for a lodestar of $498,571, which, when adding in the anticipated additional time still required through the remainder of the case, only results in a 3.75 multiplier. The fees are thus reasonable under both methods of review.

### C.   The Requested Fee Award is Reasonable in Light of the Applicable Sixth Circuit Factors for Reasonableness.

The fee award finds further support in the Sixth Circuit's factors for reasonableness when considering attorney's fee awards: (1) the value of the benefit rendered to the class, (2) the value of the services on an hourly basis, (3) whether the services were undertaken on a contingent fee basis, (4) the benefit to society, (5) the complexity of the litigation, and (6) the professional skill and standing of counsel. *Bowling*, 102 F.3d at 780. An analysis of each factor demonstrates that Class Counsel's fee request should be approved.

### 1.   The value of the benefit to the Class is significant.

Class Counsel have achieved meaningful results for the Class. Given the substantial monetary relief negotiated here—in addition to the prospective relief—this consideration weighs heavily in favor the fee award requested.

Class Counsel have secured a common fund of $5,875,000 for the benefit of the Class, which provides Class Members with the ability to file claims for their portion of the Settlement Fund. (Settlement Agrmt. at § III.1.) This is the minimal value of the settlement benefits given that prospective business assurances have also been secured. As of the date of this Motion, the per-claim amount is approximately $125. (Woodrow Decl. ¶ 27.) This is an outstanding result that compares favorably with the amount per claim typically available in TCPA settlements. *See, e.g., In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (discussing range of acceptable TCPA class settlements based on per claimant recovery, approving $34.60 per claiming member); *see also Rose v. Bank of Am. Corp.*, Case No. 5:11-CV-02390-EJD; 5:12-CV-04009-EJD, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant); (*see also* "TCPA Settlement Per Claimant Benefits," attached as Ex. 1 to the Woodrow Declaration).

Again, if fees and other costs are awarded as contemplated by the

Agreement here,[8] as of today each per-claim amount be would be worth approximately $125. Such results weren't obtained by happenstance. Rather, litigating a nationwide class action requires "unique legal skills and abilities." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Although the skill required to successfully prosecute a class action is evident, the "single clearest factor reflecting the quality of class counsel's services to the class are the results obtained." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005). Additionally, the quality and expertise of opposing counsel is important to consider. *See Cohorst v. BRE Props., Inc.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *20 (S.D. Cal. Nov. 14, 2011). As discussed above, Class Counsel have negotiated a settlement in this case after a full-day mediation session and a several months-long series of follow-up discussions that confers substantial cash relief to the Class. This was accomplished despite formidable opposition by seasoned TCPA defense counsel who were prepared to fight through trial and all appeals.

Hence, the Settlement represents a substantial recovery for the Class and was made possible through the skill employed by Class Counsel. Attorneys' fees and expenses of one-third of the Settlement Fund is reasonable.

## 2.    The value of the services on an hourly basis supports the

---

[8] These calculations assume a Fee Award of 33%, an Incentive Award of $5,000, and projected notice and administrative costs of $800,000.

**requested award.**

As described above, Class Counsel bill at rates that correlate to their respective experience and are reasonable in the Denver and Michigan legal markets. Class Counsel have provided the Court with a chart broken down by attorney that lists the hourly rate and the number of hours worked on this case. The hours submitted to this Court have been reviewed and unnecessary or duplicative time has been subtracted. Thus, the value of the services on an hourly basis is easily ascertainable and can be relied upon by this Court to justify the reasonableness of the fees requested.[9]

### 3.    The services were undertaken on a contingent fee basis.

The contingent nature of Class Counsel's fee supports the requested fees. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases . . . as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose." *In re Wash. Pub. Power Supply System Securities Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Applied here, Class Counsel have prosecuted this matter on a contingency basis. (Woodrow Decl. ¶ 31.) At the risk of receiving nothing in return, Class

---

[9] To the extent the Court desires to see Class Counsel's voluminous billing records, they can be provided upon request.

Counsel initiated and diligently prosecuted this case. (*Id.*) Class Counsel's firm has even been required to hire additional staff. Ultimately, after balancing the strength of the claims with the hurdles ahead, Plaintiff and Class Counsel concluded that that the relief available through the Settlement was the best course of action for the Class. (*Id.* ¶ 40.) Accordingly, the significant risk that the Class may have recovered substantially less (or perhaps nothing at all) were the case to proceed supports the reasonableness of Class Counsel's requested fee award.

