# EXHIBIT A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**MICHAEL BOWMAN**, individually
and on behalf of all others similarly
situated,

                    Plaintiff,

v.

**ART VAN FURNITURE, INC.**, a
Michigan corporation,

                    Defendant.

Case No. 17-cv-11630-NGE

Hon. Nancy G. Edmunds

Mag. R. Steven Whalen

---

## DECLARATION OF ATTORNEY STEVEN L. WOODROW IN SUPPORT OF MOTION FOR AN AWARD OF REASONABLE ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARD

I, Steven L. Woodrow, declare as follows:

1.     I am over the age of eighteen (18) and am one of the attorneys for the

Plaintiff in this matter. I make this declaration in support of Plaintiff's Motion for

an Award of Reasonable Attorneys' Fees and Reimbursement of Expenses and

Class Representative Incentive Award in connection with the class action

Settlement Agreement reached in the above-captioned litigation against Art Van

furniture ("Defendant" or "Art Van").

2.     I am able to competently testify to the matters set forth herein if called upon to do so. I make the following statements based upon my own personal knowledge and based on facts learned before and during the litigation of this case.

***Class Counsel's Pre-Suit Investigation and Early Litigation***

3.     This case began when Plaintiff Michael Bowman ("Plaintiff" or "Bowman") reached out to attorneys working with Class Counsel. From there, my firm, Woodrow & Peluso, LLC, conducted an extensive investigation into Art Van and its making of what appeared to be telemarketing calls to consumers. The investigation included reviewing and analyzing publically available information regarding Art Van and its operations as well as its marketing activities. This included extensive research regarding Art Van's telemarketing operations and its promotion of VIP sales events on social media.

4.     Additionally, Class Counsel interviewed Plaintiff Bowman regarding the nature and frequency of the calls as well as his experience with Art Van. Through these interviews, Plaintiff provided key information regarding Art Van's calls that helped to establish a factual basis for the lawsuit. Indeed, Bowman had preserved recordings of the calls which proved to be instrumental.

5.     Based on this in-depth investigation and the information provided by Plaintiff Bowman, we had a good faith basis for concluding that Art Van used a pre-recorded voice message when placing calls as part of its telemarketing

campaigns. We concluded based on the information available that a good faith basis existed for alleging that the calls constituted telemarketing because they encouraged the purchase of Art Van furniture by on or after the calls.

6.     We, thereafter, set out to draft and revise the pleadings in this case and filed the lawsuit on behalf of Plaintiff Bowman and the nationwide class of similarly situated individuals on May 23, 2017.

***The Parties Commence Early Settlement Discussions***

7.     The initial Complaint, filed on behalf of Bowman and all others similarly situated, alleged widespread violations of the TCPA.

8.     Following the filing of the initial Complaint, Art Van's in-house counsel reached out to Class Counsel to engage in discussions regarding their respective views of the case. Counsel for both Parties agreed to and did exchange preliminary factual details about the calls and potential size of the Class. After counsel for Art Van was unable to locate any of Bowman's information in its records, Art Van agreed to allow Plaintiff to subpoena his phone records.

9.     Shortly thereafter, attorneys from the Detroit-based law firm of Dykema Gossett PLLC appeared on behalf of Art Van. Shortly after Art Van's new lawyers entered the case the Parties engaged in additional fact-finding. Through this process it was determined that Art Van had placed calls to Bowman's landline telephone and not his cellular telephone as initially believed. Armed with

this clarification, on July 12, 2017, Bowman filed a First Amended Complaint setting forth clarified facts with respect to the type of phone Bowman used when he received the calls.

10.     On August 21, 2017, Dykema Gossett filed a Motion to Withdraw and was replaced by attorneys at the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. a prestigious law firm out of Washington D.C. Attorney Martin Jaszczuk of Jaszczuk PC, a specialist in TCPA class action defense (who formerly ran Locke Lord's TCPA defense practice) also appeared on Art Van's behalf. These are very impressive lawyers.

11.     Shortly after, Art Van filed its Motion to Dismiss in part and Strike Class Allegations. This was a complex motion that raised several novel issues. Our firm spent a substantial amount of time researching the issues set forth in these dual motions and drafting a comprehensive response. Following the completion of the briefing, and while we were busily preparing ourselves for the oral argument, counsel for the Parties began discussing the potential for engaging in early settlement negotiations. Part of these discussions included the realization that, even if the litigation proved to be successful, a judgment could be worth a sum of money that Art Van would be unable to satisfy and could threaten thousands of jobs.

12.     With these realities in mind, counsel for the Parties agreed to engage in settlement discussions through a formal mediation process. Counsel exchanged proposed mediators and ultimately agreed to schedule a formal mediation session with the Honorable Morton J. Denlow (ret.) of JAMS in Chicago. Judge Denlow has substantial experience mediating consumer class actions in general and considerable experience mediating and settling large TCPA class actions in particular.

