## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**MICHAEL BOWMAN**, individually
and on behalf of all others similarly
situated,

               Plaintiff,

v.

**ART VAN FURNITURE, INC.**, a
Michigan corporation,

               Defendant.

Case No. 17-cv-11630-NGE

Hon. Nancy G. Edmunds

Mag. R. Steven Whalen

## PLAINTIFF'S MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

Plaintiff Michael Bowman ("Plaintiff" or "Bowman"), individually and on

behalf of a class of similarly-situated individuals, moves the Court, pursuant to

Federal Rule of Civil Procedure 23, for an Order granting final approval of the

proposed class action Settlement Agreement agreed to by the parties and, in

support, states as follows:

1.      Plaintiff Bowman brought this alleged class action lawsuit against

Defendant Art Van Furniture, Inc. ("Art Van" or "Defendant")[1] challenging certain

telephone calls that Plaintiff alleges Defendant made to him and others in violation

---

[1] Art Van Furniture, Inc., a Michigan corporation, converted to Art Van Furniture,
LLC, a Delaware limited liability company.

of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and its implementing regulation, 47 C.F.R. §64.1200, *et seq.*

2.      The TCPA makes it unlawful for anyone to make telemarketing calls using a pre-recorded voice without first obtaining the prior express consent of the called party. 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B).

3.      Bowman alleges that Art Van violated the TCPA by calling him and others in violation of the TCPA. Specifically, Bowman alleges that Art Van used pre-recorded voice technology to call his residential telephone number for the purposes of inviting Bowman to a sales event.

4.      Art Van denies that it called Bowman or anyone else without first obtaining prior express consent, denies that its calls were telemarketing calls, and has raised other defenses.

5.      Notwithstanding their disagreements as to the underlying merits of their respective claims and defenses, the parties have entered into a Settlement Agreement, subject to final Court approval, that provides relief to the proposed class, including: (i) the establishment of a settlement fund of five million eight hundred seventy-five thousand dollars ($5,875,000 USD) for the payment of all approved claims, settlement administration expenses, and any incentive awards and award of attorneys' fees and for reimbursement of costs approved by the Court, (ii) requiring that Art Van take affirmative steps to ensure that it does not call or

contract with any third party to call consumers using pre-recorded voice technology without first securing the prior express consent of the called party.

6. The Court granted preliminary approval of this settlement agreement on July 23, 2018, subject to a fairness hearing and final approval.

7. Notice has been disseminated to the Class and the response has been overwhelmingly positive. Over 31,000 claims have been filed while only 348 opt-outs have been completed (or 0.03% of the Settlement Class). Additionally, only 3 Settlement Class Members have lodged objections, none of which, as explained below, has merit.

WHEREFORE, Plaintiff seeks final approval of this class action Settlement. This Motion is based on this Notice of Motion, the Memorandum in Support of the Motion attached hereto and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated: October 10, 2018              **MICHAEL BOWMAN**, individually and
                                     on behalf of all others similarly situated,


                                     By: /s/ Steven L. Woodrow

                                     Steven L. Woodrow
                                     swoodrow@woodrowpeluso.com
                                     Patrick H. Peluso*
                                     ppeluso@woodrowpeluso.com
                                     Taylor T. Smith*
                                     tsmith@woodrowpeluso.com
                                     Woodrow & Peluso, LLC
                                     3900 E Mexico Ave., Suite 300

Denver, Colorado 80210
Tel: 720.213.0675
Fax: 303.927.0809
*Pro hac vice*

Bradley J. Friedman, Esq. P70877
Law Offices of Bradley J. Friedman, Esq.
30300 Northwestern Hwy, Suite 106
Farmington Hills, MI 48334
248-932-3500 (phone)
248-932-1734 (fax)
bfriedmanesq@gmail.com


Stefan L. Coleman, Esq.*
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 South Biscayne Boulevard, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
law@stefancoleman.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **MICHAEL BOWMAN**, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 17-cv-11630-NGE |
| v. | Hon. Nancy G. Edmunds |
| **ART VAN FURNITURE, INC.**, a Michigan corporation, | Mag. R. Steven Whalen |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

i

# TABLE OF CONTENTS

**Page**

**CONCISE STATEMENT OF ISSUE PRESENTED**...........Error! Bookmark not defined.

**CONTROLLING OR MOST APPROPRIATE AUTHORITIES**..............Error! Bookmark not defined.

**TABLE OF AUTHORITIES** ................................. Error! Bookmark not defined.**i**

I.      **Introduction**......................................................Error! Bookmark not defined.

II.     **Nature of the Litigation and Settlement** .......................................................1

III.    **THE NOTICE PLAN SATISFIES DUE PROCESS**...................................4

IV.     **THE SETTLEMENT SHOULD RECEIVE FINAL APPROVAL** ..........6

        A.      **There is no risk of fraud or collusion.** .................................................7

        B.      **The complexity, expense, and likely duration of continued litigation weighs in favor of approving the proposed Settlement.**..8

        C.      **The Parties conducted sufficient fact-finding.**.................................10

        D.      **The Settlement provides the Class Members with favorable relief when weighed against the likelihood of success on the merits.** .....11

        E.      **Class counsel and Bowman support the Settlement** ......................13

        F.      **The reaction from the Class has been overwhelmingly positive**...13

                1.      **Only 3 of 1,150,000 class members have objected.** ..............14

                2.      **Ms. Varchetti's objection to the notice is unfounded.**..1Error! Bookmark not defined.

