# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **MICHAEL BOWMAN**, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>**ART VAN FURNITURE, INC.**, a Michigan corporation,<br><br>      Defendant. | Case No. 17-cv-11630-NGE<br><br>Hon. Nancy G. Edmunds<br><br>Mag. R. Steven Whalen |

**DECLARATION OF STEVEN L. WOODROW**

I, Steven L. Woodrow, declare as follows:

  1.  I am over the age of eighteen (18) and am one of the attorneys for the plaintiff in this matter who is seeking the Court's appointment as Settlement Class Counsel. I make this declaration in support of Plaintiff's Motion for Preliminary Approval of the Class Action Settlement Agreement reached in the above captioned litigation.

  2.  I make the following statements based upon my own personal knowledge and based on facts learned during the litigation of this case, and I am able to testify to the matters set forth herein if called upon to do so.

***Class Counsel's Pre-Suit Investigation and Early Litigation***

  3.  Prior to this lawsuit being filed, my firm conducted an extensive

investigation into Art Van Furniture, Inc. ("Art Van" or "Defendant") and its alleged making of telemarketing calls to consumers. This investigation included reviewing and analyzing publicly-available information regarding Art Van and its operations as well as its marketing activities. This included a review of available information regarding Art Van's telemarketing activities and corresponding complaints, including Art Van's use of social media platforms to advertise events and sales that were being promoted in its telemarketing campaigns.

4. Based on information provided by Plaintiff Michael Bowman as well as our in-depth investigation, we had a good faith basis for concluding that Art Van used a pre-recorded voice to make calls as part of its calling campaigns. We further were able to discern a good faith basis for alleging that Art Van lacked oral prior express consent to place such calls, and that it never obtained written prior express consent. We were also able to determine that the calls most likely constituted telemarketing as they allegedly encouraged the purchase of Art Van furniture on or after the calls.

5. Based on such conclusions, we were able to allege that Defendant violated the Telephone Consumer Protection Act ("TCPA") not only with respect to Bowman but *en masse* with respect to hundreds or thousands of other people.

6. Thereafter, we drafted and revised the pleadings in this case and filed the lawsuit on behalf of Plaintiff Bowman and a nationwide class of similarly-

situated telephone users.

7. We then worked to obtain service and prepared to litigate the case, including the preparation of early outlines of necessary discovery and conferences regarding our overall case strategy.

***The Parties Commence Early Settlement Discussions***

8. Following the filing of the initial Complaint, counsel for the parties engaged in early discussions regarding their respective views of the case as well as to exchange preliminary factual details. These discussions included myself, Steven Woodrow, and Art Van's General Counsel.

9. Shortly thereafter, lawyers from the Detroit-based law firm of Dykema Gossett PLLC appeared on behalf of Art Van. The talks that had previously taken place with Art Van's general counsel shifted to its outside lawyers. Through these discussions we were able to engage in additional informal fact-finding, which uncovered that the calls at issue were made to Mr. Bowman's landline telephone and had been forwarded to his cellphone. Based on this information Art Van was able to identify the calls it placed to Bowman.

10. Given that the calls were not made directly to his cellphone, on July 12, 2017, Bowman filed a First Amended Complaint, which clarified the fact that he had received pre-recorded voice calls on his residential landline phone.

11. On August 21, 2017, Art Van's lawyers at Dykema Gossett filed a

Motion to Withdraw and new counsel from the law firm of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. (a Washington D.C.-based litigation and trial powerhouse) appeared in the case along with Martin Jaszczuk of Jaszczuk PC (a very well-respected and well-known TCPA defense lawyer).

12. Art Van filed a Motion to Dismiss and Strike Class Allegations. Shortly thereafter—and in the midst of preparations for the hearing regarding Art Van's Motion to Dismiss—counsel for both Parties began discussing the potential for engaging in early settlement negotiations. A primary driver of such discussions was the realization that, even if the litigation proved to be successful, a judgment worth billions of dollars would have forced Art Van into bankruptcy.

13. Given these realities, both parties agreed to further engage in settlement discussions through a formal mediation process by scheduling a mediation with the Honorable Morton J. Denlow (ret.) of JAMS in Chicago. Magistrate Judge Denlow has substantial experience mediating consumer class actions in general and TCPA class actions specifically. Indeed, Magistrate Judge Denlow has aided parties in achieving some of the largest TCPA class action settlements in the Country.

14. Prior to the mediation, and in accordance with Magistrate Judge Denlow's procedures, the parties exchanged critical information regarding the number of persons called, the total number of calls at issue, and the general

framework of Art Van's calling campaigns. The information revealed that the class size was in the range of 1 million (mostly former) customers. Ultimately Art Van, through its vendor, located 1,150,000 individual phone numbers called during the 4-year period preceding the filing of the original Complaint, representing the approximate class size. Art Van's data also includes the names and addresses for all but roughly 20,000 to 40,000 individual phone numbers.

