UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL BOWMAN, on behalf of himself
and a similarly situated class,

      Plaintiffs,

v.

ART VAN FURNITURE, INC.,

      Defendant.
_____/

Case No. 17-11630

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [48]**

This matter is before the Court on Plaintiff's motion for final approval of class action settlement. (Docket 48.) On July 23, 2018, the Court issued an order granting preliminary approval of class action settlement in this matter. (Dkt. 39.) The Court held a fairness hearing on October 24, 2018, at 1:00 p.m. Present at the hearing were Plaintiff's counsel, Defendant's counsel and counsel for one of the objecting class members. For the reasons that follow, the Court grants the motion for final approval of the class action settlement. (Dkt. 48.)

**I.    BACKGROUND**

Plaintiff Michael Bowman is an individual residing in White Lake, Michigan. (Am. Compl. ¶ 5, dkt. 8.) Defendant Art Van Furniture is a retail furniture business with furniture stores throughout Michigan and the Midwest, with a principal place of business in Howell, Michigan. (Am. Compl. ¶¶ 1, 6.) Plaintiff alleges that he has received multiple prerecorded

calls from Defendant to his telephone without prior consent, in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.*

Plaintiff alleges that he received a pre-recorded call on his landline telephone on December 8, 2016 at 1:21 p.m. from phone number 517-552-0720, stating the following:

> Hi Robert this is Steve Baros, store manager at Art Van Furniture in Howell calling with an invitation you are going to love. This Saturday we are having a special VIP party where you can enter to win amazing prizes like a family trip to Disney World, $10,000 cash, or $1,500 in gift cards just for coming. You can press 1 at any time to opt-out or press 9 now to continue to receive VIP invitations. We will have food, fun, and entertainment for the whole family during this exciting VIP event. Plus Santa will be here from noon to 2pm. For more details, please call the store at 517-552-0720. Thanks and we look forward to seeing you this Saturday, December 10th from 9am to 10pm at our Howell Art Van Store. To hear this message again or to opt out of future automated notifications from Art Van please call 1-866-602-3689. Thanks and bye for now.

(Am. Compl. ¶ 20.) Plaintiff alleges receiving three more pre-recorded calls of a similar nature in 2017. (Am. Compl. ¶ 21, 23, 24.) Plaintiff alleges that during the relevant time periods, he did not consent orally or in writing for Defendant to place the prerecorded telephone calls to his landline or cell phone and therefore, Defendant had not obtained his prior written express consent to place calls to his telephone using a prerecorded voice, in violation of the TCPA. (Am. Compl. ¶ 26.)

Plaintiff filed this action on May 23, 2017, seeking to bring suit under the TCPA on behalf of himself and a class of similarly situated individuals. (Dkt. 1.) Plaintiff sought an injunction and an award of statutory damages. (Am. Comp. ¶ 29.) After the suit was filed, the parties engaged in informal discovery, during which talks led to a mediation with the retired Hon. Magistrate Judge Morton Denlow of JAMS, Chicago. (Pl.'s Mot. 1; Woodrow Decl. ¶ 13, Pl.'s Mot. Ex. A, dkt. 48-1.) Although the parties did not reach settlement at the

mediation, they continued to participate in telephone conferences with Judge Denlow. (Woodrow Decl. ¶ 17.) Defendant had also filed a motion to dismiss, which was scheduled for hearing. (Dkt. 18.) The parties ultimately came up with a settlement, Defendant withdrew it's motion to dismiss, and on April 26, 2018, Plaintiff filed a motion for preliminary approval of class action settlement. (Dkt. 35.)

The settlement agreement includes both the creation of a Settlement Fund in the amount of $5,875,000 and prospective injunctive relief. (Pl.'s Mot. For Preliminary Approval 2, dkt. 35, dkt. 35-1.) The settlement class is defined as "all individuals and entities who were called by or on behalf of Art Van Furniture through the use of pre-recorded voice technology between May 23, 2013 and the date of entry of the Preliminary Approval Order." (Settlement Agreement and Release, Definitions § II.36.) The Settlement Fund "will be used to pay: (a) the Settlement Checks to Settlement Class Members who submit Valid Claim Forms; (b) any Fee Award; (c) any Incentive Award approved by the Court; and (d) all Settlement Administration Costs." (Settlement Agreement and Release, Definitions § II(39), Pl.'s Mot. For Preliminary Approval Ex. A, dkt. 35-1.)