### 4. The Settlement confers significant benefits on society.

"Congress enacted the TCPA to protect consumers from the annoyance, irritation, and unwanted nuisance of telemarketing phone calls, granting protection to consumers' identifiable concrete interests in preserving their rights to privacy and seclusion." *Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850, 857–58 (N.D. Ill. 2016). Thus, this lawsuit and Settlement provides redress for consumers who had their privacy invaded and their solitude disturbed by Art Van's calls.[10] It also sends a message to others to comply with the law and saves the Court judicial resources. Thus, the Settlement undoubtedly benefits the public.

### 5. The issues presented by this case are novel and complex.

---

[10] *See, e.g.*, *Mey v. Got Warranty, Inc.*, 193 F.Supp.3d 641, 645 (N.D.W.V. 2016) ("[T]he TCPA can be seen as merely liberalizing and codifying the application of [a] common law tort to a particularly intrusive type of unwanted telephone call.")

While TCPA class actions are no longer "new," Art Van did set forth somewhat novel theories in its Motion to Dismiss and Motion to Strike Class Allegations that likely would have become prevalent in this litigation, namely whether Bowman could be a sufficient class representative of persons who received Art Van's calls on their cellphones as opposed to their landlines. While Bowman believes that he would ultimately have prevailed, this is far from a certainty and had the case proceeded novel issues would need to be briefed and argued, and potentially appealed, before the Class received any compensation.

### 6.   Counsel's skill and standing support the requested award.

The litigation of a complex, nationwide class action "requires unique skills and abilities." *In re OmniVision*, 559 F. Supp. 2d at 1047. Class Counsel possess such skills and abilities as evidenced by the results attained for the Class. Also, Class Counsel have a proven track record of effectively and successfully prosecuting complex national consumer class actions involving the TCPA. (*See* Firm Resume of Woodrow & Peluso, LLC, attached as part of Group Exhibit 3 to the Woodrow Decl.) Simply put, this factor weighs in favor of this Motion.

## IV.   THE COURT SHOULD APPROVE THE INCENTIVE AWARD TO CLASS REPRESENTATIVE MICHAEL BOWMAN.

The Settlement provides that, subject to Court approval, Bowman will receive an Incentive Award of $5,000. (Settlement Agrmt. at § VI.2.) "Courts within the Sixth Circuit . . . recognize that, in common fund cases and where the

settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Dallas v. Alactel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624, at *11 (E.D. Mich. May 20, 2013). Here, Bowman's requested award is supported by the fact that he has admirably served the Class. Mr. Bowman has diligently preserved and provided necessary documents and has stayed involved in the prosecution of the action, keeping in contact with Class Counsel. (Woodrow Decl. ¶ 4.) He has remained absolutely committed to pursuing his case on behalf of the Class throughout the process and has consistently kept himself involved and up to date on the proceedings. (*Id.*) Regardless of not having an assurance of such an award, Bowman exhibited willingness to participate and undertake the responsibilities inherent with representing a class in a class action. He took significant time out his personal life to commit all efforts necessary to prepare, litigate, and settle this case on behalf of himself and the Class. As such, the Court should approve the agreed-upon incentive award of $5,000.

## V.    CONCLUSION

For all of the foregoing reasons, the Court should grant Bowman's and Class Counsel's request for reasonable attorneys' fees and expenses in the amount of $1,938,750 and an incentive award in the amount of $5,000.

Dated:    September 12, 2018          Respectfully Submitted,

MICHAEL BOWMAN, individually and
on behalf of a class of similarly situated
individuals,

By: s/ Steven L. Woodrow

Bradley J. Friedman, Esq.
Law Offices of Bradley J. Friedman, Esq.
30300 Northwestern Hwy, Suite 106
Farmington Hills, MI 48334
248-932-3500 (phone)
248-932-1734 (fax)
bfriedmanesq@gmail.com

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Patrick H. Peluso
ppeluso@woodrowpeluso.com
Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E Mexico Avenue, Suite 300
Denver, CO 80210
(720) 213-0675

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on September 12, 2018, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.


Dated: September 12, 2018          By:     /s/ Steven L. Woodrow
                                           Steven L. Woodrow