13.     In preparation for the mediation session, the Parties were required to exchange additional information regarding their respective views of the case and a potential settlement. This included the preparation of Magistrate Judge Denlow's detailed "checklist" of proposed terms, mediations briefs, and proposed class settlement terms, which contained the class definition, the type of relief, scope of the release, and a proposed notice plan. The Parties were also required to exchange critical information regarding the number of persons called, the total number of calls in the case, and Art Van's calling campaigns. The Parties extensive pre-mediation preparations set them up for productive and meaningful negotiations.

14.     The mediation took place in Chicago on January 18, 2018 and lasted the entire day. It was constructive but also, at times, contentious, with both sides expressing a willingness to simply return to the litigation. As a result of the mediation process, Class Counsel were able to better understand the size and scope

of the proposed classes and Art Van's planned defenses, including its position that Art Van symbolizes more to the people of Detroit than simply a furniture store.

15.    The additional information provided through the mediation process helped reveal that the class size was in the range of 1 million (mostly former) customers. Specifically, Art Van's vendor was able to locate 1,150,000 individual phone numbers called during the 4-year period preceding the filing of the original Complaint, representing the approximate class size. Through the mediation process we also learned that Art Van had contracted with a third party to make the calls at issue in this case.

16.    Despite productive discussions and a tenacious effort by the Parties and Magistrate Judge Denlow, the Parties were unable to reach an agreement in principle regarding the relief to be made available to the Settlement Class. We were simply too far apart. Instead, the Parties agreed to proceed with the previously scheduled hearing on Art Van's Motion to Dismiss. Counsel for both Parties, however, agreed to continue settlement discussions to see if a resolution could be reached with Magistrate Judge Denlow's continued oversight and assistance.

17.    Thereafter, Magistrate Judge Denlow worked with the Parties to establish a parallel settlement track by engaging with counsel in a series of telephone negotiations. As a result of these negotiations, the Parties were able to

ultimately reach an agreement in principle with respect the class just a few days prior to the hearing on Art Van's Motion to Dismiss and Motion to Strike the Class Allegations.

18.    Only after an agreement in principle was reached with respect to the Settlement Class did the Parties discuss reasonable attorneys' fees for proposed Class Counsel and an incentive award for Plaintiff Bowman.

***Parties Obtain Preliminary Approval and Notice is Issued to the Class***

19.    Following their reaching of an agreement in principle, counsel for both Parties worked to draft the Settlement Agreement, claim form, all notices, and to resolve outstanding data issues. This work included selecting a mutually agreeable Settlement Administrator, Epiq Systems, and working with the Administrator to refine and finalize the notices and to ensure the Settlement documents were complete.

20.    Once the agreement was finalized and executed, Class Counsel worked diligently to draft the Motion in Support of Preliminary Approval, the accompanying memorandum in support, and to finalize all remaining Settlement documents. Class Counsel, thereafter, traveled to Detroit, Michigan for the hearing on the Motion for Preliminary Approval on July 11, 2018.

21.    The Parties submitted a Proposed Order and, on July 23, 2018, the Court granted preliminary approval and ordered, *inter alia*, that notice to be

disseminated to the class.

22.    Following the Court's granting of preliminary approval, Class Counsel and Art Van's attorneys worked to implement the Settlement Agreement. This included working with the Settlement Administrator to edit, finalize, and approve the Settlement Website, all notices, and related information. The Settlement Website is comprehensive, contains the entire long form notice and other important settlement documents, features FAQs to answer Class Member questions, and allows Settlement Class Members to file their claims online.

23.    On or around August 10, 2018, the Settlement Administrator disseminated mail and email notice to approximately 1,259,000 Settlement Class Members.

24.    Ever since the dissemination of the notice, Class Counsel's office has been flooded with phone calls from Settlement Class Members seeking information about the Settlement as well as assistance in filing claims. The response has been so great that my firm has been required to hire an additional staff member to assist with the volume of calls. To date, Class Counsel have spoken with over 800 individual Settlement Class Members. These communications involve explaining terms and the nature of the litigation as well as assisting the individuals with the filing of claims. Moreover, Class Counsel will continue to devote a substantial amount of time and resources towards assisting

Settlement Class Members in filing claims through to final approval.

25.     To date, over 25,000 claims have been filed and Settlement Class Members continue to reach out to Class Counsel regarding the filing of claims as well as to understand their legal rights under the agreement.

26.     The $5.875 million Settlement Fund will be used to pay all approved claims, Administration Expenses, the Incentive Award, and the Fee Award. After the Administration Expenses, the Incentive Award, and the Fee Award are subtracted from the Settlement Fund, the amount that remains, referred to as the Net Settlement Fund, will then be divided by the total number of Award Units (which will be equal to the number of Valid Claims that are approved by the Court). The Award Units will be of equal value.