                3.      **Varchetti's objection to the fee calculation and the total fund is inconsistent with standard class action practice** .....19

4.      Varchetti's reliance on *Snyder* is misplaced because Art Van is the only defendant with claims at issue ..............................25

5.      Mr. Waayenberg's objection suggests that the terms of the Settlement are fair and favorable to the Class ....................27

6.      Mr. Thompson's statement that he was personally unable to file a claim with an affected phone number does not undercut the Settlement's fairness or adequacy .................27

G.      Public interest supports approval of the Settlement.......................29

V.      CONCLUSION ..............................................................................30

## CONCISE STATEMENT OF ISSUE
## PRESENTED

I.    Does the Settlement Agreement reached by the Parties—which provides for a Settlement Fund of five million eight hundred seventy-five thousand dollars ($5,875,000 USD) and strong prospective relief to ensure Defendant's compliance with the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA")—achieve a fair, reasonable, and adequate result so as to warrant final approval?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

### *General Authorities*

47 U.S.C. § 227, *et seq.*

Fed. R. Civ. P. 23, *et seq.*

### *Controlling Case Law*

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008)

*Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402 (6th Cir. 2012)

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999–GPC
   2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) .......................................12

*Bert v. AK Steel Corp.*, No. 1:02–CV–467
   2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) .....................................7

*Bourne v. Ansara Restaurant Group, Inc.*, No. 16-10332
   2016 WL 7405804 (E.D. Mich. Dec. 22, 2016).......................... 23–24

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981)..........................................11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .....................................4

*Faught v. American Home Shield Corp.*,
   668 F.3d 1233 (11th Cir. 2011)...........................................................16

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ...........................................4, 5

*Fournier v. PFS Investments, Inc.*,
   997 F. Supp. 828 (E.D. Mich. 1998)..................................................23

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215 (N.D. Ill. 2016)...........12

*Gooch v. Life Investors Ins. Co. of America*,
   672 F.3d 402 (6th Cir. 2012)...............................................................16

*Griffin v. Flagstar Bancorp, Inc.*, No. 2:10–cv–10610,
   2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)........................ *passim*

*In re Auto. Parts Antitrust Litig.*, No. 12-md-02311
   2016 WL 8201483, (E.D. Mich. Dec. 28, 2016)........................ 4, 6–7

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................. 12, 20

*In re Cardizem CD Antitrust Litigation*,
   218 F.R.D. 508 (E.D. Mich. 2003)................................... 14, 22–23, 29

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008)......................................... 8, 14, 23

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) ......................22

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir. 1977)............................................................16

*In re Packaged Ice Antitrust Ligitation*, No. 08–MD–01952
  2011 WL 717519 (E.D. Mich. Feb. 22, 2011)......................................7

*In re Telectronics Pacing Sys., Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001)................................................8

*Int'l Union v. Ford Motor Co.*, Nos. 05-74730, 06-10331
  2006 WL 1984363 (E.D. Mich. July 13, 2006) .............................7, 14

*Int'l Union v. Ford Motor Co.*, No. 07-CV-14845
  2008 WL 4104329 (E.D. Mich. Aug. 29, 2008) ........................ 18, 21

*Int'l Union, UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007)....................................................... *passim*

*Kinder v. Meredith Corp.*, No. 14-cr-11284
  2016 WL 454441 (E.D. Mich. Feb. 5, 2016) .....................................16

*Krakauer v. Dish Network, LLC*, No. 1:14–CV–333
  2017 WL 4417957 (M.D. N.C. Oct. 3, 2017) ....................................21

*Kritzer v. Safelite Solutions, LLC*, No. 2:10–cv–0729
  2012 WL 1945144 (S.D. Ohio May 30, 2012) ..................................10

*Martin v. Trott Law, Inc.*, No. 15-12838
  2018 WL 4679626 (E.D. Mich. Sept. 28, 2018)................................24

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004)..................................10

*Rose v. Bank of America Corp.*, No. 5:11–CV–02390–EJD
  2014 WL 4273358 (N.D. Cal. Aug. 29, 2014)............................ 12, 20

*Satchell v. Fed. Express Corp.*, Nos. C03–2659 SI, C 03–2878 SI
  2007 WL 1114010 (N.D. Cal. Apr.13, 2007) .....................................7

*Snyder v. Ocwen Loan Servicing, LLC*, Case No. 14 C 8461
  2018 WL 4659274 (N.D. Ill. Sept. 28, 2018) ............................ 25–26

*United States v. Dish Network, LLC*,
  256 F. Supp. 3d 810 (C.D. Ill. 2017)..................................................21

*Vasco v. Power Home Remodeling Grp. LLC*, Civil Action No. 15-4623
  2016 WL 5930876 (E.D. Pa. Oct. 12, 2016).............................. *passim*

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) .......................................6

**Statutes, Rules, and Regulations**

Class Action Fairness Act, 28 U.S.C. § 1715 ...............................................5

Fed. R. Civ. P. 23 .................................................................................. *passim*

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ................... iv

**Other Authorities**

*Judges Class Action Notice and Claims Process Checklist and Plain Language Guide*, 3 (2010) ...................................................................5

## I.     Introduction

The instant Class Action Settlement[2]—which seeks to resolve the claims of over 1.15 million Settlement Class Members regarding pre-recorded phone calls they received from Defendant Art Van—has been an undeniable success.

In accordance with the Court's Preliminary Approval Order, the Class Notice was disseminated to over 1.6 million mail and email addresses alerting potential Settlement Class Members to the existence of the Settlement and encouraging them to file claims. The response has been overwhelmingly positive. Only 348 opt-outs were sent, and only three class members have objected. As of October 9, 2018, 31,471 clams have been filed and approved and an additional 18 claims await processing, resulting in a present-day Award Unit value of approximately $98.87 per claimant.[3] This award value is demonstrably fair, reasonable, and adequate and worthy of final approval.

As explained below, the Court should grant final approval.

## II.     Nature of the Litigation and Settlement

The Court has been presented with the litigation and Settlement history in

---

[2] Unless otherwise specified, capitalized terms have the same meanings as those set forth in the Definitions section of the Settlement Agreement. *See* Dkt. 35-1.

[3] These calculations assume a Fee Award of 33%, an Incentive Award of $5,000, and projected administrative costs of $800,000 and will decrease as the remaining claims, and certain late-filed claims, are processed.

1

prior briefs. An abbreviated summary follows.

### *The Plaintiff's Complaint and the Litigation History*

Prior to filing the lawsuit, Class Counsel undertook and extensive investigation into the facts. On May 23, 2017, Plaintiff filed the instant action. (*See* Dkt. 1.) Following the filing of the Complaint, counsel for the parties engaged in discussions regarding their views of the case, including the circumstances surrounding calls received by Plaintiff Bowman. (*See* Declaration of Steven Woodrow ("Woodrow Decl."), Ex. A, at ¶ 8) Art Van then retained attorneys from Dykema Gossett PLLC, and Counsel for the Parties engaged in further fact-finding with respect to Bowman's claims. (*Id.* ¶ 9.) On July 12, 2017, Bowman filed an Amended Complaint clarifying facts with respect to his phone. (*Id.* ¶ 10.)