15. Hence, in the lead up to the mediation, and as part of the mediation process, the parties exchanged updated information regarding the size and scope of the proposed class as well as Art Van's planned defenses. In accordance with the mediator's procedures, which includes a detailed checklist of proposed terms, the Parties also exchanged mediation briefs and proposed class action settlement terms, including the class definition, the type of relief (common fund or prospective relief or both), and a proposed notice plan. These briefs and the mediator's checklist helped set up the mediation session for a productive conversation regarding the settlement framework.

16. Despite a constructive full-day mediation session in Chicago facilitated by Magistrate Judge Denlow, the parties were unable to reach an agreement in principle at the mediation session itself. The parties agreed to proceed with the previously scheduled hearing on Art Van's Motion to Dismiss and to Strike Class Allegations.

17. However, the parties also agreed to continue discussions regarding a possible settlement to see if the matter could be resolved prior to the hearing on Art Van's Motion to Dismiss and to Strike Class Allegations. Hence, between the close of the mediation and the scheduled hearing, Judge Denlow worked with the Parties on a parallel settlement track by engaging counsel on both sides in a series of telephone negotiations.

18. Several days prior to the hearing on Art Van's Motion to Dismiss, the parties reached an agreement in principle with respect to the relief to be provided to the proposed Settlement Class Members. Only after an agreement with respect to the Class Members was reached in principle did counsel for the parties discuss, through their exchange of drafts of documents, the issues of reasonable attorneys' fees for proposed class counsel as well as an incentive award for the class representatives.

19. Thereafter, counsel for the parties worked to draft the settlement agreement, claim form, and all of the notices. During this time any additional issues that arose were resolved following further discussions between counsel for the Parties.

***The Parties Obtain Preliminary Approval and Issue Notice to the Class***

20. Following the disclosure of the settlement in principal to the Court the Parties exchanged drafts of the Settlement Agreement and notice documents. Once

the finer details of the Settlement Agreement and the notices were finalized and the agreement was executed, Class Counsel drafted the papers in support of Preliminary Approval. The Court granted preliminary approval of the settlement on July 23, 2018. (Dkt. 39.)

21. Following preliminary approval of the settlement agreement, the parties worked in tandem to implement the Settlement, which has included working with the Settlement Administrator to edit, finalize, and approve the Settlement Website, including the Q&A sections, interactive voice recording (IVR) messaging, and other settlement and notice materials.

22. Class Counsel has also communicated regularly with the Settlement Administrator regarding mailings, opt outs, and re-mailings.

23. Additionally, Class Counsel have also assisted more than 800 Settlement Class Members who have contacted their offices with questions regarding the Settlement's terms and process. This has included assisting individuals with the filing of their claims and hiring an additional clerk to assist in handling the high volume of calls that Class Counsel's office has received.

24. Furthermore, shortly following the date the short form Notice was mailed out to the Settlement Class Members, the Parties began receiving weekly reports from the Settlement Administrator detailing the number of claims filed and processed. The Settlement Class Members who we communicated with over the

phone were frankly excited by the prospect of being able to file a claim and recover their portion of the settlement.

25. The Settlement Administrator has provided data regarding the number of claims filed, as well as the number of opt-outs received. The Settlement Administrator has indicated that information about unsuccessful attempts to complete the claims form online is unavailable.

**Class Counsel's Opinion of the Settlement**

26. The terms of the Settlement Agreement are unquestionably strong, particularly when weighed against other TCPA settlements reached to date.

27. The strength of the Settlement is probably most evident when viewed in light of the potential defenses and the possibility of a prolonged and extensive litigation process. Art Van was set to argue that this case could never be certified as a class action, that its calls were not telemarketing calls, and that the law should not be construed so as to put the company on the hook for billions of dollars in damages for phone calls that it made. Art Van's counsel also made the point that, even if Plaintiff and the class members could overcome the company's defenses, Art Van would likely be rendered insolvent by any meaningful judgment, thereby making any possible substantial recovery difficult and protracted.

28. My firm, along with co-counsel Stefan Coleman of the Law Offices of Stefan Coleman, P.A., have extensive experience litigating TCPA class actions and

have devoted substantial resources to the present litigation. We will continue to do so. We support this Settlement as being fair, reasonable, and adequate and in the best interest of the Settlement Class. The amount afforded to the proposed Settlement Class falls squarely in the range of dollar amounts approved by courts overseeing TCPA class action settlements all across the Country, and the instant settlement affords strong prospective relief designed to reduce (if not wholly eliminate) the making of these unwanted calls.

      Further affiant sayeth not.

      Signed under penalty of perjury this 10th day of October 2018 in Denver, Colorado.

/s/ Steven L. Woodrow
Steven L. Woodrow