> Each Settlement Class Member who submits a Valid Claim Form, qualifies for payment by having a number on the Class Lists, and is otherwise approved pursuant to Section III.2 shall be eligible to receive one (1) Claimant Payment equal to one (1) Award Unit, the value of which is to be determined by the following formula: Each Award Unit will have an equal monetary value determined by dividing the Net Settlement Fund (defined and calculated as the total Settlement Fund ($5,875,000.00 USD) less the sum of all Settlement Administration Costs, any Fee Award, and any Incentive Award to the Settlement Class Representative as approved by the Court) by the total number of Award Units (calculated based upon the number of eligible Class Members who file Valid Claim Forms).

(Settlement Agreement and Release, Settlement Consideration and Claims Procedure § III(1)(d), Pl.'s Mot. For Preliminary Approval Ex. A, dkt. 35-1.)

3

The prospective injunctive relief portion is as follows:

> For a period of twenty-four (24) months following the Effective Date, and subject to changes in applicable law, Art Van agrees not to cause telemarketing calls to be placed to residential landline telephone numbers using pre-recorded voice technology without first obtaining the prior express written consent of the called party. Art Van also agrees to only contract with third-parties who affirmatively agree to abide by the TCPA and all related regulations in the placement of outbound telephone calls using pre-recorded voice technology.

(Settlement Agreement and Release, Settlement Consideration and Claims Procedure § III(5), Pl.'s Mot. For Preliminary Approval Ex. A, dkt. 35-1.) Under the settlement agreement, Art Van does not admit liability.

On July 23, 2018, the Court entered an Order Granting Preliminary Approval of Class Action Settlement in which the Court preliminarily approved settlement of the collective action in accordance with the proposed settlement agreement presented to the Court, appointed Steven Woodrow, Patrick H. Peluso and Taylor T. Smith of Woodrow & Peluso, LLC, and Stefan L. Coleman of the Law Offices of Stefan Coleman, P.A., as class counsel, authorized Plaintiff to disseminate notice and set the date for the final fairness hearing on the proposed settlement agreement. (Dkt. 39.)

## II. DISCUSSION

Review and approval of class settlements involves a two-step process: (1) preliminary approval of the settlement and the content and method of class notice; and (2) final approval after notice and a fairness hearing. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). The Court completed the first step in the review and approval process and now considers final approval.

4

**A. Notice**

**1. Whether the Notice Plan Satisfies Due Process**

The Court considered whether the notice to the settlement class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court approved the notice plan when granting preliminary approval in July. Plaintiff provided a detailed declaration by the Project Manager for Epiq Class Action & Mass Tort Solutions, Inc. ("Epiq"), describing how the notice plan was carried out and attaching the notices. (Pl.'s Mot. For Final Approval Ex. B, Marquez Decl., dkt. 48-2.) As mentioned in the prior motion for preliminary approval, Plaintiff had initially estimated 1,150,000 class members with names and physical addresses. Where names and addresses are reasonably available, direct notice should be provided. *See In re Auto Parts Antitrust Litig.,* 2016 WL 8201483, at *2 (E.D. Mich. Dec. 28, 2016) (citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 174-75 (1974)).

Summary postcard notice was mailed via United States Postal Service on August 10, 2018, to 1,162,166 physical addresses; 103,751 postcards were returned as undeliverable and of those, 77,372 were re-mailed to updated addresses. (Marquez Decl. ¶¶ 11, 13.) Summary email notices were also sent to settlement class members with valid email addresses. (Marquez Decl. ¶¶ 10, 11.) "As of October 9, 2018, Epiq has emailed and mailed Notices to 1,167,769 unique Settlement Class Members, with notice to 86,600 unique, likely Settlement Class Members currently known to be undeliverable, which resulted in an approximately 92.6% deliverable rate to identified likely Settlement Class Members." (*Id.* at ¶ 14.)