27.     If the Court ultimately awards amounts from the Settlement as contemplated by the Agreement, with 25,000 claims filed each award unit would currently be worth approximately $125. This figure is inline with what class members have received in other TCPA settlements. (*See* TCPA Settlement Per Claimant Benefits, attached hereto as Exhibit 1.)

***Class Counsel's Hours and Rates***

28.     After reviewing my firm's time keeping records and consulting with my co-counsel and local counsel, as of the filing of this Motion, Settlement Class

Counsel have expended the following hours[1] pursuing the claims and crafting the settlement of this case:

| Attorney Name/Firm | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Steven Woodrow (WP) | Partner | $440 | 493.7 | $217,228 |
| Patrick Peluso (WP) | Partner | $340 | 461.9 | $157,046 |
| Taylor Smith (WP) | Assoc. | $225 | 68.20 | $15,345 |
| Law Clerk (WP) | Clerk | $100 | 15 | $1,500 |
| Vann Ellerbruch (WP) | Sr. Clerk | $200 | 112.46 | $22,492 |
| Stefan Coleman | Partner | $450 | 81.1 | $36,495 |
| Blake Duggar | Assoc. | $225 | 5.4 | $1,215 |
| Brad Friedman | Partner | $450 | 105.0 | $47,250 |
| **LODESTAR** | | | **1,342.76** | **$498,571** |

29.     The time spent to date is reasonable. Meaningful work was performed before the case was ever filed to ensure that the claims were as well positioned as possible. Indeed, significant time has been expended performing extensive legal research to ensure that the Settlement Class pursued the legal theories with the best chances of success. Throughout the litigation Class Counsel have been required to keep abreast of changes in the law, including the substantive rulings interpreting

---

[1] Class Counsel's time sheets are available upon request for the Court to review.

the TCPA directly as well as tangential issues such as developments in class action practice as well as Article III standing. Moreover, Class Counsel have invested extensive time into investigating Plaintiff's claims, filing the Complaint, engaging in discovery, filing an Amended Complaint, briefing a motion to dismiss and a motion to strike class allegations, preparing for and attending a formal mediation session, negotiating the Settlement and Settlement documents, drafting and filing a motion for preliminary approval, preparing for and attending preliminary approval hearing, prosecuting the Settlement through to final approval, and communicating with Mr. Bowman and hundreds of other Settlement Class Members.

30.    In addition to the work that has been performed to date, Class Counsel anticipate expending an additional $15,000 - $20,000 in billable time seeing the Settlement through to final approval, which by necessity includes continuing to field calls from Settlement Class Members looking to participate in the Settlement.

31.    It is worth noting that Settlement Class Counsel have prosecuted this matter on a contingency basis without any guarantee of payment. At the risk of receiving nothing in return, Class Counsel initiated and diligently prosecuted this case, investing substantial time and resources. Also, the devotion of significant time to this case prevented the attorneys at my firm from working on other matters. We regularly take commercial litigation matters for which we are paid our hourly rates. By taking on this class action, we were necessarily unable to take on as much

hourly work.

32.     Additionally, Plaintiff's counsel's hourly rates are below the market rate for comparable attorneys who practice in this space. In fact, my firm's rates are below the hourly rates this Court approved for Settlement Class Counsel Steven Woodrow all the way back in July 2013. *See Freeland v. RBS Citizens, N.A.*, No. 2-CV-10935-NGE-MKM, 2013 WL 12181696, at *3 (E.D. Mich. Sept. 11, 2013) (Edmonds, J.) (approving $500/hour rate for attorney Woodrow and stating that, "[t]he Court finds the rates charged to be appropriate and reasonable and that the hourly rates are in line with comparable market rates."). Other Courts have also approved higher hourly rates for Mr. Woodrow. *See Wigod v. Wells Fargo Bank, N.A.*, Case No: 1:10-cv-2348 (N.D. Ill. 2014) (Bucklo, J.) (Wigod Dkt. 278) (approving hourly rate of $570 for attorney Woodrow in 2014); *see also Schulken v. Washington Mutual Bank*, No. 09-CV-02708-LHK (N.D. Cal.) (Schulken Dkt. 223) (Koh J.) (approving attorney Woodrow's former hourly rate of $500 in 2012).

33.     Further, Settlement Class Counsel's rates are comparable to those charged to private clients and have been approved by various courts. *See Couch v. Southwest Airlines Co.*, 3:15-cv-00367-N (N.D. Tex. 2016) (Couch Dkt. 43) (approving Woodrow & Peluso's 2016 rates of $430 (for Woodrow) and $330 (for Peluso)).

34.     Class Counsel have diligently attempted to avoid duplication of effort and to delegate work efficiently.

### Class Counsel's Out of Pocket Expenses

35.     In addition to expending time on this case, Class Counsel incurred certain out-of-pocket expenses. These charges include our filing fees, service of process, the mediation, travel to the mediation and preliminary approval, and related expenses. Class Counsel's expenses in this matter total $13,098.68.