On August 21, 2017, new counsel from the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. appeared in the case for Art Van. (Dkts. 13, 14, 17.) Attorney Martin Jaszczuk of Jaszczuk PC, a specialist in TCPA class actions, appeared on Art Van's behalf as well. (Dkt. 21.) On September 20, 2017, Art Van, through its new lawyers, filed a Motion to Dismiss in part and Strike Class Allegations. (Dkt. 18.) On October 25, 2017, Plaintiff Bowman filed his response in opposition to Art Van's Motion to Dismiss and to Strike. (Dkt. 22.)

### *The Parties Engage in Mediation and Reach a Settlement*

During preparations for the hearing on Art Van's Motion to Dismiss,

counsel for the Parties began discussing the potential for settlement. (Woodrow Decl. at ¶ 12.) Counsel for the Parties agreed to engage in a formal mediation and scheduled a mediation with Magistrate Judge Denlow (ret.) of JAMS in Chicago. (*Id.* ¶ 13.) Despite extensive discussions facilitated by Magistrate Judge Denlow, counsel were unable to reach an agreement prior to the close of the mediation. (*Id.* ¶ 16.) Instead, the Parties agreed to proceed with Art Van's Motion to Dismiss.

At the same time, the Parties agreed to continue their discussions to discern whether a resolution was possible. (*Id.* ¶ 17.) During their continued preparations for the hearing, Judge Denlow engaged the Parties through series of telephone negotiations. (*Id.*) The result was that the Parties reached an agreement in principal shortly prior to the hearing. (*Id.* ¶ 18.) Only after an agreement in principal was reached with respect to the Class was attorneys' fees or an incentive award discussed. (*Id.*) Counsel then worked to draft the Settlement Agreement, the Claim Form, and the notices, and work to resolve outstanding data issues. (*Id.* ¶ 19.)

On April 26, 2018, Bowman filed his Motion for Preliminary Approval. (Dkt. 35.) On July 11, 2018, the Court held a hearing on preliminary approval and subsequently granted preliminary approval on July 23, 2018. (Dkt. 39.)

### *Following Preliminary Approval, Class Counsel assisted Settlement Class Members and have worked to implement and finalize the Settlement*

Following preliminary approval, Class Counsel and Art Van's attorneys worked cooperatively to implement the Settlement, including finalizing and

3

approving all notices, the claim form, and the Settlement Website with the Settlement Administrator (Epiq Systems). (Woodrow Decl. at ¶¶ 21–22.) Approximately 1.6 million notices were sent via mail and email to the 1.15 million settlement class members, regarding mailings, opt outs, and re-mailings. (*See* Declaration of L. Marquez for Epiq Global ("Marquez Decl."), a true and accurate copy of which is attached hereto as Ex. B, at ¶¶ 10–11.) Class Counsel have also assisted over 800 Class Members who have contacted their offices with questions regarding the Settlement's terms and process. (Woodrow Decl. at ¶ 23.)

As of this writing, 31,471 Settlement Class Members have filed claims, resulting in a per-claim amount of at least $98. Such results compare favorably with other TCPA class action settlements and warrant approval.

## III.   THE NOTICE PLAN SATISFIES DUE PROCESS

Prior to granting final approval, the Court must consider whether the Notice to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008). Where names and addresses of known or potential class members are reasonably available, direct notice should be provided. *In re Auto. Parts Antitrust Litig.*, 2016 WL 8201483, at *2 (E.D. Mich. Dec. 28, 2016). However, due process

does not require receipt of actual notice by all class members. *Fidel*, 534 F.3d at 514. In addition, the notice itself must be in easily-understood language and must state the class definition, set out the claims at issue, explain that a judgment will be binding on class members unless they opt-out, inform class members of their right to be excluded and the process to request exclusion, and inform class members that they may enter an appearance through an attorney if they wish. Fed. R. Civ. P. 23(c)(2)(B).

The notice plan approved by the Court has been fully carried out by the Settlement Administrator, Epiq Systems, and consisted of direct-mail notice sent to every identified Class Member and the establishment of a settlement website. (*See* Marquez Decl., Ex. B, at ¶¶ 2–5, 18.)[4]

Of the initially-estimated 1,150,000 million Class Members, notice was mailed to 1,162,166 physical addresses. (Marquez Decl. at ¶ 11.) Of those, 103,751 were returned as undeliverable, and 77,372 were re-mailed to updated addresses. (*Id.* ¶ 13.) Combined with emails, notice was sent directly to 1,081,769 out of the identified 1,167,769 unique Settlement Class Members, or 92.6%. (*Id.* ¶ 14.) Further, the notice was written in plain English, summarized the key terms, and directed Class Members to the Court-approved "long form" notice posted online.

---

[4] Art Van further caused notice to be sent to appropriate Attorneys General as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

Through this website, Class Members could review key documents and receive important updates, including that the fairness hearing had been rescheduled. (*Id*. ¶ 22.) As the notice reached over 90% of the Class, it fully satisfies Rule 23 and Due Process. *See* Federal Judicial Center, *Judges Class Action Notice and Claims Process Checklist and Plain Language Guide*, 3 (2010) (due process requires 70% reach).

In short, the Notice Plan comports with due process.

## IV.    THE SETTLEMENT SHOULD RECEIVE FINAL APPROVAL

The law favors settlement of class actions. *Auto. Parts*, 2016 WL 8201483, at *3 (citing *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10–cv–10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013)). To approve a settlement, the Court must conclude that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (hereafter *UAW v. GMC*). The approval process includes three steps: (1) the court must grant preliminarily approval to the proposed settlement; (2) class members must be given notice of the settlement; and (3) the court must determine reasonableness and give final approval after a hearing. *Williams v. Vukovich*, 720 F.2d 909, 920–21 (6th Cir. 1983).

The Sixth Circuit has identified a list of non-exhaustive factors for final approval: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely

duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW v. GMC*, 497 F.3d at 631; *Auto. Parts*, 2016 WL 8201483, at *4.