The Notice reached over 90% of the class. The summary postcard and the email notice described the nature of the action, the class definition, notified of the alleged violation or claim and that the Defendant denied violations and asserts defenses, notified that class members could hire their own attorneys, provided the procedure and time frame for requesting exclusion, and notified of the binding effect on class members of orders and a judgment in this action. (Dkt. 48-2.) In addition to summarizing the key terms, it directed class members to a "Full Notice" and "Claim Form" online. The email notice contained slightly more detailed information than the postcard. (Dkt. 48-2.)

The Court finds that the method, form and content of the Notice satisfies Rule 23 and due process.

### 2. Class Action Fairness Act (CAFA), 28 U.S.C. § 1715, Notification

On October 5, 2018, Defendant filed a declaration on implementation of CAFA notice. (Decl. On Implementation of CAFA Notice, dkt. 46.) The declaration was from the Legal Notice Manager for Epiq Class Action & Claims Solutions Inc., stating that at the direction of Defendant's counsel, 57 officials, including the Attorney General for the United States, and the Attorneys General of each of the 50 states, the District of Columbia and the United States' Territories were identified to receive CAFA notice (of proposed settlement of class action) and on May 4, 2018, such notice packages were sent by Epiq via certified mail to all, and additionally sent by United Parcel Service to the Attorney General of the United States. (Decl. ¶¶ 5, 7, dkt. 46.) A list of the notice recipients, as well as a copy of the cover letter, are attached to the declaration. (Dkt. 46-1, 46-2.) Defendant properly notified state and federal officials pursuant to CAFA.

### B. Whether The Settlement Should Receive Final Approval

"Before approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing Fed. R. Civ. P. 23)); *see also* Fed. R. Civ. P. 23(e)(2). In its Order Granting Preliminary Approval of Class Action Settlement (dkt. 39), the Court preliminarily approved the settlement class for purposes of the Settlement Agreement, as defined as follows: "all individuals and entities who were called by or on behalf of Art Van Furniture through the use of pre-recorded voice technology between May 23, 2013 and the date of entry of the Preliminary Approval Order." (Settlement Agreement and Release at § II(36), dkt. 35-1; dkt. 39.) The Court considered the factors of Fed. R. Civ. P. 23(a) and 23(b)(2) and (3), and confirms and makes final the preliminary approvals set forth in the July 23, 2018 Order Granting Preliminary Approval. (Dkt. 39.)

The Sixth Circuit sets forth seven factors to be considered in final approval: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *International Union,* 497 F.3d at 631.

1. **Risk Of Fraud Or Collusion**

The settlement agreement does not disclose grounds to doubt it's fairness. There is a presumption by courts of the absence of fraud or collusion in class action settlements "unless there is evidence to the contrary." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 598 (E.D.Mich. 2006). "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and

7

without collusion between the parties." *Bert v. AK Steel Corp.*, 02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008).

This settlement was negotiated by adversarial parties and experienced counsel, with the help and oversight of mediator Judge Denlow of JAMS, Chicago. (Pl.'s Mot. For Preliminary Approval 1, 5, dkt. 35) The parties engaged in a full day mediation, then a series of follow-up telephone negotiations. (Woodrow Decl. ¶¶ 16-18, dkt. 35-2.) The parties reached an agreement in principle prior to a scheduled hearing on Defendant's motion to dismiss. (Pl.'s Mot. 5; Woodrow Decl. ¶ 18, dkt. 35-2.) Plaintiff's counsel engaged in an investigation into Defendant and its alleged telemarketing calls, and the parties exchanged some preliminary factual details, followed by information regarding the potential class size. (Woodrow Decl. ¶¶ 3, 4, 14, dkt. 48-1.) Through this exchange of information, Plaintiff's counsel asserts that class counsel were able to "make an informed decision regarding the appropriateness of the settlement." (Woodrow Decl. 14-16, 20-22, dkt. 35-2.) The proposed settlement agreement "appears to be the product of serious, informed, non-collusive negotiation . . . ." *In re Polyurethane Foam Antitrust Litigation*, 2012 WL 12868246, at *4 (N.D. Ohio Jan. 23, 2012) (citing *In re Nasdaq Market–Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

### 2. Complexity, Expense And Likely Duration Of Litigation

Plaintiff argues that absent settlement, the case could "drag on for years" and would require voluminous formal discovery from both Defendant Art Van and its hired vendor.