36.     Having reviewed the expenses, I attest that they are necessary and reasonable and were incurred as a result of the demands imposed by the litigation. None of the expenses are for lavish accommodations or for unnecessary items. The attorneys at our firm do not fly first class nor do we purchase lavish meals while traveling or working on the case. Further, we expended monies for these items without any guarantee of payment. As such, the Court should approve the requested expenses of $13,098.68. (*See* Expense Report, attached hereto as Exhibit 2.)

### Class Counsel's Experience and Opinion of the Settlement

37.     Class Counsel have significant experience litigating nationwide class actions on behalf of consumers, including several matters specifically under the TCPA. My firm, along with co-counsel Stefan Coleman of the Law Offices of Stefan Coleman, P.A., have extensive experience litigating TCPA class actions and

have devoted substantial resources to the present litigation and will continue to do so throughout the settlement process. (*See* Firm Resumes, attached hereto as Group Exhibit 3.)

38.     Class Counsel are respected in the legal community and are aware of the most recent developments in this area of the law. It is our opinion that the terms of the settlement are undeniably strong when viewed against other TCPA settlements reached to date. The strength is most evident when it is considered that the Class Members will share millions of dollars for having received phone calls that they didn't necessarily want in addition to strong prospective relief designed to ensure such calls don't reoccur in the future. When viewed in light of the potential defenses and the possibility of a prolonged and extensive litigation process, the relief obtained is demonstrably fair, reasonable, and adequate. Art Van would have argued, *inter alia*, that this case could never be certified as a class action, that its calls were not for telemarketing purposes, and that the law should not be construed so as to put the company on the hook for billions of dollars in arguably catastrophic damages.

39.     Furthermore, given that any substantial judgment would potentially render Art Van insolvent, the road to obtaining a substantial recovery would be protracted and uncertain.

40.     When considering all factors together, Class Counsel believes this

Settlement is in the best interests of the Settlement Class Members and is also fair,

reasonable, and adequate.

Further affiant sayeth not.

Signed this 12th day in September 2018 in Denver, Colorado.

/s/Steven L. Woodrow
Steven L. Woodrow

# EXHIBIT 1

| CASE NAME | AMOUNT PER CLAIMANT |
|---|---|
| *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) | $20.00 to $40.00 |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 11-md-2261 (S.D. Cal.) | $12.97; or, $17.29 voucher |
| *Kazemi v. Payless Shoesource, Inc.*, 09- cv-5142 (N.D. Cal.) | $25.00 voucher |
| *In re Capital One Telephone Consumer Protection Act Litigation*, 12 C 10064 MDL No. 2416 (N.D. Ill. 2015) | $34.60 |
| *Steinfeld v. Discover Financial Services*, 12-cv-1118 JSW (N.D. Cal.) | $48.69 |
| *Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 13525 (S.D. Cal. 2008) | $70.00 |
| *Malta v. Fed. Home Loan Mortg. Corp.*, 10-cv-1290 BEN (S.D. Cal.) | $84.82 |
| *Wilkins, et al. v. HSBC Bank Nevada, N.A.*, 14 C 190 (N.D. Ill.) | $102.62 |
| *Gutierrez v. Barclays Grp.*, 10-cv-1012 (S.D. Cal.) | $100.00 |
| *Robles v. Lucky Brand Dungarees, Inc.*, 10-cv-4846-MMC (N.D. Cal.) | $100.00 |
| *Kramer v. B2Mobile*, 10-cv-2722 CW (N.D. Cal.) | $100.00 |
| *Lanza v. Upscale Events by Mosaic, LLC*, 13-cv-80093 DMM (S.D. Fla.) | $150.00 |
| *Ellison v. Steven Madden, Ltd.*, 11-cv-5935 (C.D. Cal.) | $150.00 |
| *Bayat v. Bank of the West*, C 13-2376 EMC (N.D. Cal.) | $151.00 |
| *Weinstein v. The Timberland Co., et al.*, 06-cv-454 (N.D. Ill.) | $150.00 |
| *Satterfield v. Simon & Schuster, Inc.*, 06-cv-2893 (N.D. Cal.) | $175.00 |
| *Rojas v. Career Education Corporation*, 10-cv-5260 (N.D. Ill.) | $200.00 |
| *Lozano v. Twentieth Century Fox Film Corp.*, 09-cv-6344 (N.D. Ill.) | $200.00 |