As explained below, each of these factors support final approval.

### A.      There is no risk of fraud or collusion.

The first factor weighs in favor of granting final approval. In general, courts "respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *In re Packaged Ice Antitrust Ligitation*, 2011 WL 717519, at *12 (E.D. Mich. Feb. 22, 2011) (quoting *Int'l Union v. Ford Motor Co.*, 2006 WL 1984363, at *26 (E.D. Mich. July 13, 2006)). Negotiations overseen by a mediator are considered to be non-collusive. *See Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("[A]n independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *see also Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator . . . confirms that the settlement is non-collusive.").

As the Court found in its Order Granting Preliminary Approval, this Settlement "is the result of arms' length negotiations involving experienced class

action attorneys and overseen by an experienced third-party mediator." (Dkt. 39, at

¶ 8.) This case was only settled with considerable help and oversight by a respected

mediator, Magistrate Judge Denlow (ret.). The process was free of collusion and

the Parties remained at arm's length. The proposed Settlement resulted from

continued negotiations, facilitated by Judge Denlow, and it could not have occurred

without his help. The lack of collusion or fraud supports preliminary approval.

### B.   The complexity, expense, and likely duration of continued litigation weighs in favor of approving the proposed Settlement.

The second factor—the complexity, costs, and duration of continued

litigation—also favors final approval. "[T]he expense and possible duration of

litigation are major factors to be considered in evaluating the reasonableness of a

settlement." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D.

483, 497 (E.D. Mich. 2008). For class actions, settlement "avoids the costs, delays

and multitudes of other problems associated with them." *Id.* (quoting *In re

Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)).

Absent settlement, the present case could drag on for years. Pre-trial

litigation would be extensive, with voluminous formal discovery needed from both

Art Van and its hired vendor that placed the calls at issue. Experts may also be

required to testify regarding Art Van's equipment and other issues, such as the

definition and contours of telemarketing and the purpose of Art Van's calls.

Substantial fact-finding would be required into the language used in Art Van's

recorded messages and the substance of the company's "VIP events." While Art Van has disputed that the events were for sales, significant discovery would need to be conducted regarding Art Van's promotion of such events, instructions to staff, and sales figures during the times of the events.

If Plaintiff were to survive the Motion to Dismiss, this case would proceed to formal class certification.[5] Assuming a class was certified, dispositive motion practice would follow that would take months to complete. During such time, the law could change and threaten the claims or any chance of recovery by the class members. Assuming the Court denied summary judgment in Art Van's favor, the case would proceed to trial on a class basis. In light of the total number of calls and the number of class members—more than one million—a finding of class-wide liability at trial would prove catastrophic for Art Van. In other words, a judgment worth hundreds of millions could bankrupt Art Van and reduce or eliminate any likelihood of recovery by the class. Further, any decision at trial could result in appeals, which would further multiply the costs and duration of this case.

In short, litigation of this class action would be predictably complex, and the proceedings could extend for years before Class members recovered anything—a chance that could be rendered meaningless in the face of bankruptcy or appeal. All

---

[5] The Court's order granting preliminary approval certified the class solely for the purpose of the Settlement Agreement, suggesting that additional briefing would be required if the case continued. (Dkt. 39, at ¶ 6.)

the while, the costs to both the Parties and the Court would continue to rise. Hence, this factor weighs in favor of granting final approval.

### C.     The Parties conducted sufficient fact-finding.

The next factor considered is the amount of discovery engaged in by the parties, or whether the plaintiff had enough information to "adequately assess their case and the desirability of the proposed settlement." *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). Courts often "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement...." *Id.* The absence of formal discovery is not an obstacle to final approval as long as the parties have enough information to evaluate their positions. *Griffin*, 2013 WL 6511860, at *3 (quoting *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004)).

Here, although the Parties reached the proposed Settlement at an early stage of the case, Class Counsel had sufficient evidence to make an informed decision regarding settlement. Throughout the mediation, the Parties exchanged information that allowed Class Counsel to understand the size of the Settlement Class and the issues at hand. (Woodrow Decl. at ¶¶ 14–15.) This allowed both parties to evaluate their positions in the case before entering into formal, and more costly, forms of discovery. Combined with their experience, Class Counsel had all the information needed to assess the case and the desirability of the proposed Settlement. Just as

10

the Court recognized in *Griffin*, the absence of formal discovery does not undermine the integrity of the Settlement because the investigation that has occurred thus far "demonstrates that counsel [for both Parties] have a full understanding of the strengths and weaknesses of their case." *See Griffin*, 2013 WL 6511860, at *3. In short, this factor supports approval as well.

### D. The Settlement provides the Class Members with favorable relief when weighed against the likelihood of success on the merits.

The next factor, which requires weighing the relief obtained against the likelihood of success, also favors final approval. When judging the fairness of a settlement, the Court must weigh "the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW v. GMC*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981)). This analysis does not require the Court to decide if either side has the better argument, but rather to determine "whether the parties are using settlement to resolve a legitimate legal and factual dispute." *UAW v. GMC*, 497 F.3d at 632; *Griffin*, 2013 WL 6511860, at *4.

Here, legal and factual disputes undoubtedly exist between the Class and Art Van—the proposed settlement is a means of resolving the overall issue of TCPA liability, a point on which the Parties disagree. Though Bowman is optimistic about the likelihood of success on the merits, there is always a risk that a verdict on certain issues could prove unfavorable to the Class. With this risk in mind, the

11

Settlement proposed provides Bowman and the Class with fair and favorable relief.

The claims filing period has since ended, and 31,471 class members filed claims. Class Counsel estimates that each claim will be worth roughly $98.87.

Similar settlements have received final approval by federal courts. *See, e.g.*, *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) (finding a per-claim amount range of between $7 and $156 fair, reasonable, and adequate). This is particularly true where the liability could theoretically put Art Van into bankruptcy, making recovery much more difficult for the Class. *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ("A $52.50 recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.").