The Court acknowledges that the parade of activities Plaintiff lays out to argue that litigation would be "predictably complex" and could extend for years is predominately the normal trajectory of a case: discovery, dispositive motions, trial, appeals, etc. Yet Plaintiff

points out that discovery would be required regarding the nature and purpose of the telephone calls at issue, where Defendant disputes that they were for sales, and that such a great number of class members could prove catastrophic for Defendant in a finding of class-wide liability at trial with potential judgment of hundreds of millions of dollars.

### 3. Amount of Discovery Engaged In By The Parties

The parties did not engage in formal discovery. Plaintiff argues that this is not an obstacle to final approval, as long as the parties have sufficient information to evaluate their positions. *See Griffin v. Flagstar Bancorp, Inc.*, 10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013) (citing *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004)). The parties exchanged sufficient information to gauge class size, Defendant's exposure, and the ability to reach class members; Plaintiff investigated information related to Defendant's marketing and the nature of the pre-recorded messages at issue. (Woodrow Decl., Pl.'s Mot. Ex. A, ¶¶ 3, 4, 14, 15, dkt. 48-1.) Given the issues raised by the alleged TCPA violations, the parties had enough information to evaluate their positions for purposes of settlement.

### 4. Likelihood Of Success On The Merits

The Court "cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *International Union*, 497 F.3d at 631. "Our task is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.* at 632. This Court has previously observed that "[t]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no

recovery." *In Re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).

The parties disagree on Defendant's liability under the TCPA. Legal and factual disputes exist, creating a risk with litigation. Defendant denies wrongdoing and issues exist as to the nature and purpose of Defendant's calls, including whether the events which the calls promoted were for sales. (Pl.'s Mot. 8-9, dkt. 48.)

Plaintiff argues that the proposed settlement agreement is reasonable and provides fair relief, both monetary and prospective, to the class members. The $5,875,000 settlement fund would be reduced by amounts for settlement administration expenses, an incentive award to the class representative, and a fee award, with the remaining amount to be divided by the total number of Award Units (equal to the number of valid claims approved by the Court). At the time of filing this motion, 31,471 class members had filed claims and class counsel estimated that each claim would be worth roughly $98.87. (Dkt. 48 at 1.) In his motion for preliminary approval, Plaintiff provided a list of TCPA settlements that were deemed fair and reasonable, in a range of award amounts per claimant. *See e.g., Rose v. Bank of America Corp.*, 5:11-cv-02390, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (Although approved, the court noted that "the $20 to $40 range falls in the lower range of recovery achieved in other TCPA class action settlements."); *Wilkins v. HSBC Bank Nevada, N.A.*, 14 C 190, 2015 WL 890566, at *12 (N.D. Ill. Feb. 27, 2015) ("After incorporating the court's reduced fee award, the money available to the class is $29,199,661, resulting in a payment to each timely claimant of at least $101.94, and possibly more . . . ."); *see also Vasco v. Power Home Remodeling Group LLC*, 15-4623, 2016 WL 5930876, at *8 (E.D. Pa. Oct. 12, 2016) (Finding that a distribution of "slightly higher than $27.00" "is consistent with other class action settlements under the act."). The

Court finds that the proposed settlement offers fair and reasonable relief when weighed against the risks of litigation and likelihood of collecting a large jury award[1].

### 5. Opinions Of Class Counsel And Class Representatives

Class Counsel and Plaintiff Bowman support approval of the settlement. (Pl.'s Mot. 13, dkt. 48.) The Court previously considered Class Counsels' qualifications and experience in handling class action suits similar to this one and gives some weight to their opinion that the settlement is in the best interest of the Class. (Order Granting Preliminary Approval Of Class Action Settlement, dkt. 39; *see also* Pl.'s Mot. For Preliminary Approval, Ex. B at Exs. 1, 2, dkt. 35-2.)