# EXHIBIT 2

# Woodrow & Peluso LLC

## Expense Report Art Van

| Date | Type of Expense | | Amount |
|------|-----------------|---|--------|
| 5/23/2017 | Filing Fee | $ | 400.00 |
| 12/21/2017 | Mediation Fee | $ | 7,000.00 |
| 1/8/2018 | Roundtrip flights for mediation | $ | 1,309.48 |
| 1/8/2018 | Hotels for mediation | $ | 946.02 |
| 1/18/2018 | Airport parking (mediation) | $ | 146.00 |
| 1/18/2018 | Taxis to and from airport | $ | 86.85 |
| 1/18/2018 | Meals in Chicago for Mediation | $ | 257.84 |
| 1/18/2018 | In-flight Wi-fi | $ | 10.00 |
| 2/14/2018 | Roundtrip flights for MTD Hearing | $ | 594.60 |
| 3/18/2018 | Additional mediation charge | $ | 1,688.44 |
| 4/27/2018 | Shipping courtesy copies of prelim approval brief | $ | 33.00 |
| 7/9/2018 | Roundtrip Flights prelim approval | $ | 405.40 |
| 7/10/2018 | Rental car prelim approval | $ | 171.05 |
| 7/16/2018 | Parking for prelim approval | $ | 50.00 |
| | **Total** | $ | 13,098.68 |

# GROUP EXHIBIT 3

<u>WOODROW & PELUSO, LLC FIRM RESUME</u>

WOODROW & PELUSO, LLC ("Woodrow & Peluso" or the "firm") is a plaintiff's class action and commercial litigation firm based in Denver, Colorado. The firm files cases across the Country.

Our attorneys have over a decade of experience successfully representing consumers and small businesses in matters nationwide. From litigation under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., to cases enforcing the rights of job applicants and employees under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., to appeals of first impression, our lawyers have litigated and favorably resolved numerous legal disputes to the satisfaction of our clients. At Woodrow & Peluso, LLC, we take special pride in the quality of our work product and strive tirelessly to achieve the best results for every client. Descriptions of our three primary practice areas—(1) Consumer Class Actions, (2) Commercial Litigation, and (3) Appeals—and key personnel follow.

OUR PRACTICE AREAS

**1.    CONSUMER CLASS ACTIONS**

The majority of the firm's caseload focuses on consumer class actions. These cases include class actions alleging violations of statutes, such as the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and the Truth-in-Lending Act, as well as class actions challenging systematic breaches of contract and advancing other common law theories.

**TCPA Class Actions**

Woodrow & Peluso attorneys have successfully litigated and settled numerous class actions challenging violations of the Telephone Consumer Protection Act. To date we have filed, prosecuted, and resolved using various settlement models TCPA cases against major corporations and entities including Rita's Italian Ice, Global Marketing Research Services, LKQ Corporation, J.B. Hunt, Altisource, Acurian, Price Self Storage, Local Lighthouse, Geekatoo, and the University of South Carolina, among others. Our firm's attorneys have substantial experience prosecuting such claims, including class actions challenging the unlawful transmission of text messages, the sending of unlawful facsimiles, the placement of "robocalls" featuring a pre-recorded voice to residential landline phones, and the use of automatic telephone dialing systems, including predictive dialers, to call consumer cell phones.

Notable TCPA cases and settlements include:

• *Wendell H. Stone & Co. v. LKQ Corporation*, 16-cv-07648 (N.D. Ill) (Kennelly, J.) (granting final approval to all-in, non-reversionary, settlement fund of $3,266,500) (final approval granted May 16, 2017).

• *Martin et al. v. Global Marketing Research Services, Inc*., 6:14-cv-1290-ORL-31-KRS (M.D. FL) (Woodrow & Peluso appointed co-lead Settlement Class Counsel in settlement creating $10 million fund for class of 688,500 cellphone users) (final approval

granted November 4, 2016);

• *Mendez v. Price Self Storage Management, Inc.*, 3:15-cv-02077-AJB-JLB (S.D. CA) (Woodrow & Peluso appointed co-lead Settlement Class Counsel in TCPA settlement providing option of $750 cash or $1,100 in storage certificates) (final approval granted August 23, 2016);

• *Sherry Brown and Ericka Newby v. Rita's Water Ice Franchise Company, LLC*, 2:15-cv-03509-TJS (E.D. PA) ("all in" non-reversionary $3,000,000 settlement fund for text messages) (final approval granted March 20, 2017);

• *Morris et al v. SolarCity, Inc.* 3:15-cv-05107 (N.D. CA) (JPA with counsel on $15 million common fund TCPA settlement).

• *Gergetz v. Telenav, Inc.* 3:16-cv-04261 (N.D. CA) ("all-in" non-reversionary  $3.5 million fund for text messages (final approval granted on September 6, 2018).

Further, while a Partner with his prior law firm, Woodrow & Peluso attorney Steven Woodrow was appointed interim co-lead class counsel in a TCPA class action against Nationstar Mortgage, LLC (*see Jordan et al v. Nationstar Mortgage LLC*, 3:14-cv-00787-WHO) and led TCPA litigation that resolved favorably against Bankrate Inc., and Carfax.com. Mr. Woodrow was also involved in the TCPA settlement reached in *Weinstein v. The Timberland Co. et al.* (N.D. Ill.), a text messaging class action featuring 40,000 unauthorized messages, and was part of the appellate strategy team that secured the landmark decision in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), the first federal appellate decision to affirm that text messages are covered as "calls" under the TCPA.