Indeed, the settlement is demonstrably reasonable in light of other TCPA settlements. *See Vasco v. Power Home Remodeling Grp. LLC*, 2016 WL 5930876, at *10 (E.D. Pa. Oct. 12, 2016) (approving $5.2 million fund for 1.1 million settlement class members in TCPA case where each claimant was set to receive $26.63); *see also In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (approving $34.60 per claiming member); *Rose v. Bank of America Corp.*, No. 5:11–CV–02390–EJD, 2014 WL 4273358, at *10 (N.D.

Cal. Aug. 29, 2014) (approving $20.00 to $40.00 per claimant).[6]

The relief provided by the Settlement Agreement is favorable in light of the risks of continued litigation and uncertain recovery. Thus, this factor weighs in favor of approving the Settlement.

### E.    Class counsel and Bowman support the Settlement.

The opinion of Class Counsel also supports approval of the Settlement. The determination by Class Counsel that settlement is in the best interest of the Class "is entitled to significant weight, and supports the fairness of the class settlement." *Griffin*, 2013 WL 6511860, at *5. Class Counsel have demonstrated their extensive experience in handling class actions. In light of the complexity of this case, both Class Counsel and Bowman support the proposed Settlement. Those class members who have filed claims will receive cash, and everyone will receive the benefit of Art Van's prospective business assurances. Viewed against the risks of protracted litigation, the Settlement presents a far more favorable outcome for the Class.

### F.    The reaction from the Class has been overwhelmingly positive.

The next factor considered by the Court, and the one factor that cannot be analyzed until notice has been sent, is the reaction of absent class members to the settlement. This factor weighs in favor of approving the Settlement. That is, Class

---

[6] *See also* Motion for Preliminary Approval, Dkt. 35, at 37–38. The chart in Plaintiff's prior motion included eleven approved TCPA settlements in various districts, ranging from individual awards of $12.97 to $102.62 per class member.

members have reacted favorably to the settlement, with a predictably small number of opt-outs and only three objectors, Julie Varchetti, Brad Waayenberg, and Jason Thompson. Fortunately for the Class, none of the objections has merit. As such, this factor weighs in favor of settlement.

### 1. Only 3 of 1,150,000 class members have objected.

The reaction of the class members to notice is an opportunity for the court "to gauge whether class members support the settlement." *Vasco*, 2016 WL 5930876, at *5 (citation omitted). This factor is generally analyzed by considering the percentage of objectors and opt-outs. *See id.*; *In re Delphi*, 248 F.R.D. at 500; *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 527 (E.D. Mich. 2003).

A certain number of opt-outs and objections are to be expected in class actions. *In re Cardizem*, 218 F.R.D. at 527. "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Id.* Thus, although the Court must evaluate objections, it has an obligation to protect the interests of the "silent class majority" that approves of the settlement. *Int'l Union v. Ford*, 2006 WL 1984363, at *27. In practice, objection and opt-out rates of less than 1% suggest that the Settlement is fair, reasonable, and adequate, thereby weighing this factor in favor of settlement. *Id.* (finding that 800 objectors in a class of 170,000 is a "very small level of opposition" and "reason to conclude that the Settlement is fair, reasonable, and adequate"); *see also Vasco*,

2016 WL 5930876, at *5 (finding that 155 opt-outs and 4 objections in a class of 1.1 million noticed class members weighed in favor of settlement).

Here, during the notice period following preliminary approval, a total of 31,471 class members filed claims, while 348 opt-outs and only three objections were filed. (*See* Marquez Decl. at ¶ 16–18.) Thus, the number of opt-outs equals only 0.03% of the approximately 1,081,769 noticed class members. The objections by Ms. Varchetti, Mr. Waayenberg, and Mr. Thompson equal only 0.00028%— less than three ten-thousandths of one percent—of all noticed Class members, and 0.009% of responding class members. Thus, an overwhelming majority of responding class members favor the Settlement.

Nevertheless, the objections to the Settlement must be addressed. Ms. Varchetti objects to the extent of notice provided, as well as the total recovery and calculation of fees as a percentage of the common fund. (Dkt. 42.) Neither of these arguments is supported by prevailing case law. Further, in a supplement to her objection, Ms. Varchetti compares this settlement to a recently-rejected settlement in the Northern District of Illinois, but her comparison is unfitting. (*See* Dkt. 45.) Mr. Waayenberg makes a general objection to the settlement, believing that the case "should fail in favor of Art Van." (Dkt. 44.) His objection actually supports the fairness and favorability of the settlement terms to the Class. Mr. Thompson's objection is based on his inability to file a claim: he was unable to input a phone

15

number that matched the Settlement Administrator's database of affected phone numbers, and thereby objects to both the phone number input requirement and the sufficiency of the database. (Dkt. 43.) However, his objections do not hold up against the thousands of Class members who successfully filed claims.

### 2.     Ms. Varchetti's objection to the notice is unfounded.

Ms. Varchetti first contends that the notice sent to her and the Class members is deficient because it does not explicitly refer to the value of statutory or treble damages for TCPA violations. (Dkt. 42, at ¶ 3.) However, the notice satisfied the requirements of Fed. R. Civ. P. 23, and more detailed information could have the potential to confuse or mislead the Class.

Rule 23 requires the Court to direct reasonable notice of settlement to all class members who will be bound by the settlement. FED. R. CIV. P. 23(e)(1); *Kinder v. Meredith Corp.*, 2016 WL 454441, at *3 (E.D. Mich. Feb. 5, 2016). The purpose is to fairly apprise class members of the settlement terms so that they may make informed decisions regarding their options. *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 422–23 (6th Cir. 2012) (citing *UAW v. GMC*, 497 F.3d at 630). Due process "does not require that the notice set forth every ground on which class members might object to the settlement." *Id.*; *UAW v. GMC*, 497 F.3d at 630 ("[T]here is no textual warrant for requiring a notice to lay out every reason a class member might object to the settlement."). Indeed, courts have recognized

16

that an overly detailed notice has the potential to "confuse class members and impermissibly encumber their rights to benefit from the action." *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011); *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977).