### 6. Reaction of Absent Class Members

Postcard and/or email notice was sent directly to 1,167,769 unique settlement class members of which 86,600 are known to be undeliverable, resulting in 1,081,769 class members noticed. (Pl.'s Mot. 15, dkt. 48; Marquez Decl. ¶ 14, dkt. 48-2.) Of these, 31,471 class members filed claims, 348 opted out and only three have filed objections. (Marquez Decl. 14, dkt. 48-2.) The number opting out is approximately .03% of the number noticed. The claims response rate among those who were noticed is approximately 2.9%. This response rate is among those which courts have found acceptable. *See e.g.*, *Touhey v. United States*, No. 08-01418, 2011 WL 3179036 (C.D. Cal. July 25, 2011) (approving a 2%

---

[1] Although Plaintiff argues that "liability could theoretically put Art Van into bankruptcy, making recover much more difficult for the class," Plaintiff provides no further evidence or information supporting this assertion. (Pl.'s Mot. 12, dkt. 48.) Yet with 31,471 class members filing claims, and a estimate of $500 per TCPA violation, quick math supports that these claims alone could amount to $15,735,500 in violations alone, and that assumes a single violation per class member. 47 U.S.C. § 227(b)(3). Plaintiff alleges having received four pre-recorded calls from Defendant.

response rate with no objections and no requests to opt out); *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. July 31, 2013) ("The number of claims filed (6,594) represents approximately 4% of the total number of Televisions sold (175,000)."); *National Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *see also In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508 (E.D. Mich. 2003) ("[C]onsumer opt outs to date have been less than 1% of the number of consumer claimants."). The claims response rate, the numbers opting out, and the number objecting suggests a favorable reaction by absent class members and weighs in favor of approving the settlement. *See e.g., In re NASDAQ Market–Makers Antitrust Litig.*, 187 F.R.D. 465, 478 (S.D.N.Y.1998) (observing that "[i]n litigation involving a large class, it would be 'extremely unusual' not to encounter objections.")

Class counsel addressed each of the objections in turn at the fairness hearing. Counsel for one of the objectors appeared at the hearing and was heard. Here is a brief summary of the objections:

**Letter from Caldonia, Michigan (dkt. 44)**. This objection was received on September 24, 2018. The objector writes that he would like to "see the case fail in favor of Art Van Furniture." (Dkt. 44.) He is a past customer of Defendant, he considers the calls from Defendant a "courtesy" by providing announcements on special products or sale events, and states that Defendant is "a reputable, long standing company that provides products and jobs to those living in the communities where their stores exist." (Dkt. 44.) He writes

12

that "[i]t is a shame that is it less expensive for companies like Art Van Furniture to settle out of court rather than having the dignity to be found not guilty in a court of law." (*Id.*) In response to this objection, Plaintiff points out that the objection suggests that Art Van could win if it went to trial and the class members could get nothing, thus demonstrating that "the Settlement is a fair and reasonable outcome."

**Objection filed through ECF (dkt. 43)**. This objection dated September 25, 2018, was sent by an attorney on behalf of himself. He filed a supplement on October 24, 2018, past the objection deadline. (Dkt. 51.) He objects that he attempted to use the online claim system and entered the only two telephone numbers he has records or memory of, but neither number worked. He alleges that he entered his claim number and that there "was no way to submit a claim form once the telephone number was rejected." (Dkt. 43.) He has reasons to believe he could be part of the class. He wonders whether he "in fact received a pre-recorded voice message from Art Van Furniture during the class period; or rather, the requirement of a telephone number for claims submission is deficient in that it omits class members who in fact have been harmed from receiving benefits; or the database of telephone numbers for eligibility to submit a claim is deficient, as evidenced by [his] experience." (Dkt. 43; *see also* Supplement dkt. 51.)

Plaintiff responds that this objection is a request for assistance, it doesn't undermine the fairness of the Settlement, it could have been resolved with assistance from Class Counsel or the Administrator, and that the same input was required of all class members and 30,259 entered their affected phone numbers successfully when filing online. This objection does not rule out user-error. The objector apparently requested data regarding all failed attempts to file claims and the Administrator, Epiq, indicated that no such

13

information is available. (Pl.'s Mot. For Final Approval, Woodrow Decl. Ex. A ¶ 25, dkt. 48-1.) Plaintiff alleges that Class Counsel has since communicated with this individual about processing his claim. (Pl.'s Mot. For Final Approval 29.)