**FCRA Class Actions**

The second sub-focus within the firm's class action practice consists of cases under the Fair Credit Reporting Act ("FCRA"), which regulates the procurement and use of consumer reports by employers when they make hiring/firing/pay decisions. To date, the firm has successfully represented clients in putative class actions against Terminix, ServiceMaster, TrueBlue Inc./Labor-Ready Mid-Atlantic, FedEx, Tyler Staffing Services, Inc., Great Lakes Wine & Spirits, Freeman Webb, Inc., and others. This includes *Woodford v. World Emblem* 1:15-cv-02983-ELR, an FCRA settlement providing between $315 and $400 to claimants (final approval granted January 23, 2017).

**Banking and Financial Institutions Class Actions**

Our attorneys have substantial experience representing consumers in class action litigation involving national banking associations and other financial institutions. Meaningful representations include:

• *Schulken v. Washington Mut. Bank*, No. 09-CV-02708-LHK, 2012 WL 28099, at *15 (N.D. Cal. Jan. 5, 2012). Attorney Steven Woodrow secured prior firm's appointment as Class Counsel from Judge Lucy Koh in class

action challenging JPMorgan Chase Bank, N.A.'s suspension of former WaMu home equity line of credit accounts. Case settled with Mr. Woodrow's appointment as co-lead settlement class counsel.

- *In re JPMorgan Chase Bank, N.A. Home Equity Line of Credit Litigation*, MDL No. 2167. Attorney Steven Woodrow helped secure transfer by the Judicial Panel on Multidistrict Litigation to the Northern District of Illinois and appointment of prior firm as interim class counsel. Attorney Woodrow also negotiated and was also appointed co-lead settlement class counsel in settlement projected to restore between $3 billion - $5 billion in credit to affected borrowers in addition to cash payments.

- *Hamilton v. Wells Fargo Bank, N.A.*, 4:09-cv-04152-CW (N.D. Cal.). Attorney Steven Woodrow served as co-lead settlement counsel in class action challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restored access to over $1 billion in credit and provided industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, 09-CV-0350-MMC (N.D. Cal.). Attorney Steven Woodrow was appointed interim co-lead counsel and settlement class counsel in class actions challenging Citibank's suspensions of home equity lines of credit. The settlement was estimated to have restored over $650,000,000 worth of credit to affected borrowers.

- *Vess v. Bank of America, N.A.* 10cv920–AJB(WVG) (S.D. Cal.). Attorney Steven Woodrow negotiated class action settlement with Bank of America challenging suspension and reduction of home equity lines of credit.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.). Steven Woodrow secured the first appellate decision in the country recognizing the right of homeowners to sue under state law to enforce HAMP trial plan agreements. Attorney Steven Woodrow was appointed co-lead settlement counsel providing loan modifications and cash payments to affected borrowers.

**General Consumer Protection Class Actions**

Woodrow & Peluso attorneys have additionally successfully prosecuted and resolved countless class action suits against other companies for a range of consumer protection issues. For example, Woodrow & Peluso filed the first class action in the Country to challenge the marijuana industry's use of certain allegedly dangerous fungicides and pesticides and were the first lawyers to bring class actions (against the Colorado Rockies Baseball Club and Kroenke Sports & Entertainment, LLC) seeking to enforce the Colorado Consumer Protection Act, § 6-1-718 *et seq*., which prohibits owners of entertainment venues from imposing restrictions on the resale of tickets. The firm has also brought and litigated class actions against hospitals for their use of "chargemaster" billing rates and are presently engaged in litigation against Southwest Airlines related to its "Companion Pass" program.

Woodrow & Peluso LLC has also brought claims against major food manufacturers and distributors for falsely advertising certain products as "All Natural" and "Made in U.S.A." Our attorneys also have experience litigating class claims regarding missing or misappropriated "bitcoins." Woodrow & Peluso also brought the first class action in Colorado against cannabis growers for their use of unapproved and harmful pesticides.

**2.    COMMERCIAL LITIGATION**

As small business owners, we understand and appreciate the challenges that new companies face as they strive to make headway in the market. Our attorneys regularly counsel small to medium-sized businesses and have represented such companies in a wide range of general commercial litigation matters including partnership and business disputes, breaches of contracts and term sheets, and claims charging company managers and members of breach of fiduciary duty, breach of contract, fraud, and fraudulent/preferential transfers. We regularly advise clients on matters and contracts involving millions of dollars, and our attorneys have successfully represented businesses and other entities in mediations, arbitrations, and trial.