Here, notice sent to the Class sufficiently informed members of their rights and enabled them to decide whether they wished to file a claim, opt out, or object to the settlement. The long-form notice provided to the Class included information on the nature of the suit, the value of the Settlement, the award unit that each claiming member will receive, how to file a claim, the consequences of not filing a claim, how the attorneys will be paid, how to opt out, how to object, the opportunity to attend the fairness hearing, the availability of more information on the Settlement Website, and a multitude of other information. (Dkt. 35-1, at 44–50.) Accordingly, the Court found that notice was sufficient to satisfy due process:

> The Court finds that the Notice Plan and all forms of Notice to the Class as set forth in the Settlement Agreement and the Exhibits thereto is also approved as its form, method, and content, complies with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B). The Court further finds that the Notice is reasonably calculated to, under all circumstances, apprise the members of the Class of the pendency of this action, the certification of the Class, the terms of the Settlement Agreement, and the right of members to object to the settlement and to exclude themselves from the Class.

(Order Granting Prelim. Approval, Dkt. 39, at ¶ 10.)

17

Ms. Varchetti objects to the notice because it does not include details about statutory damages, treble damages, the potential class size or the likely payout to class members. However, the absence of these select terms does not violate Rule 23 or due process, and it does not impede the ability of class members to make informed decisions about their participation.[7]

Varchetti points to statutory and treble damages as if to suggest that class members cannot make a decision without knowing the "potential recovery" against Art Van. However, as she points out, an award of full statutory damages under the TCPA could exceed $500,000,000—and this estimate does not even include treble damages. To suggest that this amount of money represents "potential recovery" for the Class would be seriously misleading and confusing.

A judgment of that amount, with or without treble damages, would likely bankrupt Art Van, rendering any chance for class recovery much more difficult, if not impossible. Likewise, it would be misleading to present to the Class an astronomical estimate of damages that, in reality, could never be obtained. Because the nature of settlement is compromise, "settlements *never* equal the full value of the loss claimed by the plaintiffs." *Int'l Union v. Ford Motor Co.*, 2008 WL 4104329, at *25 (E.D. Mich. Aug. 29, 2008) (emphasis added). And the Court

---

[7] Ms. Varchetti asserts that payout is a necessary term of notice, but this detail could not have been known until the claims process was complete.

18

recognized that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* (citations omitted). Even presenting TCPA damages individually could be confusing:

> Although [statutory] damages appear attractive, an individual action under the [TCPA] may not be financially feasible. The costs of prosecuting an action, which includes the initial filing fee, could easily swallow a large portion of an individual claimant's recovery. The Act does not permit recovery of attorneys' fees, which means an individual claimant would need to proceed *pro se*, pay by the hour, or pay under a contingency agreement. These costs and fees necessarily reduce an individual claimant's amount of recovery, and could easily render an individual lawsuit cost ineffective.

*Vasco*, 2016 WL 5930876, at *7. To avoid confusing the Class with an overly-detailed notice, the Parties tailored the notice to what was necessary to apprise the Class members of the case and their rights. Nevertheless, discussions of statutory and treble damages appear in the Complaint and Amended Complaint, both of which were provided to the Class members on the avfsettlement.com website.

Though Varchetti chose to object based on her appraisal of the Settlement compared to statutory damages, Rule 23 does not require notice to inform class members of all such bases for objection. A detailed discussion of statutory damages in the notice would have risked confusing or misleading Class members into abandoning what is likely their best chance at recovery. Thus, Varchetti's

objection to the form of notice is unfounded.

### 3.   Varchetti's objection to the fee calculation and the total fund is inconsistent with standard class action practice.

Varchetti next objects to the amount recovered and the fee award, arguing that the recovery is too low, that the percentage of funds gives Class Counsel "red-carpet treatment,"[8] and that a lodestar calculation of fees would be more appropriate in this case. (Dkt. 42, at ¶¶ 5–6.) However, these arguments are incongruous with the history of class action settlements approved by this Court and others, including those in which Varchetti's own attorney served as counsel.

First, Varchetti objects to the size of the recovery—what she deems a "lack of success," and her attorney repeatedly claimed during a telephone call with Class Counsel that she believed a "1% recovery" was insufficient. This misunderstands the law. First, the $5,875,000 recovered here is substantial for unwanted telephone phone calls and is wholly consistent with other TCPA class action settlements, both in terms of total recovery and amounts to be paid to each claimant. Again, courts across the Country have found recoveries under 1% acceptable. *See Vasco*, 2016 WL 5930876, at *2 (approving fund of $5.2 million for class of 1.1 million

---

[8] Varchetti's characterization of the fees as a "clear sailing" provision is plainly incorrect because the Agreement does not attempt to insulate the fee award from objection or review. As she notes, the Settlement provides that Counsel could seek up to 33% as a fee award, but the Parties understand that the determination of fees is ultimately to be made by the Court, not the Settlement terms.

members—0.94% of statutory damages); *In re Capital One*, 80 F. Supp. 3d at 787 (approving fund of $75.4 million for class of 17.5 million members—0.86% of statutory damages); *Rose v. Bank of America Corp.*, 2014 WL 4273358, at *5 (approving fund of $32 million for 7 million people—0.91% of statutory damages). This Settlement, a fund of $5.875 million for 1.15 million class members, equals *slightly more* than 1% of the full statutory damages.

Even putting that aside, the notion that the recovery represents only 1% of what would have been awarded at trial misunderstands the law. While the fact finder could award up to $500 per call, that penalty is not a certain minimum, as Varchetti (or her counsel) seemingly believes. Rather, juries and courts can award less. *See United States v. Dish Network, LLC*, 256 F. Supp. 3d 810, 951–53, 991 (C.D. Ill. 2017) (finding a statutory award of $8.1 billion for TCPA claims "excessive and in violation of due process" and reducing the award to $84 million, or approximately 1% of statutory damages); *Krakauer v. Dish Network, LLC*, 2017 WL 4417957, at *2 (M.D. N.C. Oct. 3, 2017) ("The jury awarded $400 per call.").