**Objection Filed Through ECF By Counsel (Dkt. 42)** The third objecting individual is represented by counsel and timely filed an objection on September 21, 2018. (Dkt. 42.) The second and third filings by this individual post-date the September 26, 2018 objection deadline. (Dkt. 45, 50.) The post-deadline filings are captioned a "supplemental authority in support of objection to settlement and objection to motion for fee award" (dkt. 45) and "opposition to motion for final approval of class action settlement"[2] (dkt. 50). The objecting class member points out that Plaintiff's/counsels' efforts resulted in a settlement of 1% of the potential recovery with class counsel seeking a third of that amount. She bases this estimate on the TCPA statutory minimum damages of $500 per violation and class counsel's estimate that there are 1,150,000 potential class members, asserting that the class members' claims represent $575,000,000 in potential statutory damages. (Dkt. 42 n.1) Her timely objections are the following: The case settling within a year of filing and the lack of formal discovery; a settlement that is allegedly 1% of the potential recovery for these claims; that the notice was not specific enough with respect to potential recovery, including statutory damages and the fee award; that the settlement agreement is essentially a "fair

---

[2] These "supplements" contained objections raised for the first time after the objection deadline. Yet they were fully addressed at the hearing by objecting counsel and Plaintiff's counsel. Plaintiff has adequately distinguished those cases on which the objecting individual relied. *See e.g., Snyder v. Ocwen Loan Servicing*, LLC, 2018 WL 4659274 (N.D. Ill. Sept. 28, 2018) (the individual award unit was only $39 each-- lower than anticipated-- and it released claims for no consideration against banks who had been joined as defendants and were potentially liable.).

14

sailing" provision with respect to allowing Plaintiff's counsel to seek 33% of the settlement fund and that a lodestar method of calculating the fee is more appropriate in these circumstances than a one-third contingent fee. (Dkt. 42.)

The Court agrees with Plaintiff that the recovery in this settlement is consistent with other TCPA class action settlements. (Pl.'s Mot. For Final Approval 20-21.) Further, Plaintiff argues that the $500 per call statutory penalty is not a certain minimum, and that including in the notice treble damages information and the objector's estimate that the potential recovery could exceed $500,000,000 would have been misleading and confusing. "Due process 'does not require the notice to set forth every ground on which class members might object to the settlement.'" *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 423 (6th Cir. 2012) (citing *International Union v. General Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007)). "All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.*

The payout term per class member could not be included in the notice because that term could not be known until the claims process is complete. Further, unlike some disfavored class action settlement structures, the Settlement Fund here in the amount of $5,875,000 USD, will be divided completely among approved claims after deducting administrative expenses, attorneys fees, reimbursement costs and the incentive award, and does not revert to the Defendant. Plaintiff adequately distinguished those cases on which this objector relies. *See e.g., In re Dry Max Pampers Litig.*, 724 F.3d 713, 721-22 (6th Cir. 2013) (the court found a settlement giving $2.73 million in attorneys' fees and $1,000 incentive to the named plaintiff with only limited injunctive relief and an extended refund

15

program to class members was preferential to class counsel and gave only "illusory injunctive relief" to the unnamed class members.). Finally, with respect to an alleged "clear sailing" provision, the determination of fees is ultimately made by the Court, not by the settlement terms.

When considering the substance of the objections and the number of objections against the number of filed claims, the Court concludes that the overall response to the settlement agreement was favorable.

### 7. Public Interest

Due to the large size of the class it is in the public interest to pursue this action through a settlement, to promote uniformity in judgment, and the efficient administration of justice.

The Court finds that overall, the above factors weigh in favor of final approval of the Settlement Agreement. The settlement agreement is fair, reasonable and adequate. The action will be dismissed with prejudice and the settlement agreement entered without any admission of liability, fault or wrongdoing by Defendant. (Settlement Agreement §VII(1), dkt. 35-1.)

The motion for approval of attorneys' fee and class representative incentive award is addressed in a separate opinion and order.

## III. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion for final approval of class action settlement. The parties are directed to fund and distribute the Settlement Fund in accordance with the Settlement Agreement.

Each settlement class member is bound by the settlement agreement and the releases set forth therein. The parties may enforce the terms of the settlement agreement and their respective obligations pursuant to this Order of the Court.

Judgment of dismissal with prejudice shall be entered pursuant to this order and the terms of the settlement agreement.

**SO ORDERED.**

                                                s/Nancy G. Edmunds
                                                Nancy G. Edmunds
                                                United States District Judge

Dated: December 10, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 10, 2018, by electronic and/or ordinary mail.

                                                s/Lisa Bartlett
                                                Case Manager