**3.    APPEALS**

Our attorneys have substantial experience handling appeals at both the state and federal level. Representative appeals worked on predominately by our attorneys include:

- *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). Attorney Steven Woodrow briefed and argued this appeal resulting in the first federal appellate decision holding that banks may be sued under state law for violations of the federal government's Home Affordable Modification Program. The opinion has been cited over 1,300 times by courts, litigants, and commentators throughout the Country and is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers.

- *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014). Attorney Steven Woodrow argued a federal appeal reversing dismissal and upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators regarding whether a plaintiff who does not suffer tangible pecuniary loss may still show legal harm to satisfy Article III standing. The case was reversed on writ of certiorari to the United States Supreme Court (argued by different attorneys).

- *Equity Residential Properties Mgmt. Corp. v. Nasolo*, 364 Ill. App. 3d 26, 28, 847 N.E.2d 126, 128 (2006). Attorney Steven Woodrow helped author the winning brief in this landmark landlord/tenant appeal defining the requirements for constructive service and due process for Illinois evictions under the Illinois Forcible Entry and Detainer Act. 735 ILCS 5/9–107 *et seq.*

- *Fuentes v. Kroenke Sports & Entertainment, LLC*, Case No. 2014CV32619. Woodrow & Peluso appealed grant of summary judgment in favor of defendant finding that the Colorado Consumer Protection Act, 6-1-701 *et seq.* does not allow for class actions. Case settled prior to the resolution of the appeal.

## OUR ATTORNEYS

At present, our firm consists of 3 attorneys whose relevant experience is set forth below.

**STEVEN LEZELL WOODROW** has over a decade of experience advising consumers and small businesses in high stakes litigation.

Steven briefed and delivered the winning argument in the landmark federal appellate court decision *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) holding banks accountable for violations of the federal Home Affordable Modification Program. The opinion is widely regarded as the leading authority on the rights and obligations of HAMP servicers and borrowers. Steven also delivered the winning oral argument in *Robins v. Spokeo*, 742 F.3d 409 (9th Cir. 2014), a federal appeal upholding consumer rights under the Fair Credit Reporting Act against one of the nation's largest online data aggregators. The case and the Supreme Court decision that ultimately reversed it (and now the Ninth Circuit's decision to re-affirm its prior finding of Article III standing) present some of the most widely-litigated issues in class action practice today.

Mr. Woodrow was appointed lead class counsel in litigation against JPMorgan Chase Bank, N.A. challenging the bank's 4506-T HELOC suspension program and was appointed lead settlement class counsel in other HELOC suspension litigation against Wells Fargo Bank, N.A., Citibank, N.A., Chase, Bank of America, N.A. and PNC Bank.

Mr. Woodrow also led the legal team that secured a preliminary injunction freezing the U.S. assets of Mark Karpeles, the former head of the failed Bitcoin exchange known as Mt. Gox, as well as an order compelling Mr. Karpeles to personally appear in the United States for a deposition in connection with Mt. Gox's Chapter 15 bankruptcy case in Dallas Texas.

Steven has also litigated putative class actions under the Telephone Consumer Protection Act, and courts have appointed him to serve as class counsel in nationwide settlements against cellphone companies, aggregators, and mobile content providers related to unfair billing practices, including *Paluzzi v. Cellco Partnership*, *Williams v. Motricity, Inc.*, and *Walker v. OpenMarket Inc.*

Steven has also served as an Adjunct Professor of Law at the Illinois Institute of Technology Chicago-Kent College of Law, where he co-taught a seminar on class actions. Prior to founding Woodrow & Peluso, Steven was a partner at prominent class action technology firm in Chicago.

Before that, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection, landlord tenant, and real estate matters.

## EDUCATION

Chicago-Kent College of Law, J.D., High Honors, 2005
The University of Michigan-Ann Arbor, B.A, Political Science, with Distinction, 2002

**ADMISSIONS**
State of Illinois (2005)
State of Colorado (2011)
United States Court of Appeals for the Seventh Circuit
United States Court of Appeals for the Ninth Circuit
United States District Court, Northern District of Illinois
United States District Court, District of Colorado
United States District Court, Eastern District of Michigan
United States District Court, Western District of Michigan
United States District Court, District of New Mexico

**PATRICK H. PELUSO** specializes in plaintiff-side consumer class actions.

With a true passion for protecting consumers and their rights, Patrick aggressively pursues class action lawsuits against companies who violate those rights.

Through these lawsuits, he is able to force law-breaking companies to compensate the people they have harmed and correct their future practices. Patrick possesses the skills, strategic vision, and moxie to achieve excellent results for the people he represents. He has experience working with a broad range of consumer protection laws including the Fair Credit Reporting Act, the Telephone Consumer Protection Act, and various state consumer protection and consumer fraud statutes.

Patrick received his law degree from the University of Denver, Sturm College of Law where he was Editor-in-Chief of an academic journal. During law school, Patrick worked with a leading consumer class action law firm and held legal internships with a federal administrative judge and the legal department of a publicly traded corporation. Before law school, Patrick attended New York University, where he graduated with a B.S. and played on the school's club baseball team.