And here the risk of a substantially-lower award is actually made plain by another objector. As explained in more detail below, Mr. Waayenberg objects to the Settlement because he believes the Settlement gives the class *too much*—he would prefer that the case fail at trial and Art Van pay nothing. (Dkt. 44.) Such an outcome is possible, and it is one of the risks that tempers the recovery procured

through a settlement. As the Court noted in *Int'l Union v. Ford*, a satisfactory settlement could be as little as a hundredth of a percent of potential recovery. 2008 WL 4104329, at *25. Though Varchetti may have a "competing notion[] of reasonableness," the Settlement represents a fair result for the Class. *See id.*

Next, to support her fee objection, Varchetti points to *Dry Max Pampers*, a case in which the Sixth Circuit reversed the approval of a settlement that was unfair to unnamed class members. *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013). In that case, the settlement purported to award $2.73 million in fees to class counsel, an incentive award of $1000 to each named plaintiff, and only limited injunctive relief and an extended refund program to the class. *Id.* at 716. The Court saw the value of the refund program as "dubious on its face," and the labelling and website changes "amount[ed] to little more than advertising for Pampers." *Id.* at 719. Thus, the Court found the agreement was preferential to class counsel and gave only perfunctory relief to the unnamed class members. *Id.* at 721.

The settlement in *Dry Max* bears no resemblance to the Settlement at hand. Here, the Agreement provides class members with cash—not a dubious refund program. Further, the Settlement requires that Art Van take steps to ensure it doesn't make unlawful calls. The attorney's fees award sought here are inextricably linked to the benefits obtained for the Class. Class Counsel is representing Bowman and the Class on a contingency basis—if the Class doesn't

22

receive an award, neither do Counsel. This percentage of fee award is not preferential to Class Counsel, and the Class award is certainly not "perfunctory."

To the extent that Varchetti argues the Court has discretion to select the more appropriate method for calculating fees, she is correct. *See In re Cardizem*, 218 F.R.D. at 532. However, her position that the lodestar is a more appropriate method to apply in this case flatly ignores Sixth Circuit precedent. "[C]ourts in the Sixth Circuit have indicated their preference for the percentage-of-the-fund method in common fund cases." *Id.* This trend is nothing new:

> The lodestar method should arguably be avoided in situations where such a common fund exists because it does not adequately acknowledge (1) the result achieved or (2) the special skill of the attorney(s) in obtaining that result. Courts and commentators have been skeptical of applying the formula in common fund cases.... [M]any courts have strayed from using the lodestar in common fund cases and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees.

*In re Delphi*, 248 F.R.D. at 502 (quoting *Fournier v. PFS Investments, Inc.*, 997 F. Supp. 828, 831–32 (E.D. Mich. 1998)).

Indeed, attorney's fees equal to one-third of a common fund are frequently awarded in class action settlements, including several in which Varchetti's attorney, Kathleen Klaus, has served as defense counsel. For example, in *Bourne*, the Court approved of an award of $230,000 in attorney's fees and costs, which "represents a third of the potential gross recovery and creation of the common

benefit fund." *Bourne v. Ansara Restaurant Group, Inc.*, No. 16-10332, 2016 WL 7405804, at \*3 (E.D. Mich. Dec. 22, 2016). The Court used the lodestar only to crosscheck the percentage of fund award, explaining that the lodestar was "not the better method to determine the attorney's fee." *Id.*

In *Martin*, a recent case where Varchetti's counsel represented class defendants, the Court granted final approval to a $7.5 million common fund settlement for a FDCPA class action. *Martin v. Trott Law, Inc.*, No. 15-12838, 2018 WL 4679626, at \*1 (E.D. Mich. Sept. 28, 2018). The settlement will result in payment of approximately $82.10 to 54,445 claiming class members, with some unpaid funds reverting to the defendant. *Id.* at \*2–4, \*8. The Court granted a fee award of $2,499,750, "calculated as 33-1/3 percent of the settlement common fund, according to the terms of the settlement agreement." *Id.* at \*6. This amount was deemed appropriate, in part, given the risk inherent in contingent fee litigation. *Id.* at \*7. Additionally, the Court found 33.3% to be "within the range of percentage fees that have been approved in complex consumer class actions." *Id.* at \*8.

In contrast, Varchetti fails to cite any case suggesting that 18% of the fund would be reasonable here, particularly where such a low figure would provide a disincentive for counsel to settle early.

Further, the instant Settlement is a success: it provides for a common fund of $5,875,000—none of which will revert to Art Van. After fees and expenses are

deducted, the remainder of the fund will be divided evenly among the nearly 32,000 Class Members that have filed claims, for an individual award unit of approximately $98.87. Class Counsel's request to award fees as a calculation of 33.3% of the common fund is in line with countless class action settlements. In light of the result of this Settlement, Class Counsel's labor and expenses, and the risks inherent to contingent fee representation, the requested fee award is reasonable. Further, the common fund established by the Settlement warrants the suggested percentage-based calculation of fees.

### 4. Varchetti's reliance on *Snyder* is misplaced because Art Van is the only defendant with claims at issue.

In a supplement to her objection filed after the deadline, Varchetti likens this case to the recent *Snyder v. Ocwen* decision in the Northern District of Illinois, where a settlement of TCPA and FDCPA claims was denied. *Snyder v. Ocwen Loan Servicing, LLC*, 2018 WL 4659274, at *6 (N.D. Ill. Sept. 28, 2018). The settlement proposed in *Snyder* had several issues that made it unsavory—issues that are not present in this Settlement Agreement. First, given the claims rate in that case, the individual award unit equaled only $39 per class member, which was significantly lower than anticipated. *Id.* at *3, *6. Compared with almost $100 per class member, the settlement in *Snyder* could certainly be viewed as a "lack of success." *Id.* at *6. Second, the agreement in *Snyder* requested an incentive award of $75,000 to be divided among three named plaintiffs. *Id.* at *2. This is an

25

unusually high incentive award to be drawn from the common fund, and it is *fifteen times* greater than the award Class Counsel has requested for Bowman.

Finally, and most notably, the settlement in *Snyder* dismissed claims against a number of large banks who were joined as defendants when Ocwen claimed it lacked money to pay more. *Id.* at *1. These banks were potentially liable for the same TCPA and FDCPA violations, as Ocwen sought to collect on loans held by the banks. *Id.* at *1–2. The Court took issue with this because the settlement would release the claims against the banks for no consideration. Hence, some defendants would not pay into the settlement even though they would receive a broad release. *Id.* at *2. For good reason, the Court found that "the absence of an explanation for why the banks are being let off scot-free [was], at best, disconcerting." *Id.* at *6.