Patrick grew up in Baltimore, Maryland and now resides in Denver, Colorado.

**EDUCATION**
University of Denver, J.D.
New York University, B.S.

**ADMISSIONS**
State of Colorado (2014)
United States District Court, District of Colorado
United States District Court, District of New Mexico
United States District Court, Eastern District of Michigan
United States District Court, Northern District of Illinois
United States District Court, Western District of Wisconsin

**TAYLOR TRUE SMITH** focuses his practice on consumer class actions.

Throughout his life and career, Taylor has developed a passion for consumer advocacy. By pursuing class actions on behalf of consumers, Taylor can give consumers not just a voice but also a seat at the bargaining table.

Taylor received his law degree from the Creighton University School of Law. During law school, he interned with the South Dakota Supreme Court. Prior to beginning law school, Taylor attended South Dakota State University where he earned a B.S. in Economics.

Taylor was raised in Fort Pierre, South Dakota and currently resides in Denver, Colorado.

Education
Creighton University School of Law, J.D. *Cum Laude* 2017
South Dakota State University, B.S. *Magna Cum Laude* 2013

Admissions
State of Colorado (2017)
United States District Court, District of Colorado
United States District Court, Eastern District of Michigan
United States District Court, Northern District of Illinois

LAW OFFICES OF

# STEFAN COLEMAN, LLC

201 S Biscayne Blvd, 28th Floor, Miami, Fl 33131
1072 Madison Ave, Ste 1, Lakewood, NJ 08701
1309 Jerich Tpke, New Hyde Park, NY 11040

PHONE (877) 333-9427 | FAX (888) 498-8946
EMAIL: LAW@STEFANCOLEMAN.COM

NEW YORK | NEW JERSEY | FLORIDA
WEB: CLASSACTION.WS

### The Law Firm Resume

**The Law Offices of Stefan Coleman** is a dynamic law firm that concentrates its practice on consumer law and technology. The core of the law firm is based on an in-depth knowledge of an ever-evolving technology and its impact on the law. Specifically, the firm has devoted much of its practice to protecting consumer's privacy rights as well as protecting consumer's from product defects and false advertisements. The firm also works on behalf of companies to alert them to the most recent changes and evolutions in the law as it applies to their industry as well as participating in litigation. The firm has participated in a number of significant class actions on behalf of consumers.

Stefan Coleman, Esq. is a graduate of the University of Virginia and the University of Miami School of Law. He has practiced law for over ten years in which time he has participated in a number of significant class actions on behalf of consumers. The following is a brief list of some of the class actions that he has participated in.
s
*Love v. IdeaVillage Products Corp et al*, a consumer class action in which certain purchasers could recover a full refund for their purchase of an alleged defective product sold by the defendant. This case resulted in the defendant changing its business practice.

*Xexo v. iRenew Bio Energy Solutions et al*, a consumer class action in which purchasers of the iRenew bracelet recovered for the alleged false advertising by the defendant.

*In re Jiffy Lube*, a Telephone Consumer Protection Act case that resulted in a $35 million recovery for consumers for the unsolicited text message advertising. Several major issues of law were settled in this case resulting in a massive victory for consumers.

*Pimental v. Google Inc.*, a Telephone Consumer Protection Act case that resulted in a $6 million settlement for consumers who received a text message from Google's Slide app.

*Woodman v. ADP Dealer Services, Inc., et al.,* a Telephone Consumer Protection Act case that resulted in a $7.5 million settlement for consumers who received unsolicited text messages promoting car sales.

*Lanza v. Palm Beach Holdings., et al.,* a Telephone Consumer Protection Act case that resulted in a $6.5 million settlement for consumers who received unsolicited text messages.

*Kolinek v Walgreen, Co.* a Telephone Consumer Protection Act case that resulted in an $11 million settlement for consumers who received unsolicited calls to their cell phone.

*Hopwood v. Nuance Communications., et al.,* a Telephone Consumer Protection Act case that resulted in a $9.24 million settlement for consumers who received unsolicited calls.

LAW OFFICES OF

STEFAN COLEMAN, LLC

201 S Biscayne Blvd, 28th Floor, Miami, Fl 33131
1072 Madison Ave, Ste 1, Lakewood, NJ 08701
1309 Jerich Tpke, New Hyde Park, NY 11040

*Flanigan v. The Warranty Group, Inc. and American Protection Plans LLC d/b/a American Residential Warranty*., a Telephone Consumer Protection Act case that resulted in a $16 million settlement for consumers who received unsolicited calls.

*Martin v. Global Marketing Research Services*, a Telephone Consumer Protection Act case that resulted in a $10 million fund for consumers who received unsolicited calls.

*Stone & Co.,. v. LKQ Corporation*, a Telephone Consumer Protection Act case that resulted in a $3.26 million fund for consumers who received a fax from the defendant.