Varchetti suggests in her supplement that the Settlement Agreement's release of "unknown claims" against Splice Software, Inc. (a third party with nothing close to the resources of US Bank) is akin to releasing the bank defendants in *Snyder*. However, there are two key differences: first, Splice Software is not a defendant in this case, and the Class has made no claims of TCPA violation against it. Varchetti claims that "those claims were no [sic] explored prior to granting Splice Software, Inc. a release." (Dkt. 45.) She is correct because no such claims have been made. Second, Splice Software is not responsible for the calls at issue in the way that the banks may have been in *Snyder*. The calls in *Snyder* were placed

26

by the loan servicer Ocwen, regarding loans held in trust by the banks. *Snyder*, 2018 WL 4659274, at *1. Thus, it could be argued that the banks violated the TCPA and FDCPA because they caused or directed the calls. Such a relationship does not exist here. The calls alleged were made by Art Van, for the benefit of Art Van. Art Van is the only defendant in this case, and it is giving consideration in exchange for a release of the Class's claims. *Snyder* is thus distinguishable.

### 5. Mr. Waayenberg's objection suggests that the terms of the Settlement are fair and favorable to the Class.

Unlike Varchetti, who argues that Art Van isn't required to pay enough, Mr. Waayenberg argues the opposite: that Art Van is paying too much and that the case should "fail in favor of Art Van." (Dkt. 44.) This is a rather unusual position for a class member to take, but Waayenberg makes it clear that he is a customer of Art Van and doesn't mind receiving their calls. (*Id.*) His objection does not suggest that the settlement is unfavorable to the Class. In fact, it suggests just the opposite: should a jury agree with Waayenberg (whose position was one of Art Van's chief defenses), the Class could end up receiving nothing. A jury may have far more sympathy for calls advertising sales events than repeated calls to collect on debts, as were at issue in *Snyder*. This view sharply undercuts Varchetti's position that $5,875,000 is too small a recovery for phone calls. Put simply, Waayenberg's objection further demonstrates that the Settlement is a fair and reasonable outcome.

27

### 6. Mr. Thompson's statement that he was personally unable to file a claim with an affected phone number does not undercut the Settlement's fairness or adequacy.

Mr. Thompson, a class action lawyer, objects on the basis that he was unable to input an affected phone number on the website that matched the Administrator's database and thereby file a claim. (Dkt. 43.) He thus objects to both the phone number input requirement and the sufficiency of the phone number database. (*Id*.) The heart of Thompson's objection is a request for assistance, and it doesn't undermine the fairness of the Settlement.

In order to identify class members, Art Van provided the Administrator with a list of numbers that it had called during the relevant period (the "affected phone numbers"). (Marquez Decl. at ¶ 2.) Thompson claims he entered multiple numbers into the website. While one of the numbers he entered was apparently included in the Settlement, the other numbers he entered were not, which triggered the website to provide a statement notifying Mr. Thompson of the specific incorrect number(s). Despite this notice, Mr. Thompson did not remove the non-qualifying phone numbers and re-submit the claim with only the valid phone number as prompted.

This individual issue could have been resolved with assistance from either Class Counsel or the Administrator. During the notice period, Class Counsel received hundreds of calls. Class Counsel even hired an additional law clerk to field and return such calls. (Woodrow Decl. at ¶ 23.) Thompson states that he made

one attempt to contact Counsel at some point in September, but he does not

indicate whether he reached out to the Administrator, sent any emails, or made any

other attempts. It is unfortunate that Thompson was unable to receive assistance

during the notice period, but Class Counsel has since communicated with him

about processing his claim (and Defendant has indicated it would not object to a

late claim). In light of the thousands of Class members who managed to

successfully file claims, neither Thompson's inability to file a claim nor the phone

number requirement itself renders the Settlement unreasonable or unfair. The same

input was required of all Class Members, and 30,259 members entered their

affected phone numbers successfully when filing online.[9] (Marquez Decl. at ¶ 18.)

### G.      Public interest supports approval of the Settlement.

The final factor, public interest, also supports final approval of the

settlement. "[T]here is a strong public interest in encouraging settlement of

complex litigation and class action suits because they are 'notoriously different and

unpredictable' and settlement conserves judicial resources." *Griffin*, 2013 WL

6511860, at *5 (quoting *In re Cardizem*, 218 F.R.D. at 530). The present action,

affecting approximately 1.15 million individuals, is undoubtedly complex.

Settlement of this case will provide certainty and uniformity of results for both the

---

[9] Mr. Thompson has requested data regarding all failed attempts to file claims.
Epiq has indicated no such information is available. (Woodrow Decl. at ¶ 25.)

Class Members and Art Van. Additionally, settlement will conserve judicial resources. Thus, public interest favors granting approval to the Settlement.

In total, all of the identified factors weigh in favor of granting final approval.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant final approval to the Class Action Settlement reached in this case and Order that Final Judgment be entered in favor of the Settlement on the terms set forth in the Agreement and for additional relief as the Court deems necessary and just.

Dated: October 10, 2018                MICHAEL BOWMAN, individually and
                                       on behalf of all others similarly situated,

                                       By: /s/ Steven L. Woodrow

                                       Steven L. Woodrow
                                       Patrick H. Peluso*
                                       Woodrow & Peluso, LLC
                                       3900 E Mexico Ave., Suite 300
                                       Denver, Colorado 80210
                                       Tel: 720.213.0675
                                       swoodrow@woodrowpeluso.com
                                       * Pro hac vice

                                       Bradley J. Friedman, Esq. P70877
                                       Law Offices of Bradley J. Friedman, Esq.
                                       30300 Northwestern Hwy, Suite 106
                                       Farmington Hills, MI 48334
                                       248-932-3500 (phone)
                                       bfriedmanesq@gmail.com

                                       Stefan L. Coleman, Esq.
                                       LAW OFFICES OF STEFAN COLEMAN, P.A.
                                       201 South Biscayne Boulevard, 28th Floor
                                       Miami, Florida 33131
                                       Tel: 877.333.9427
                                       law@stefancoleman.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 10, 2018, I served the above and foregoing papers by causing such paper to be filed with the Court using the Court's electronic filing system, which will send copies of such paper to all counsel of record.

<u>/s/ Steven L. Woodrow</u>